RAJ V. ABHYANKER, California SBN 233284
Email: raj@legalforcelaw.com
WENSHENG MA, California SBN 299961
Email: vincent@legalforcelaw.com

LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:  (650) 965-8731
Facsimile:    (650) 989-2131


Attorneys for Plaintiffs,
LegalForce RAPC Worldwide, P.C. and
LegalForce, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C.; AND LEGALFORCE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UPCOUNSEL, INC.; ELIZABETH J. OLINER; SETH W. WIENER; KANIKA RADHAKRISHNAN; and DOES 1-1000, INCLUSIVE, <br><br> Defendants. | Case No. 3:18-cv-2573 <br><br> Judge: Honorable Maxine M. Chesney <br><br> **COMPLAINT FOR:** <br><br> 1. DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201; <br> 2. LANHAM ACT, 15 U.S.C. § 1125(a); <br> 3. CALIFORNIA FALSE & MISLEADING ADVERTISING; and <br> 4. CALIFORNIA UNFAIR COMPETITION. <br><br> **JURY TRIAL DEMANDED** |

1    1. LegalForce RAPC Worldwide, P.C. ("RAPC") and LegalForce, Inc.
2    ("Trademarkia") allege as follows against UpCounsel, Inc. ("UpCounsel") and
3    Elizabeth J. Oliner; Seth W. Wiener; and Kanika Radhakrishnan; and Does 1-1000
4    ("Attorney Defendants") upon actual knowledge with respect to themselves and their
5    own acts, and upon information and belief as to all other matters.

6                                **NATURE OF ACTION**

7    2. UpCounsel and Trademarkia compete to provide individuals and small
8    businesses with affordable access to licensed attorneys who can help them to protect
9    their business names, logos, and slogans through trademark filing with the U.S. Patent
10   and Trademark Office ("USPTO").  Each use technology and innovation to provide
11   access to licensed attorneys specialized in trademark filing and prosecution.

12   3. Attorneys and law firms licensed in each state of the United States must follow
13   ethical rules that are stricter than those for non-attorneys. One such rule is the
14   prohibition against attorney fee sharing with non-attorneys. This rule was adopted to
15   prevent non-lawyers from aggressively reselling hourly and fixed fee attorney services
16   at a mark up causing the public to lose faith in the legal profession. These rules have
17   not been revised in the age of the Internet.  Attorney Defendants and UpCounsel have
18   brazenly ignored them in defiance of the law, upon information and belief.   In contrast,
19   despite Plaintiffs' belief that fee sharing rules are out of date, in the absence of formal
20   legislative change, Plaintiffs have chosen to lawfully abided by the regulations.  As a
21   result, Plaintiffs have been unable to fairly compete with Attorney Defendants and
22   UpCounsel.

23   4. For example, in California, referral fees with non-lawyers are addressed in
24   California Rules of Professional Conduct ("CRPC") 1-320 (**Exhibit A**). Rule 1-320
25   prohibits, with certain limited exceptions, the sharing of attorney fees between a
26   member of the State Bar of California and a non-attorney. The rule also prohibits a
27   member from compensating a person or entity for the purpose of recommending or
28   securing employment of the member by a client, or as a reward for having made a

recommendation resulting in employment of the member.

5.  The USPTO has similar prohibitions against fee sharing by trademark attorneys with non-attorneys. Specifically, 37 C.F.R. § 11.504 makes clear that a practitioner or law firm shall not share attorney fees (also called "legal fees") with a non-practitioner except under limited exceptions (**Exhibit B**). None of these limited exceptions under Rule 1-320 or 37 C.F.R. § 11.504 apply to UpCounsel.

6.  Upon information and belief, more than one-hundred and ninety U.S. trademark attorneys ("Attorney Defendants") violate fee sharing rules by allowing UpCounsel to mark up the attorney fee that their clients pay them through UpCounsel with a "processing fee" - calculated as a percentage of the attorney fee.  In case of attorneys licensed in California, many California licensed attorneys have been formally warned by the State Bar of California that UpCounsel's "processing fee" may result in a violation of the Rules of Professional Conduct.[1]

7.  Similarly, the Pennsylvania Bar Association[2], the South Carolina Bar Association [3], the New York State Bar Association[4], the Supreme Court of Ohio[5], and the USPTO's

[1] The State Bar of California expressly wrote to California attorneys that  "allowing UpCounsel, Inc., to take a percentage of the attorney's fees paid by the client as a 'processing fee' does not change the fact that UpCounsel, Inc., is receiving a share of legal fees which have been earned by the attorney." *See* **Exhibit D** at 2.

[2] The Pennsylvania Bar Association expressly wrote "The manner in which the payments are structured is not dispositive of whether the lawyer's payment to the Business constitutes fee sharing" in Formal Opinion 2016-200, *See* **Exhibit R** at 3.

[3] The South Carolina Bar Association expressly wrote "A lawyer cannot do indirectly what would be prohibited if done directly. Allowing the service to indirectly take a portion of the attorney's fee by disguising it in two separate transactions does not negate the fact that the service is claiming a certain portion of the fee earned by the lawyer as its "per service marketing fee." in Ethics Opinion 17-06, *See* **Exhibit S** at 2.

[4] The New York State Bar Association expressly wrote regarding a different but similar legal marketplace Avvo.com, "If, however, the marketing fee also includes a payment to Avvo for recommending the lawyer, then the payment constitutes giving something "of value" for a recommendation, which does violate Rule 7.2(a)", Ethics Opinion 1132, *See* **Exhibit T** at 3.

Office of Enrollment & Discipline[6] itself have stated that fee sharing on legal marketplaces or referral websites may result in a violation of Rules of Professional conduct.

8. Abhyanker has been an early pioneer of legal marketplaces. After leading an Internet neighborhood social network through two rounds of venture funding in 2007 (which later sold to Google, Inc.), Abhyanker built the very first legal marketplace for online legal services called LegalForce.com (LegalForce One). Through this website, users were able to hire, manage and pay lawyers and legal staff for legal projects (**Exhibit E**). Abhyanker found external venture capital for LegalForce One from leading Silicon Valley venture capitalists (**Exhibit F**). However, the venture capital term sheet was never finalized because of the limited traction that could be achieved in the initial $500,000 funding round because of Abhyanker's refusal to break ethical rules with respect to fee sharing to achieve faster revenue growth before the next round of funding (**Exhibit G**, **Exhibit H**).

9. Then, approximately 4 years later, UpCounsel launched, copying Raj Abhyanker's original LegalForce One concept. Not only did UpCounsel copy Abhyanker's pioneering concept for online legal marketplaces, but they avoided ethical rules relating to fee sharing.

10. Resolution of Plaintiffs' claims in this complaint requires this Court to first determine whether fee sharing clauses under CRPC Rule 1-320 and 37 C.F.R. § 11.504 are applicable to processing fees calculated based on percentage of the attorneys fees and added to attorney fees by UpCounsel. If these rules apply to

---

[5] The Supreme Court of Ohio expressly wrote "fees tied specifically to the number of individual clients represented or the amount of a legal fee is not permissible," Ethics Op. 2016-3, *See* **Exhibit U** at 7.

[6] The USPTO expressly wrote "If the entire amount received by the third party for the practitioner's compensation is not distributed to the practitioner and any undistributed compensation held by the third party is not returned to the inventor, then the practitioner has likely impermissibly shared fees with a non-practitioner." In re Mikhailova, Proceeding No. D2017-18, (USPTO June 16, 2017), *See* **Exhibit V** at 8.

Attorney Defendants and UpCounsel, then Attorney Defendants and UpCounsel are violating the rules with respect to fee sharing and are therefore unfairly competing with Plaintiffs. If the rules do not apply, then Plaintiffs are free to adopt UpCounsel's business model for Trademarkia and are able to fairly compete.

11. In either case, UpCounsel's manner of disclosing shared fees to its customers is misleading. They give the impression that the processing fee is not added to the attorney fee, when in fact, it is. Plaintiffs have lost significant business as a result of UpCounsel's false and misleading promotional statements. Because "processing fees" are a central tenet of UpCounsel's business model, this case will definitively answer the question of the legality of UpCounsel's business model.

## THE PARTIES

**The Plaintiffs**

12. Plaintiff LegalForce RAPC Worldwide, P.C. ("RAPC") is a law firm wholly owned by Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar. The firm practices patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real, Suite 10, Mountain View, CA 94040, and a law office located at 446 E. Southern Ave., Tempe, AZ 85282.

13. Plaintiff LegalForce, Inc. ("Trademarkia") is a Delaware corporation offering law firm automation and free trademark search services through its website Trademarkia.com with a principal place of business at 1580 W. El Camino Real, Suite 9, Mountain View, CA 94040.

**The Defendants**

14. UpCounsel, Inc. ("UpCounsel") is a Delaware corporation with a principal place of business at 580 Market Street, 5th Floor, San Francisco, CA 94104. Matthew Faustman is a suspended California licensed attorney (Bar # 273,822) with a principal place of business at 2042 Larkin St, San Francisco, CA 94109, and is the CEO of UpCounsel, Inc.

15. Elizabeth J. Oliner is a California licensed attorney (Bar # 276,325) with a principal place of business at 345 Grove St., San Francisco, CA 94102. Oliner is a former attorney at RAPC and a current shareholder of Plaintiff Trademarkia. After leaving RAPC, upon information and belief, Oliner helped pioneer the trademark service at UpCounsel and remains the most prolific trademark attorney hirable through UpCounsel.

16. Seth W. Wiener is a California licensed attorney (Bar # 203,747) with a principal place of business at 609 Karina Ct., San Ramon, CA 94582.  Weiner  is  the  second most prolific trademark attorney hirable through UpCounsel, upon information and belief.

17. Kanika Radhakrishnan is a California licensed attorney (Bar # 209,087) with a principal place of business at 2570 N. 1st St., 200, San Jose, CA 95131. Radhakrishnan is the third most prolific trademark attorney hirable through UpCounsel, upon information and belief.

18. And DOES 1-1000, which include, but is not limited, each and every U.S. licensed attorney who is permitting UpCounsel to their mark up their attorney fees by percentage as processing fees collected directly from their clients, including individuals shown on **Exhibit C** with respect to U.S. trademark preparation and prosecution before the USPTO.

## JURISDICTION AND VENUE

19. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 2201 and 1331 because this action arises under the Lanham Act and because Plaintiffs seek a declaration of rights to resolve an actual case or controversy arising under federal law. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as the federal claims.

20. This Court has general personal jurisdiction over UpCounsel because

UpCounsel's principal place of business is in California. Alternatively, this Court has specific personal jurisdiction over UpCounsel because UpCounsel purposefully directed its advertisements or promotions at consumers in California and caused harm to Plaintiffs in California. UpCounsel thus has minimum contacts with the State of California and those contacts are related to this lawsuit.

21. This Court has general personal jurisdiction over Attorney Defendants because Attorney Defendants all have principal place of business in California. Alternatively, this Court has specific personal jurisdiction over Attorney Defendants because Attorney Defendants purposefully directed their advertisements or promotions at consumers in California and caused harm to Plaintiffs in California. Attorney Defendants thus have minimum contacts with the State of California and those contacts are related to this lawsuit.

22. Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district. In addition, upon information and belief, all Defendants have numerous customers in northern California related to trademark matters. Therefore, it is convenient for third-party witnesses to testify in this Court regarding the services they received from Defendants. It is also necessary for the third-party witnesses and jurors residing in this district to testify what Defendants' advertisements are false or misleading as to the members of the public of the State of California. In addition, judges in this district are more familiar with California laws than judges in other states. Moreover, California has a general policy interest in protecting residents harmed by violations of California law by in-state actors such as the Defendants.

//

//

//

//

## SUBSTANTIVE ALLEGATIONS

### I.  Abhyanker' pioneering efforts in online legal marketplaces

23. Abhyanker has been an early pioneer of legal marketplaces. After leading an Internet neighborhood social network through two rounds of venture funding in 2007 (which later sold to Google, Inc.), Abhyanker built the very first legal marketplace for online legal services called LegalForce.com (LegalForce One). Through this website, users were able to hire, manage and pay lawyers and legal staff for legal projects (**Exhibit E**).

24. On June 12, 2008, Abhyanker received an offer for venture capital funding from prominent venture capitalist investor Kevin Compton, a partner of Kleiner Perkins Caufield & Byers; and Jeff Drazan, Partner of Sierra Ventures and Bertam Capital, for $500,000.00 in a Series A financing offer (**Exhibit F**).  Abhyanker was willing to work for $1 per year salary as part of this term sheet until the next round of funding with no rent charged the LegalForce One in Abhyanker's law office (**Exhibit F**).

25. Over the next few days, during diligence discussions, requests were made by the venture capitalists that LegalForce One's business model adapt to permit markup of attorney fees secured through the LegalForce One website to scale revenues faster and achieve an inflection point before a next round of funding.  Abhyanker's believed that this financial arrangement between a non-lawyer and and lawyer would violate obligations to the USPTO and the California State Bar with respect to fee sharing. Abhyanker refused to break USPTO and State Bar rules. Concerns were then raised how fast law firms would agree to sign up given the regulatory hurdles on fee sharing. The investors met with Gordy Davison, leading IP attorney and founder of Fenwick & West, on or about June 17, 2008, as well as other IP attorneys (**Exhibit G**). Upon information and belief, Gordy Davison and IP attorneys confirmed rules with respect to fee sharing. Hence, term sheets were never finalized  (**Exhibit H**).

//

//

**II.  UpCounsel copycat website of Abhyanker's pioneering efforts.**

26. About four years after Abhyanker, suspended attorney Matthew Faustman ("Faustman") launched his copycat website UpCounsel.com in 2012. Like Abhyanker's pioneering efforts for LegalForce One years earlier in 2008, UpCounsel is an online marketplace for legal services that enables users (primarily entrepreneurs and businesses) to find and hire attorneys via their site. UpCounsel has fully launched its service in California, New York, Illinois, Texas, Massachusetts and Colorado.

27. Faustman and UpCounsel have consciously ignored CRPC Rule 1-320 and USPTO rule 37 C.F.R. § 11.504 with respect to fee sharing with non-attorneys in order to achieve success, upon information and belief.  Faustman and UpCounsel have also ignored California Rule Rule 1-400 (**Exhibit W**) and USPTO 37 C.F.R.  § 11.703 (**Exhibit X**) with respect to phone and in-person solicitation of non-clients, upon information and belief. Plaintiffs have refused to violate these rules.

28. As a result, UpCounsel has steamed ahead of Plaintiffs. UpCounsel has raised approximately fourteen million dollars ($14 million) in venture capital.   In its last round, UpCounsel has stated that the venture capital it has raised will be used to "expand marketing, sales and services."[7]   Unlike Plaintiffs, UpCounsel is able to hire experienced non-attorney salespeople, and upon information and belief, provides commission to these salespeople.

**III.  Cold calling solicitation by Attorney Defendants and UpCounsel.**

29. UpCounsel has been known to co-locate in "co-working" and "startup" incubator spaces for the specific purpose of in-person solicitation of potential clients with whom the Attorney Defendants have no prior relationship. Therefore, UpCounsel and Attorney Defendants are in violation of the solicitation[8] provisions under CRPC Rule

---

[7] **UpCounsel raises $10M to grow on-demand lawyer platform**, July 28, 2015, http://fortune.com/2015/07/28/upcounsel/, last checked May 2, 2018.

[8]  CRPC Rule 1-400(B) defines a solicitation as  any communication: (1) Concerning the availability for professional employment of a member or a law firm in which a significant motive is pecuniary gain; and (2) Which is: (a) delivered in person or by telephone, or (b) directed by any means to a person known to the sender to be represented by counsel in a matter which is a subject of the communication.

1-400[9], upon information and belief. For example, UpCounsel advertises job posting for "Account Executive" whose job description includes to "achieve and consistently exceed monthly sales goals" who is "obsessed with winning and closing deals." (**Exhibit I**). UpCounsel also hires a "Business Development Partner" who is a "person who can connect with anyone, with the right mix of persistence and charm" in addition to being a "hunter and a relationship builder" for clients (**Exhibit J**). This position requires the "Business Development Partner" to "Quarterback your own pipeline of inbound and outbound lead development which includes making 40-50 calls per day" to solicit prospective clients.  Upon information and belief, these positions are commission based. Solicitations made by on behalf of Upcounsel and its Attorney Defendants are in direct violation of California Rule 1-400 and USPTO Rule 37 C.F.R. § 11.703 with respect to phone and in-person solicitation of non-clients.

**IV.  Fee sharing by Attorney Defendants and UpCounsel.**

30. UpCounsel openly admits to charging clients retaining third-party attorneys through UpCounsel processing fees (also referred to as "success fees") as a percentage proportional to the fees paid by UpCounsel to the third-party attorneys on the clients' behalf.   UpCounsel writes on its terms shown in **Exhibit K** that :

> **b. For Employer Users.**
>
> When a Consultant User accepts your Covered Offer, you agree to pay a success fee to UpCounsel (each, a "Success Fee") equal to the following percentage of the Consultant User's base salary set forth in the Covered Offer (the Consultant User's "Base Salary"), which amount shall be due and payable no later than thirty (30) days after the Start Date and otherwise in accordance with the first sentence of each of Section 13.b. and Section 13.d. hereof:

//

---

[9]  CRPC Rule 1-400(C) states that "a solicitation shall not be made by or on behalf of a member or law firm to a prospective client with whom the member or law firm has no family or prior professional relationship, unless the solicitation is protected from abridgment by the Constitution of the United States or by the Constitution of the State of California."

If Start Date occurs on or before the following number of days after the commencement of the initial Employer User-User Consultant Job Base Salary Percentage

1-182 days 15%

183-365 days 10%

366-550 days 5%

≥ 551 days 0%

By accepting these Terms of Use, Employer User agrees that UpCounsel is authorized to immediately invoice Employer User's account for all Success Fees due and payable to UpCounsel hereunder and that no additional notice or consent is required.

31. In other words, UpCounsel blatantly and openly advertises it not only marks up fees up to 15% it collects from clients as a percentage of the attorney's fees but the client's heavy burden in this regard carries forward for nearly 2 years, or 550 days.   It should be noted that this 15% mark up in its terms is materially inconsistent with its invoices, in which the mark up spikes to 24%.[10]

32. In addition to the misrepresentations of the mark up, UpCounsel attempts to "mask" this "processing fee" from its customers by including it as part of the hourly fee paid to each lawyer.   Specifically, the initial hourly rate shown to each potential client after a proposal is provided by an attorney is silent as to whether it includes the processing fee (**Exhibit L**). Only after a user clicks twice more to affirmatively expand the "Fee details" is the "success fee" unmasked to the user as "insurance and quality fees." (**Exhibit L**).   However, the percentage is not disclosed.

---

[10] UpCounsel invoices to customers state "UpCounsel only adds a small processing fee to filing fees and expenses. The fees amount to 24% of your total invoice. However, the total invoice still represents no additional costs over what you would pay this attorney if acquired outside of UpCounsel because of their exclusive discounted rate."

33. Specifically, this second pop up box vaguely says:

> This amount includes the lawyer's exclusive UpCounsel discounted rate. UpCounsel adds fees to this discounted rate to help maintain the platform and to cover critical client benefits such as quality, insurance, and our money-back guarantee. UpCounsel only adds a small processing fee to filing fees and expenses. The total invoice still represents no additional costs over what you would pay this attorney if acquired outside of UpCounsel because of their exclusive discounted rate. (**Exhibit L**).

34. The State Bar of California has recognized that the UpCounsel's fee sharing is likely against its rules. On or about September 2016, upon information and belief, the State Bar wrote admonishments to some of its members saying "The State Bar of California has received information regarding the operations of UpCounsel, Inc. Our review of the company's website shows that you have registered with UpCounsel, Inc., and currently maintain a profile on its website advertising your availability to provide legal services. We have opened this file in order to address our concern that your registration with UpCounsel, Inc., may result in a violation of the Rules of Professional Conduct."   (**Exhibit D**) The letter went on to say :

35. "We understand that business expenses, such as advertising and billing and collection services, are necessary expenses in the practice of law. However, allowing UpCounsel, Inc., to take a percentage of the attorney's fees paid by the client as a "processing fee" does not change the fact that UpCounsel, Inc., is receiving a share of legal fees which have been earned by the attorney. To insure that your conduct is in compliance with the ethical obligations of an attorney, please be sure that any fees/costs resulting from the services provided by UpCounsel are not based on a percentage of your legal fees." (**Exhibit D**)

36. Upon information and belief, each of the named Attorney Defendants received this letter, but continue to compete with RAPC and violate ethics rules.

//

//

//

//

**V.  UpCounsel's Misleading Advertising**

37. UPCOUNSEL'S   UNFAIR   GOOGLE,   BING,   AND   OTHER   ONLINE ADVERTISING  IS  UNFAIRLY  COMPETING  WITH  PLAINTIFFS,  AND,  AS  SUCH ACTIONS CAUSING IRREPARABLE HARM TO PLAINTIFFS.

38. Plaintiff RAPC and Defendant UpCounsel are large purchasers of online advertising including on Google and Bing per month for "trademark attorney" (**Exhibit M**) and "trademark lawyer" (**Exhibit N**) related search terms.   UpCounsel's advertisements advertise attorney services offered by a law firm by writing "Hire a Trademark Attorney" (**Exhibit O**) and "Hire a Trademark Lawyer" (**Exhibit P**) through its online advertisements.    In addition, UpCounsel utilizes false and misleading advertising by boasting that they include "Top 5% of Trademark Attorneys" followed by a city name in advertisements with no legitimate basis for making these claims other than their fee sharing arrangements and/or private, unpublished selection criteria, upon information and belief (**Exhibit  Q**).

39. UpCounsel claims it is not a law firm in the United States and is not authorized to practice law in any state. UpCounsel is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

40. For all intents and purposes, UpCounsel is a law firm despite its efforts to disclaim being one. For example, Faustman, the CEO of UpCounsel boasts in public interviews on YouTube that "what we have created [in] UpCounsel is equivalent to the world's largest virtual law firm."[11]

41. Faustman boasts they can deliver "high quality, cost effective, and faster solutions than what traditional law firms are actually able to provide."[12] Faustman boasts that "we've had almost 10,000 lawyers register for UpCounsel, and we've only let in about 300 at this point to work with our customers. Our customers are businesses

---

[11] Competitor or Collaborator? What UpCounsel's Growth Means for BigLaw, March 5, 2015. https://www.youtube.com/watch?v=FG1ZBCL181I&app=desktop&t=0m44s  & https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=0m30s

[12] Persian Tech Conf, December 12, 2014, https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=1m20s

between 5 and now 5000 employees."[13] Moreover, Faustman admits that his business takes on the equivalence of a law firm when he admits "What we do is kind-of provide the backend infrastructure for our lawyers. Our dream is that they will never have to do a day of admin so long as they are on UpCounsel."[14] Faustman goes on to admit "we offer this as an alternative or complement to businesses and legal departments to the traditional law firm."[15]

42. By characterizing UpCounsel as equivalent to a "law firm" and later admitting through his own statements that UpCounsel is an alternative to traditional law firms, Faustman essentially admits that UpCounsel is a "law firm," and for this reason the Plaintiffs allege UpCounsel should be held to the same ethical standards as a law firm. Faustman even says publicly that UpCounsel is "as good as using a law firm."[16] Co-Founder of UpCounsel and CTO also admits that UpCounsel is a "is essentially a virtualized law firm in a box."[17]

43. Faustman readily admits that he is creating a monopoly in the absence of competition.  UpCounsel also says that "marketplaces are all about time. It is a story of time. How fast you can build that marketplace" and "how fast you can get to liquidity" so that you can "beat the folks that are next to you", and "it is not because of great design and it is not about great technology."[18]

44. Moreover, Faustman says he wants to create a monopoly when he admits he wants to create one of the "biggest monopolies in the world"[19] because "they are the hardest type of businesses to kill no matter how much you want to kill them, no matter how much you hate them, they are *really, really* hard to kill them once you actually get

---

[13] Competitor or Collaborator? What UpCounsel's Growth Means for BigLaw, March 5, 2015. https://www.youtube.com/watch?v=FG1ZBCL181I&app=desktop&t=1m35s
[14] Competitor or Collaborator? What UpCounsel's Growth Means for BigLaw, March 5, 2015. https://www.youtube.com/watch?v=FG1ZBCL181I&app=desktop&t=2m05s
[15] Competitor or Collaborator? What UpCounsel's Growth Means for BigLaw, March 5, 2015. https://www.youtube.com/watch?v=FG1ZBCL181I&app=desktop&t=2m40s
[16] Episode 1028 | Inside UpCounsel's Mission to Modernize the Legal Industry, Sept. 21, 2015, https://www.youtube.com/watch?v=eKe3y2aEG2I&app=desktop&t=8m28s
[17] Episode 1028 | Inside UpCounsel's Mission to Modernize the Legal Industry, Sept. 21, 2015, https://www.youtube.com/watch?v=eKe3y2aEG2I&app=desktop&t=2m22s
[18] Persian Tech Conference, Dec. 12, 2014, https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=6m45s
[19] Persian Tech Conference, Dec. 12, 2014, https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=3m50s

them moving."[20] Faustman cites examples of Uber and AirBnB as his models because they are "two of the fastest growing companies as far as valuation are both marketplaces."[21]

45. As a result, despite Abhyanker having an early start, Plaintiffs are not able to compete fairly despite having an early start because they cannot fee share with non-attorneys. For this reason, based on UpCounsel's own admissions, UpCounsel has unfairly threatened RAPC's business directly by unfairly competing with Plaintiffs.

46. Specifically, UpCounsel sells, offers for sale, distributes, and/or advertises goods and services to consumers that directly compete with RAPC's own attorney services.   UpCounsel purchases advertisements whenever consumers search terms related to the practice of trademark law including "trademark attorney" and "trademark lawyer." Attorney Defendants through UpCounsel reflect among the largest attorney filers of trademarks before the U.S. Patent and Trademark Office. Upon information and belief, the growth in filings by Attorney Defendants is a direct results of widespread and aggressive advertising on the Internet and phone solicitation of non-clients by UpCounsel. UpCounsel is among the top purchasers of Google AdWords related to terms involving trademark filing before the USPTO, spending more than $25,000 per month for such terms as "trademark attorney" upon information and belief.

47. UpCounsel advertisements and other promotional statements are false and misleading to reasonable consumers. For example:

   a. Although UpCounsel represents on its website that it is not a law firm, it publicly boasts that it is the "equivalent to the world's largest virtual law firm."

   b. UpCounsel deceptively hides and conceals exactly how much fees Attorney Defendants or customers pay to it as part of its success fee, ranging from 15% to 24%.

   c. UpCounsel purchases advertisements whenever consumers search terms related to the practice of trademark law, such as "trademark attorney" and

---

[20] Persian Tech Conference, Dec. 12, 2014, https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=4m14s
[21] Persian Tech Conference, Dec. 12, 2014, https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=3m44s

"trademark lawyer", with copy that misleads consumers into believing that they are law firm when in fact they are not.

    d. UpCounsel utilizes false and misleading advertising by boasting that they include "Top 5% of Trademark Attorneys" followed by a city name in advertisements with no legitimate basis for making these claims other than their fee sharing arrangements and/or private, unpublished selection criteria, upon information and belief.

48. If consumers rely on Attorney Defendants through UpCounsel's advertising alone to make their purchasing decision, they believe they are hiring an attorney and therefore communications through UpCounsel are protected by attorney/client privilege, which they are not. UpCounsel leaves them with no confidentiality protections through the website.

49. RAPC has lost revenue due to Attorney Defendants and UpCounsel's conduct. Attorney Defendants and UpCounsel's false advertising and unfair competition have caused consumers to purchase UpCounsel's services instead of RAPC's services. But for the misleading advertisements and unfair competition with respect to the comparability of UpCounsel's services with those of the Plaintiffs, a good percentage of consumers likely would not have consented to "processing fees" with UpCounsel and Attorney Defendants, and opted for those of RAPC instead. In total, RAPC's lost sales opportunities exceed $1,000,000 based on the lifetime value per customer in the past five years alone.

50. RAPC has also lost asset value. Given that Plaintiffs are the largest filer of U.S. trademarks in the United States for at least the last 5 years, it has seen its market share decline from nearly 3% of all U.S. trademarks filed in the United States in 2011 to approximately 1.8% in 2017, as a direct consequence of UpCounsel's unfair competition. RAPC has lost market share of approximately 1.1% of the overall trademark market since 2011 (approximately 5000 trademarks filings per year) in the relevant market for U.S. trademark filing and prosecution as direct result of UpCounsel

false and misleading business practices and representations. Tellingly, RAPC ceased making the INC5000 list of the fastest growing companies in America in 2015 after 4 consecutive years of making the list. (see: https://www.inc.com/profile/RAPC-rapc). Plaintiffs value of their business has been directly reduced and negotiations with potential acquirers have stalled.

51. Moreover, RAPC's advertising costs have increased. RAPC's cost per click and total advertising attract trademark clients has gone up by approximately 30% as a consequence of UpCounsel's conduct.

### FIRST CLAIM FOR RELIEF
DECLARATORY JUDGMENT
(Against all Defendants and DOES 1-200)

52.  Plaintiffs repeat each and every allegations contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

53. An actual controversy has arisen and now exists between Plaintiffs and Defendants, regarding Attorney Defendants and UpCounsel's false advertising and unfair business practices, which necessarily requires a foundational determination as to whether UpCounsel is subject to fee sharing and solicitation rules of the State Bar of California.

54. Trademarkia seeks a declaration:

    a. LegalForce, Inc., a legal technology C corporation organized in Delaware and substantially owned by California and USPTO licensed attorney Raj Abhyanker is permitted to operate a legal marketplace website similar to UpCounsel that marks up attorney fees as "processing fees" calculated as a percentage of the attorney fees paid by clients retaining independent lawyers through the Trademarkia.com and LegalForce.com websites.

55. RAPC seeks a declaration as to:

    a. Whether UpCounsel is a "law firm" and therefore subject to the ethics rules of State Bar of California and the USPTO including with respect to fee

sharing and phone solicitation because UpCounsel operates as a *de facto* law firm by openly advertising that it is "equivalent to the world's largest virtual law firm"[22] and purchases advertisements steering customers to "trademark attorneys."

b. Whether Attorney Defendants are engaged in the unauthorized fee sharing as defined by the State Bar of California and USPTO regulations by permitting UpCounsel to mark up their attorney fees by percentage as processing fees collected directly from clients of the Attorney Defendants.

**SECOND CLAIM FOR RELIEF**
FALSE ADVERTISING AND UNFAIR COMPETITION
THE LANHAM ACT, 15 U.S.C. § 1125(a)
(Against UpCounsel)

56. Plaintiffs repeat each and every allegations contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

57. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

(1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--...

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

58. UpCounsel made false and misleading descriptions and representations of fact in commerce:

---

[22] Competitor or Collaborator? What UpCounsel's Growth Means for BigLaw, March 5, 2015. https://www.youtube.com/watch?v=FG1ZBCL181I&app=desktop&t=0m44s  & https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=0m30s

a. Although UpCounsel represents on its website that it is not a law firm, it publicly boasts that it is the "equivalent to the world's largest virtual law firm."

b. UpCounsel deceptively hides and conceals exactly how much fees Attorney Defendants or customers pay to it as part of its success fee, ranging from 15% to 24%.

c. UpCounsel purchases advertisements whenever consumers search terms related to the practice of trademark law, such as "trademark attorney" and "trademark lawyer", with copy that misleads consumers into believing that they are law firm when in fact they are not.

d. UpCounsel utilizes false and misleading advertising by boasting that they include "Top 5% of Trademark Attorneys" followed by a city name in advertisements with no legitimate basis for making these claims other than their fee sharing arrangements and/or private, unpublished selection criteria, upon information and belief.

59. The statements were made in connection with services offered by UpCounsel.

60. The statements relate to descriptions or representations of fact that misrepresent the nature, characteristics, and quality of UpCounsel's services.

61. A substantial segment of consumers are likely to be deceived by UpCounsel's statements.

62. UpCounsel's false and misleading advertisements have caused and, unless enjoined, will continue to cause immediate and irreparable harm to RAPC for which there is no adequate remedy at law. In addition, as a result of UpCounsel's false and misleading advertisements, RAPC has been injured, including but not limited to, decline in sales and market share, loss of goodwill, and additional losses and damages. Furthermore, UpCounsel has been unjustly enriched at the expense of RAPC as a consequence of UpCounsel's false and misleading advertising. Accordingly, RAPC is entitled to injunctive relief and to recover up to three times the damages sustained by RAPC, enhanced profits and costs, as well as UpCounsel's

profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**THIRD CLAIM FOR RELIEF**
CALIFORNIA FALSE & MISLEADING ADVERTISING
CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*
(Against UpCounsel)

63.  Plaintiffs repeats each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

64. UpCounsel publicly disseminated internet advertisements with the intent to perform services to consumers in the State of California, as further described in this Complaint.

65. UpCounsel's advertisements were false, misleading, and untrue, as further described in this Complaint.

66. UpCounsel's advertisements are likely to and actually have deceived consumers. Consumers have purchased Defendants' services instead of Plaintiffs' services as a result of their deception.

67. Plaintiffs have suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to UpCounsel, increased advertising costs and loss of valuable business opportunities, all belonged to or vested to Plaintiffs but taken away by UpCounsel as a result of its wrongful acts.

68. UpCounsel has been unjustly enriched through its false and misleading advertising.

69. If UpCounsel is not preliminarily or permanently enjoined, it will continue to derive revenue, profits, market share and sales from Plaintiffs by wrongful acts. Unless restrained by this court, UpCounsel will cause additional injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

70. Plaintiffs seek an order of this Court under California Business & Professions Code § 17500 to preliminarily and permanently enjoin UpCounsel from continuing to engage in the false and misleading advertising set forth herein.

1

**FOURTH CLAIM FOR RELIEF**

2

<u>CALIFORNIA UNFAIR COMPETITION IN VIOLATION OF</u>
<u>CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*</u>

3

(Against UpCounsel, Attorney Defendants and DOES 1-200)

4

71. Plaintiffs repeat each and every allegation contained in the paragraphs above

5

and incorporate by reference each preceding paragraph as though fully set forth

6

herein.

7

72. RAPC has standing because they have suffered injury in fact and lost money,

8

including diverted sales to Defendants, lost revenue, loss of market share, reduced

9

asset value, and increased advertising costs.

10

73. Attorney Defendants have violated the unlawful prong of UCL by:

11

    a.  violating the fee sharing rules of 37 C.F.R. § 11.504 and the equivalent state

12

        bar rules (e.g., CRPC 1-320) by allowing UpCounsel to mark up the attorney

13

        fee that their clients pay them through UpCounsel with a "processing fee" -

14

        calculated as a percentage of the attorney fee.

15

    b.  violating solicitation provisions under 37 C.F.R. § 11.703 and the equivalent

16

        state bar rules (e.g., CRPC 1-400) with respect to phone and in-person

17

        solicitation of non-clients by UpCounsel.

18

74. UpCounsel has violated the unlawful prong of UCL by:

19

    a.  aiding and abetting Attorney Defendants to violate the fee sharing rules of 37

20

        C.F.R. § 11.504 and the equivalent state bar rules (e.g., CRPC 1-320).

21

    b.  aiding and abetting Attorney Defendants to violate the solicitation provisions

22

        under 37 C.F.R. § 11.703 and the equivalent state bar rules (e.g., CRPC

23

        1-400).

24

    c.  holding itself out as a "virtual law firm" in violation of Cal. Bus. & Prof. Code §

25

        6126. "Virtual law firm" is commonly understood in the industry as a legal

26

        practice that does not have a bricks-and-mortar office, but operates from the

27

        homes or satellite offices of its lawyers, usually delivering services to clients

28

        at a distance using technological means of communication.   For example,

"The virtual law firm—an office with no mahogany-walled waiting room, no expensive downtown location and no expensive overhead"  *See, e.g.,* ABA Journal.

75. Attorney Defendants have violated the unfair prong of UCL because of, and not limited to, the following:

   a. Their practice is unethical because it violates the ethical rules of professional conduct regulated by the state bars and the USPTO.

   b. Their practice is immoral because they utilize the false and misleading advertising and unlawful practices of non-attorneys such as UpCounsel as means to violate the ethical rules of professional conduct regulated by the state bars and the USPTO.

   c. Their practice is substantially injurious to consumers because Attorney Defendants do not have complete independent judgment in their clients' cases because of the financial influence from non-attorneys such as UpCounsel due to fee sharing and other violations.

76. UpCounsel has violated the unfair prong of UCL because of, and not limited to, the following:

   a. Although UpCounsel represents on its website that it is not a law firm, it publicly and unethically boasts that it is the "equivalent to the world's largest virtual law firm."

   b. UpCounsel immorally, unethically and deceptively hides and conceals exactly how much fees Attorney Defendants or customers pay to it as part of its success fee, ranging from 15% to 24%.

   c. UpCounsel purchases advertisements whenever consumers search terms related to the practice of trademark law, such as "trademark attorney" and "trademark lawyer", with copy that misleads consumers into believing that they are law firm when in fact they are not.

   d. UpCounsel utilizes false and misleading advertising by boasting that they

include "Top 5% of Trademark Attorneys" followed by a city name in advertisements with no legitimate basis for making these claims other than their fee sharing arrangements and/or private, unpublished selection criteria, upon information and belief.

77. UpCounsel has violated the fraudulent prong of UCL because of, and not limited to, the following:

    a. *Who* - UpCounsel.

    b. *What* - Intentionally hiding its "processing fees" paid by customers through its UpCounsel.com website.

    c. *When* - Between approximately January 1, 2016 and continuing through today.

    d. *Where* - Across the United States and the world through their Internet website UpCounsel.

    e. *How* - Deceptively hiding and concealing exactly how much in fees Attorney Defendants or customers pay to it as part of its success fee, ranging from 15% to 24%.

    f. These fraudulent business acts and practices are likely to deceive reasonable consumers.

78. Trademarkia is informed and believes that UpCounsel, as a competitor to Trademarkia, performed the acts alleged herein for the purpose of injuring Trademarkia. The acts alleged herein continue to this day and present a threat to Trademarkia, the general public, the trade and consumers.

79. As a result of UpCounsel's wrongful acts, Trademarkia has suffered and will continue to be unable to attract venture capital needed to build a marketplace of independent attorneys for small business owners because it will not be able to scale revenues faster and achieve an inflection point before a next round of funding.   As a result of Defendants' wrongful acts, Trademarkia has suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value,

diverted sales to Defendants, increased advertising costs and loss of valuable business opportunities, all belonged to or vested to Trademarkia but taken away by Defendants as a result of their wrongful acts.

80. RAPC is informed and believes that UpCounsel, as a competitor to RAPC, performed the acts alleged herein for the purpose of injuring RAPC. The acts alleged herein continue to this day and present a threat to RAPC, the general public, the trade and consumers.

81. As a result of Defendants' wrongful acts, RAPC has suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to Defendants, increased advertising costs and loss of valuable business opportunities, all belonged to or vested to RAPC but taken away by Defendants as a result of their wrongful acts.

82. Plaintiffs seek an order of this Court under California Business & Professions Code § 17200 that preliminarily and permanently enjoins Defendants from continuing to engage in the unlawful, unfair and fraudulent acts or practices set forth herein, as well as restitution.

//
//
//
//
//
//
//
//
//
//
//
//

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

    1.   Trademarkia seeks a declaration:

        a.  LegalForce, Inc., a legal technology C corporation organized in Delaware and substantially owned by California and USPTO licensed attorney Raj Abhyanker is permitted to operate a legal marketplace website similar to UpCounsel that marks up attorney fees as "processing fees" calculated as a percentage of the attorney fees paid by clients retaining independent lawyers through the Trademarkia.com and LegalForce.com websites.

    2.  RAPC seeks a declaration as to:

        a.  Whether UpCounsel is a "law firm" and therefore subject to the ethics rules of State Bar of California and the USPTO including with respect to fee sharing and phone solicitation because UpCounsel operates as a *de facto* law firm by openly advertising that it is "equivalent to the world's largest virtual law firm"[23] and purchases advertisements steering customers to "trademark attorneys."

        b.  Whether Attorney Defendants are engaged in the unauthorized fee sharing as defined by the State Bar of California and USPTO regulations by permitting UpCounsel to mark up their attorney fees by percentage as processing fees collected directly from clients of the Attorney Defendants.

    3.  Enter judgment against UpCounsel and Attorney Defendants;

    4.  Award RAPC compensatory damages against UpCounsel and Attorney Defendants in an amount to be proven at trial;

    5.  Award Plaintiffs their costs and expenses of this action against UpCounsel

---

[23] Competitor or Collaborator? What UpCounsel's Growth Means for BigLaw, March 5, 2015. https://www.youtube.com/watch?v=FG1ZBCL181I&app=desktop&t=0m44s  & https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=0m30s

and Attorney Defendants, including their reasonable attorneys' fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 1117(a).

6. Award Plaintiffs' pre- and post-judgment interest at the applicable rates on all amounts awarded;

7. Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint; and

8. Order any other such relief as the Court deems appropriate.

Respectfully submitted this Wednesday May 2, 2018.

LegalForce RAPC Worldwide P.C.

By  /s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C. and
LegalForce, Inc.

1

## JURY TRIAL DEMAND

2     Plaintiffs hereby request a bench trial for the declaratory judgement and

3 injunction causes of action, and a jury trial for all other causes of action alleged in this

4 Complaint.

5

6     Respectfully submitted this Wednesday May 2, 2018.

7

8                                    LegalForce RAPC Worldwide P.C.

9

10                                   By___/s/ Raj V. Abhyanker_____
                                     Raj V. Abhyanker
11                                   California State Bar No. 233,284
                                     Plaintiff & Attorney for Plaintiffs:
12                                   LegalForce RAPC Worldwide, P.C. and
                                     LegalForce, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28