1  RAJ V. ABHYANKER, California SBN 233284
   Email: raj@legalforcelaw.com
2  WENSHENG MA, California SBN 299961
3  Email: vincent@legalforcelaw.com

4  LEGALFORCE RAPC WORLDWIDE, P.C.
5  1580 W. El Camino Real, Suite 10
   Mountain View, CA 94040
6  Telephone:    (650) 965-8731
   Facsimile:    (650) 989-2131
7
8  Attorney for Plaintiffs,
   LegalForce RAPC Worldwide, P.C. and
9  LegalForce, Inc.

10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                          OAKLAND DIVISION
13

14
   LEGALFORCE RAPC WORLDWIDE,        Case No.:  4:18-cv-02573-YGR
15 P.C. and LEGALFORCE, INC.,
                                     **PLAINTIFFS' OPPOSITION TO
16         Plaintiffs,               DEFENDANT'S MOTION TO DISMISS**

17
           v.                        Date:       August 28, 2018
18                                   Time:       2:00 p.m.
   UPCOUNSEL, INC.; and DOES 1-1000, Dept.:      Courtroom 1
19 INCLUSIVE,                        Judge:      Hon. Yvonne Gonzalez Rogers
20
           Defendants.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**I.  INTRODUCTION**                                                                          **6**

**II.  PROCEDURAL BACKGROUND**                                                               **7**

**III. LEGAL STANDARD**                                                                       **7**

**IV. ARGUMENT**                                                                              **7**

A.  Plaintiffs Have Standing For All Claims Asserted in the Complaint                         7
    1. This Court has Subject Matter Jurisdiction Over the Declaratory Relief Requested   7
    2. Plaintiffs Have Standing to Bring a Claim Under the Declaratory Judgment Act   8
    3. Primary Jurisdiction Doctrine is Inappropriate                                8

B. Plaintiff Sufficiently Pleaded Plausible Claims under the Lanham Act, FAL, and UCL         9
    1. Mr. Faustman's Statement is Commercial Speech and is False and Misleading    9
    2. UpCounsel's Advertised Referral Markup Fees are Misleading                   11
    3. Keyword Advertising is Actionable Under the Lanham Act                       11
    4. Defendant's Specific Assertions of Its Attorneys' Quality is Not Mere Puffery   12
    5. RAPC Sufficiently Pleaded With Particularity Its Claim of False and
    Misleading Advertisements Regarding Fees                                         14

C. Plaintiff Sufficiently Pleaded Causation Under the Lanham Act                              15

D. Plaintiffs Successfully Assert Article III and Statutory Standing for the UCL
and FAL Claims in the Complaint                                                               16
    1.  The Statutory Standing Requirements of California's UCL and FAL
    Incorporate the Article III Injury in Fact Standing Requirement                  17
    2.  The Complaint Sufficiently Pleads Statutory and Article III Standing Under
    the UCL and FAL Claims                                                            17
    3.  The Complaint States a Plausible Claim Under the Unlawful Prong of UCL       18
    4.  The Complaint States a Plausible Claim Under the Unfair Prong of UCL         20
    5.  The Complaint States a Plausible Claim Under the Fraudulent Prong of UCL     21
    6.  Plaintiffs Request Various Forms of Relief Under all Causes Alleged to the
    Extent Permitted                                                                 21

**IV. CONCLUSION**                                                                           **22**

# TABLE OF AUTHORITIES

**Cases**

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
 640 F.3d 1377 (Fed. Cir. 2011) …….…………………...….…………….....… 18

*AngioScore, Inc. v. TriReme Med., Inc.*,
 2015 U.S. Dist. LEXIS 86041 (N.D. Cal. July 1, 2015) ……....….………..………… 18

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ….....…….…….........………………………….…….…....7

*Avid Identification Sys. v. Schering-Plough Corp.*,
 33 F. App'x 854 (9th Cir. 2002) ………….………………………….…..........… 13

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015)   …………….....……….…….………. 12

*Bell Atlantic v. Twombly*,
 550 U.S. 544 (2007) …………….……….....…….…………...….…………….....… 7

*Birdsong v. Apple, Inc.*,
 590  F.3d  955  (9th Cir. 2009) …………….……………….……..................…..
17

*Campbell v. Feld Entm't, Inc.*,
 2013 U.S. Dist. LEXIS 145495 (N.D. Cal. Oct. 4, 2013)…………………….…..…  21

*Cundiff v. GTE California Inc.*,
 101 Cal. App. 4th 1395 (2002) ……....…….…………………….…………….. 9

*Hadley v. Kellogg Sales Co.*,
 243 F. Supp. 3d 1074 (N.D. Cal. 2017) ……………………......….……..... 18, 19

*In re Nexus 6P Prods. Liab. Litig.*,
 2018 U.S. Dist. LEXIS 35739 (N.D. Cal. Mar. 5, 2018) ……………………..…  20

*Kasky v. Nike, Inc.*,
 27 Cal. 4th 939 (2002) ………………….....…….………………….…...…  10

*Kwikset Corp. v. Superior Court*,
 51 Cal. 4th 310 (2011) …………….…….………………….......….……...  17, 21

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
 114 F. Supp. 3d 852 (N.D. Cal. 2015)  …………….……………….…….…....…  10

*Law Offices of Matthew Higbee v. Expungement Assistance Servs.*,
 214 Cal. App. 4th 544 (Cal. 4th 2013)…………………………………17, 18, 20, 21

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,

134 S. Ct. 1377 (2014) ……………………………………….................... 16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...……….………………………..……..…... 16, 17

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ...……..……....………………….……..…..... 8

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) ...….……………………….......... 14

*Ozeran v. Jacobs,*
    2018 U.S. Dist. LEXIS 70543 (C.D. Cal. Apr. 25, 2018)…..……….…......…..... 18

*People ex rel. Herrera v Stender,*
    212 Cal. App. 4th 614 (2012) ..……….………………………...... 19

*Powell v. McCormack,*
    395 U.S. 486 (1969) ...………..……………………….……..….... 8

*Rojas v. Gen. Mills, Inc.,*
    2014 U.S. Dist. LEXIS 41315 (N.D. Cal. Mar. 26, 2014) ……...…………..…....... 13

*Rubin v. Green,*
    4 Cal. 4th 1187 (1993) ...………………………….......... 19

*SKEDCO, Inc. v. ARC Prods., Ltd. Liab. Co.,*
    2014 U.S. Dist. LEXIS 74455 (D. Or. June 2, 2014) ……...……..........……...... 10

*Smedt v. Hain Celestial Grp., Inc.,*
    2014 U.S. Dist. LEXIS 74291 (N.D. Cal. May 30, 2014) ...……..............……...…... 9

*TrafficSchool.com, Inc. v. Edriver Inc.,*
    653 F.3d 820 (9th Cir. 2011) …………………………...…….…..........……........ 15


**Federal Statutes**

15 U.S.C § 1125(a) ...……………………………………………….….….... 7

15 U.S.C. § 1125(a)(1)(B)…………………………………………………..... 10

15 U.S.C. § 1125(d) ...………………………………………………….......... 12

15 U.S.C. § 1125(d)(1)(B)(V) …………………………………………........ 12

28 U.S.C. § 1331 ...……..………...….………………….…..…. 8

28 U.S.C. § 2201 ...…………..……………………….……..…. 8

28 U.S.C. § 2201(a) ...…………………………..………….…...7, 8

**State Statutes**

Cal. Bus. & Prof. Code § 6126 …………………..………………………….…. 20

**Federal Rules**

Fed R. Civ. P. 12(b)(6)...………………………...…………………………..... 6, 7

Fed R. Civ. P. 9(b) ...……………………...…………………………………… 14, 19

**State Rules**

Cal. R. Prof. Conduct 1-320 ...………………...……….…………………… 20

Cal. R. Prof. Conduct 1-400 ...………………...……….…………………..... 20

**Federal Regulations**

37 C.F.R. § 11.504 ...…………………...……………………………….…
20

37 C.F.R. § 11.703 ...…………………...……………………………….…
20

## I.    <u>INTRODUCTION</u>

The pace of technology often surpasses that which can be matched by law. While this is arguably not a bad thing it does lead to adjustment periods where the legal industry must implement changes and adapt in order to catch up with technology. The current case is a result of that gap in the evolutionary rate between law and technology. As technology advances and opens up new opportunities for efficiency and cost-savings, legal professionals must work within the existing professional framework until necessary precautions and changes are made to facilitate change that protects members of the legal profession and clients that rely on the legal services. However, rather than wait for the law to catch up, some are willing to neglect current rules and ethics to try and maximize profits. Out of respect for the law and the ethical obligations of attorneys, Legalforce RAPC Worldwide, P.C. ("RAPC") and Legalforce, Inc. ("Trademarkia") (collectively, "Plaintiffs") attempt to utilize the latest technology advancements to provide better services while still abiding by the current state of the law. But Plaintiffs have seen their financial losses increase recently as more and more entities and attorneys blatantly disregard the current laws and ethical obligations in pursuit of a larger market share and more profits. Rather than continue to suffer and wait for the law to catch up to these technological advances so that Plaintiffs can evenly compete, Plaintiffs are forced to bring the current action, and other suits referenced by Defendant, in order to try and stop the unfair practices that reward unlawful and unethical behavior with a competitive advantage.

Plaintiffs' complaint sufficiently pleads all facts to state claims to relief that are plausible on their face. Plaintiffs also have pleaded facts sufficient to show statutory and Article III standing to bring the claims. Therefore, Defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim should be denied.

Defendant's motion to dismiss ("MTD") fails to show that Plaintiffs lack standing or have not sufficiently pleaded the causes of action. To overcome these deficiencies, Defendant tries to rely on determinations of some of Plaintiffs' previous cases that are different from the present case. Plaintiff provides only a cursory assertion that those cases are also market competitors, implying that they must involve identical facts and complaints. Defendant appears

1   to assume that the Court will accept those pleadings in other cases as identical in the present

2   case. Unfortunately, Defendant neglected to clarify that it already filed a motion to have the

3   present case related to Plaintiffs' prior cases, claiming that the cases all involved substantially

4   the same parties or events. **The district court disagreed--**denying Defendant's motion to relate

5   the cases on July 5, 2018, stating that the present case is **NOT** substantially related; however,

6   Defendant still extensively cites to decisions on Plaintiffs' prior pleadings throughout the

7   motion to dismiss under the misguided and refuted presumption that those actions are identical.

8   ## II.   PROCEDURAL BACKGROUND

9   Plaintiffs initially sought relief for Defendant's unfair and unlawful behavior via a

10  complaint, filed on May 2, 2018. That complaint also included claims against three UpCounsel

11  attorneys individually for their unfair and unlawful actions under California's UCL; however,

12  since all the claims against those defendants are state claims and to promote judicial efficiency,

13  RAPC voluntarily dismissed those individual defendants from the present case on July 20, 2018

14  and brought a separate action in California state court against those attorneys on July 27, 2018

15  (case number pending as of August 3, 2018).  Defendant UpCounsel, Inc. filed a motion to

16  dismiss the complaint on July 20, 2018, which Plaintiffs now oppose.

17  ## III.   LEGAL STANDARD

18  To overcome a motion to dismiss under Rule 12(b)(6), a complaint need only contain

19  sufficient facts, accepted as true, to state a claim for relief that is merely plausible on its face.

20  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570

21  (2007); Fed R. Civ. P. 12(b)(6).

22  ## IV.   ARGUMENT

23  ### A.   Plaintiffs Have Standing For All Claims Asserted in the Complaint

24  #### 1.   This Court has Subject Matter Jurisdiction Over the Declaratory Relief

25  Requested

26  Plaintiffs sufficiently pleaded subject matter jurisdiction based on a federal question

27  under 15 U.S.C § 1125(a) (the "Lanham Act"). Contrary to Defendant's assertions, Plaintiffs do

28  not rely on a claim for declaratory relief under 28 U.S.C. § 2201(a) (the "Declaratory Judgment

Act") as the sole reason for subject matter jurisdiction. In paragraph 19 of the complaint, Plaintiffs clearly state that, "[t]his Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 2201 and 1331 b*ecause this action arises under the Lanham Act*" and "supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 since they arise from the same nucleus of operative facts as the federal claims." (emphasis added).  Thus, Plaintiffs asserted a claim for declaratory relief associated with those claims.

### 2. Plaintiffs Have Standing to Bring a Claim Under the Declaratory Judgment Act

Under the Declaratory Judgment Act, a court may declare the "rights and other legal relations of any interested party seeking such declaration," in a case of actual controversy, "whether or not further relief is or could be sought."  28 U.S.C. § 2201(a). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  This is distinguished from an opinion advising on the law based on hypothetical facts. *Id.* Additionally, a court may consider declaratory relief independently even if there are other appropriate forms of relief. *Powell v. McCormack*, 395 U.S. 486, 499 (1969).

Plaintiff's complaint sufficiently alleges a substantial controversy between parties having adverse legal interests. Plaintiffs assert that Defendant is a business competitor that uses unfair and misleading practices to try to gain a competitive edge.

The claims in the complaint are far from hypothetical and show that there exists a concrete controversy between Defendant and Plaintiffs. The standing requirements for these claims are further detailed *infra* supporting the existence of an actual controversy. Article III standing for the Lanham Act claims is addressed *infra* in Section IV.C. with statutory standing argument. The statutory standing and Article III analysis for the FAL and UCL claims are also addressed *infra* in Sections IV.D.1.-2.

### 3. Primary Jurisdiction is Inappropriate

1    Defendant incorrectly states that primary jurisdiction should apply to prevent the current

2    action from proceeding in court; however, primary jurisdiction doctrine neither bars the current

3    case nor warrants a stay. The doctrine of primary jurisdiction "is concerned with situations

4    where an issue should be addressed by an administrative agency for its initial determination.

5    *Cundiff v. GTE California Inc.*, 101 Cal. App. 4th 1395, 1412 (2002). Factors that courts

6    consider for apply primary jurisdiction  are as follows: ""(1) the need to resolve an issue that (2)

7    has been placed by Congress within the jurisdiction of an administrative body having regulatory

8    authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive

9    regulatory authority that (4) requires expertise or uniformity in administration." *Smedt v. Hain*

10   *Celestial Grp., Inc*., 2014 U.S. Dist. LEXIS 74291, at *10 (N.D. Cal. May 30, 2014). "Courts

11   will also consider whether applying the doctrine presents an inadequate remedy to litigants,

12   such as whether there would be an unreasonable expense and delay." *Cundiff*, 101 Cal. App. 4th

13   at 1412.

14   Defendant states that the USPTO and California Bar should consider Plaintiffs' claims

15   without alleging or providing any support that the California Bar is considered "an

16   administrative body having regulatory authority" placed by Congress. Additionally, Plaintiffs'

17   state bar and USPTO related claims are only a portion of the claims in the case and both

18   entities' positions on the rules clearly establish what is unlawful under fee sharing and

19   soliciting. *See Smedt* at *11 ("[i]n contrast, however, where FDA policy is clearly established

20   with respect to what constitutes an unlawful or misleading label, the primary jurisdiction

21   doctrine is inapplicable because there is little risk that the courts will undermine the FDA's

22   expertise"). Here also primary jurisdiction is not appropriate because it would unnecessarily

23   hinder and delay the current proceeding, contrary to the interests of justice, and there is little

24   risk that the Court will undermine the USPTO or California Bar's expertise by determining

25   Plaintiffs' Lanham Act, UCL, and FAL claims.

26   **B.    Plaintiff Sufficiently Pleaded Plausible Claims under the Lanham Act, FAL,**

27   **and UCL**

28   **1. Mr. Faustman's Statement is Commercial Speech and is False and**

**Misleading**

As Defendant highlighted, to plead a claim under the Lanham Act for false advertising, a plaintiff need only allege a false statement of fact made by the defendant in commercial speech. 15 U.S.C. § 1125(a)(1)(B). Plaintiff fully pleaded the elements and facts, that if accepted as true, sufficiently allege that Mr. Faustman's speech was a false statement of fact made in commercial speech. Defendant does not appear to dispute the sufficiency of RAPC's pleading that Mr. Faustman's speech was a false statement of fact made by the defendant, and attempts to rest on asking the court to weigh the evidence cited and conclude that the speech was not commercial. (MTD 7:27-8:10).

Defendant's overly broad summation of case law neglects contradictory statements within the cited case and incorrectly concludes that all statements by company executives to the media that are independently published are not commercial speech. (*See id*. at p. 8.) In Defendant's cited case, *LA. Taxi Coop., Inc. v. Uber Techs., Inc.*, the court found that some statements by company representatives were not commercial speech where the statements were solicited by news journalists to specifically respond to a series of news articles critical of the company's safety risks. 114 F. Supp. 3d 852, 864 (N.D. Cal. 2015). However, the court differentiated those non-commercial solicited statements from other independently published statements in the media that were considered commercial speech, such as statements where a defendant distributed as press releases or letters to the editor, and an interview with a company executive that was published in a specialized trade magazine that highlighted the newest features of the company's products. *Id*. (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) and *SKEDCO, Inc. v. ARC Prods., LLC*, 2014 U.S. Dist. LEXIS 74455 (D. Or. June 2, 2014)).

Here, Mr. Faustman's statement is the latter type of commercial speech. The video with Mr Faustman is practically a monologue advertisement for UpCounsel, interspersed only briefly by the host to help move the presentation along and allow Mr. Faustman to describe how UpCounsel works, the company's growth, and its unique features. It is more like an early-morning weekend infomercial for UpCounsel than anything near the brief company statements solicited as part of investigative news segments produced by national network

1    journalists referred to in the *L.A. Taxi Coop.* case. Mr. Faustman was clearly selling his

2    company to the audience in a commercial speech. In fact, the blog that "independently

3    produced" the video describes the site and its founder (also the creator of Mr. Faustman's video)

4    as follows:  "Lee Pacchia is the Founder and CEO of Mimesis Law which covers the business,

5    practice and culture of Law, as well as Mimesis Labs ***which partners with companies and***

6    ***organizations to design, create and leverage video content***." (*See* Request for Judicial Notice,

7    Ex. 1) (emphasis added). It is likely that Plaintiff could learn through discovery that this video

8    was paid for by Defendant for promotional purposes, clearly as commercial speech, to advertise

9    the company. In fact, the creator of the video was recently consulted by a national news article

10   for his opinion on public relations issues and they referred to him and his blog as, "Lee Pacchia,

11   co-founder and CEO of Mimesis, ***a strategic communications consultancy firm***." (*See* Request

12   for Judicial Notice, Ex. 2) (emphasis added).

13        Rather than an investigative journalist requesting a statement for a critical news article,

14   Mr. Faustman's statement was made in the course of a mini infomercial-type of video produced

15   by the founder of a strategic communications consultancy firm that partners with companies and

16   organizations to leverage video content. RAPC's complaint sufficiently pleads that Mr.

17   Faustman's statements were false statements of facts made in commercial speech and this is

18   supported by the case cited by Defendant and the source of Mr. Faustman's speech.

19                    **2.  UpCounsel's Advertised Referral Markup Fees are Misleading**

20        As Defendant asserts, a false advertisement under the Lanham Act means that the

21   statement is "literally false . . . or that the statement was literally true but likely to mislead or

22   confuse consumers." *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir.

23   1997). The Defendant's advertised markup is only 15% under the Terms of Use; however, when

24   the client receives the invoice, he or she is then notified that the markup is actually 24%.

25   (Compl. ¶ 31.) This is not only false on its face, but even if both terms are somehow considered

26   to be true, it would still mislead or confuse clients as to the actual markup they are paying to

27   hire the UpCounsel attorneys.

28                      **3. Keyword Advertising is Actionable Under the Lanham Act**

1    Defendants argue that "keyword advertising does not violate the Lanham Act." But that is

2    only partially true: use of a competitor's mark in search terms is not a violation of the other type

3    of Lanham Act case: claims for likelihood of confusion brought by trademark holders claiming

4    a form of infringement. Indeed, the case Defendant cited does not relate to claims under the

5    Lanham Act for false or misleading advertising, it relates to likelihood of confusion claims.

6    *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, 2015 WL 5311085 (C.D. Cal. Sept.

7    10, 2015) is a case related to 15 U.S.C. § 1125(d), Cyberpiracy Prevention. *See id.* at 150

8    (keyword advertising does not violate the Lanham Act because plaintiff failed to establish

9    "likelihood of confusion", a term under 15 U.S.C. § 1125(d)(1)(B)(V)).

10    That makes sense in likelihood of confusion cases: a consumer who searches for one

11    brand can expect that competitors might have relevant offers as well, and as long as they are

12    clearly marked with the brand, consumers are not likely to be confused. And by not

13    discouraging those keywords, it serves a broader competition policy by allowing fierce

14    interbrand competition. But those values are not implicated here any more than they are when a

15    snake-oil salesman buys search terms for "FDA approved cancer treatment."

16    Plaintiffs do not allege that Defendant's advertising keywords such as "trademark

17    attorney" has infringed on Plaintiffs' trademarks or engaged in cyberpiracy. Plaintiffs allege

18    that Defendant misled consumers by creating a false equivalency by association (implying that

19    it is the trademark attorney who advertises behind the advertisement "trademark attorney"),

20    much in the same way the snake-oil salesman who tries to mislead consumers searching for

21    FDA approved cancer treatments. Plaintiffs allege that to advertise such keywords is false and

22    misleading for an entity claiming now not to be a law firm. (Compl. ¶ 38.)

23    ### 4. Defendant's Specific Assertions of Its Attorneys' Quality is Not Mere

24    ### Puffery

25    Defendant incorrectly claims that its use of the deceptive phrases, "Top 5% of Trademark

26    Attorneys in . . . ." is  non-actionable puffery under the Lanham Act. (MTD 8:26-9:2.) To

27    support its claim, Defendant also cites to RAPC's use of the phrase, "Number One in the United

28    States" on its website. (*Id.* at 9:2, n.5.) RAPC first objects to Defendant's reference to extrinsic

1    evidence in its motion to dismiss and notes that Defendant also neglected to research this claim,

2    since RAPC can easily support the claim with U.S. trademark filing statistics. (*See* Request for

3    Judicial Notice, Ex. 3.)

4           Additionally, the Ninth Circuit explained that non-actionable puffery under the Lanham

5    Act is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer

6    would rely." *Southland Sod Farms*, 108 F.3d at 1145 (internal citations and quotation marks

7    omitted). However, beyond generalized boasting, a specific and measurable advertisement of

8    product superiority is not puffery and is actionable. *See id.* (noting that claims of "50% Less

9    Mowing" was actionable); and *Avid Identification Sys. v. Schering-Plough Corp.*, 33 F. App'x

10    854 (9th Cir. 2002) (determining that various statements representing "market share to be 86%,

11    90%, 92%, and 98%, are specific and measurable claims of the type we have held actionable

12    under the Lanham Act."). In fact, the court of appeals in the *Southland Sod Farms* case clarified

13    that there does not need to be any direct comparisons to a competitor for a specific claim of

14    superiority to be actionable. *Southland Sod Farms*, 108 F.3d at 1145. "Courts analyzing whether

15    a statement constitutes puffery examine whether the statements are general assertions that say

16    nothing about the specific characteristics or components of the products or whether they are

17    specific factual assertions." *Rojas v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41315, at *16

18    (N.D. Cal. Mar. 26, 2014).

19           In the present case, Defendant's specific and measurable claim of superiority are the

20    exact type of misrepresentations that have been held actionable in the Ninth Circuit under the

21    Lanham Act. Like the *Southland Sod Farms* claims of 50% Less Mowing, and the *Avid*

22    *Identification Sys.*, statements of specific percentages of market share, Defendant's links to the

23    top 5% of trademark lawyers in an area, such as the "Top 5% of Trademark Lawyers in San

24    Francisco, California," or "Top 5% Trademark Lawyers in Mountain View, California" are

25    specific and measurable claims of superiority. This type of superiority statement is clearly

26    measurable, particularly where Defendant continues to assert it for various limited geographic

27    areas with a limited number of trademark attorneys. Furthermore, clients would reasonably rely

28    on these specific geographically limited claims, particularly in the present era where all types of

businesses and people are ranked online by user reviews or organizations. A client would reasonably believe that some kind of metric is behind the list of the top 5% of trademark lawyers in their city. This goes beyond general claims of excellent performance or getting more for less, it is measurable and clearly a false statement of fact that should not be allowed to continue at the expense of consumers and competitors, like RAPC.

### 5. RAPC Sufficiently Pleaded With Particularity Its Claim of False and Misleading Advertisements Regarding Fees

Defendant alleges that RAPC was required to plead with more specificity its claims of false and misleading advertisements and limits this allegation, in particular, to RAPC's claims that UpCounsel deceived customers with respect to fees. (MTD 9:7-10.) Under the requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), a pleading is sufficient as long as it "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993). Even if Rule 9(b) applies here, RAPC clearly met this requirement with respect to the fee advertisements for which Defendant alleges the Rule 9(b) insufficiencies. (Compl. ¶¶ 30-31, n. 10.) RAPC plainly pleaded that UpCounsel (the Who) provided misleading and deceptive percentages for the markup fees (the What) as 15% in the Terms of Use (the Where), when it is actually 24% in the invoices that are provided to the client consumers (the When and Who). (*Id.*)

RAPC not only detailed the misleading terms in its complaint, it also provided the referenced terms of use and misleading description of the fees as exhibits to its complaint. (*See id.* at. Exs. K & L.) The Defendant's advertised markup is only 15% under the Terms of Use; however, when the client receives the invoice, he or she is then notified that the markup is actually 24%. (Compl. ¶ 31.) Not only did RAPC provide the Who, What, Where, and When, it provided exhibits and detailed descriptions identifying the misrepresentations so that Defendant can adequately answer these allegations, specifically the complaint goes even further and outlines the steps taken in Defendant's deceit: "[o]nly after a user clicks twice more to affirmatively expand the 'Fee details' is the 'success fee' unmasked to the user as 'insurance

and quality fees.' However, the percentage is not disclosed." (*Id*. at ¶ 32.) Even under Defendant's asserted requirements, this most certainly must be sufficient to allege facts, which accepted as true, state a legally cognizable claim and should not be dismissed.

### C.    Plaintiff Sufficiently Pleaded Causation Under the Lanham Act

The elements of a Lanham Act § 43(a) false advertising claim are:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms*, 108 F.3d at 1139 (citations omitted).

The fifth element of a Lanham Act false advertising claim requires showing that the plaintiff was, ***or is likely to be***, injured by the false statement. *Id*. Therefore, to establish causation under the Lanham Act false advertising claim, a plaintiff need only believe that he or she is ***likely to be*** injured as a result of Defendant's false statements, actual harm is not necessary. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 824-25 (9th Cir. 2011) (stating that only a belief of likely harm is required and that a district court's determination was incorrect where it concluded a plaintiff lacked standing under the Lanham Act where the plaintiff "failed to prove . . . that they have suffered an injury in fact and lost money or property as a result of Defendants' actions, and that they provided no evidence showing a causal connection between Defendants' actions and any harm Plaintiffs incurred."). The Ninth Circuit generally presumes commercial injury, "when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." *Id*. at 826. "Thus, when plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *Id.*

RAPC and Trademarkia have clearly met this pleading requirement in the complaint. As stated in paragraphs two and forty-six of the complaint, Plaintiffs and Defendant are direct competitors; therefore, Defendant's multiple misrepresentations give rise to a presumed

1    commercial injury that is sufficient to establish standing under the Lanham Act. The complaint

2    specifically pleads and, supports with exhibits, the Defendant's false or misleading statements

3    that violate the Lanham Act -- Mr. Faustman's commercial statements, Defendant's misleading

4    and hidden fee structure, misleading online search advertisements, and the specific and

5    measurable false superiority claims. (Compl. ¶¶ 37-48, 58-62.) Furthermore, Plaintiffs provide

6    specific allegations of harm: lost sales and customer, lost market share, lost goodwill, increased

7    costs, and other damages. (Compl. ¶¶ 49-51, 62.) Although Defendant still argues that

8    Plaintiffs' claim should be dismissed since they have not alleged a single lost sale, the case

9    Defendant cited for support of their statement of proximate causation requirements does not

10   even uphold such a requirement. (MTD p. 9:16-26.) In *Lexmark Int'l Inc. v. Static Control*

11   *Components, Inc.*, 134 S. Ct. 1377, 1394 (2014), the court concluded in that case, that mere

12   assertions that the defendant made false disparaging statements about the plaintiff and its

13   product was sufficient to show injury and survive dismissal, even where the parties were not

14   direct competitors in the marketplace.

15          Additionally, the Supreme Court noted in *Lexmark* that the plaintiff's allegations of lost

16   sales and damage to its business reputation met the Article III standing requirements of a case or

17   controversy. 134 S. Ct. at 1386 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

18   (1992)). In that case, the plaintiff alleged that the defendant's false statements caused the

19   plaintiff to sell at least 10,000 fewer units and the Court concluded that the plaintiff's claims

20   were sufficient to plead a Lanham Act violation and that they were entitled to prove their case,

21   but that relief would require evidence of the injury proximately caused. *Id*. at 1395. Similarly, in

22   the present case, RAPC alleged total lost sales in excess of $1,000,000, lost market share of

23   1.1%, and increased advertising costs of 30%. (Compl. ¶¶ 49-51.) Thus, the complaint

24   sufficiently pleads the injuries caused by Defendant's violations of the Lanham Act and it

25   should not be dismissed. RAPC and Trademarkia have statutory standing and Article III

26   standing for the Lanham Act claims and should be allowed to proceed and prove their case.

27          **D.      Plaintiffs Successfully Assert Article III and Statutory Standing for the UCL**

28   **and FAL Claims in the Complaint**

1    **1.  The Statutory Standing Requirements of California's UCL and FAL**

2    **Incorporate the Article III Injury in Fact Standing Requirement**

3    The complaint sufficiently pleads statutory standing and Article III standing for the

4    California state UCL and FAL claims. To have standing to bring a claim under the UCL a

5    plaintiff must assert that he or she suffered an economic injury due to the alleged unfair

6    competition. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (Cal. 2011). Article III

7    standing requires a current case or controversy, meaning an injury in fact traceable to

8    defendant's conduct and likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at

9    560-61. The Ninth Circuit noted that the statutory standing requirements in the UCL are

10   narrower and incorporate the Article III standing requirements for federal jurisdiction. *Birdsong*

11   *v. Apple, Inc.*, 590 F.3d 955, 960, n.4 (9th Cir. 2009); *see also Kwikset* at 323 (noting that an

12   economic injury "is itself a classic form of injury in fact."). Therefore, RAPC and

13   Trademarkia's pleaded allegations of economic harm from Defendant's conduct are sufficient to

14   establish both statutory and Article III standing for the UCL claims.

15   Additionally, The California FAL contains the same statutory standing requirement as the

16   UCL. *See Kwikset*, at 321. Courts have interpreted the statutory standing requirements in the

17   FAL and UCL interchangeably. Id. Therefore, under the FAL also, RAPC and Trademarkia's

18   pleaded allegations of economic harm from Defendant's conduct are sufficient to establish both

19   statutory and Article III standing.

20   **2.  The Complaint Sufficiently Pleads Statutory and Article III Standing Under**

21   **the UCL and FAL Claims**

22   In a case very similar to the present case, a California attorney brought a UCL claim

23   against an online legal services provider alleging that the legal services provider was engaged in

24   the unauthorized practice of law and was thereby liable under the UCL. *Law Offices of Mathew*

25   *Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 548 (2013). The court

26   determined that the attorney plaintiff in that case had standing to bring the UCL claim and

27   survive dismissal where he alleged an identifiable trifle of injury, specifically lost market share,

28   lost revenue, increased advertising costs, and diminished value of his firm. *Id*. at 548, 556.

1    District courts in California have also cited *Higbee* as support for decreases in revenue, market

2    share and asset value as sufficient economic injuries to satisfy the standing requirement for a

3    UCL claim. *See Ozeran v. Jacobs*, 2018 U.S. Dist. LEXIS 70543 (C.D. Cal. Apr. 25, 2018); *see*

4    *also Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1382 (Fed. Cir. 2011) (holding

5    that alleging lost sales, revenue, market share, and asset value are sufficient to satisfy the

6    required economic injury standing under the UCL). Since the statutory standing for FAL claims

7    are interpreted the same as UCL claims, this same type of allegations of a trifle of economic

8    harm by a competitor is also sufficient for standing under the FAL.

9         RAPC and Trademarkia have clearly and sufficiently asserted UCL and FAL claims in

10    their complaint with adequate alleged harm to establish statutory and Article III standing to

11    bring the claims. RAPC and Trademarkia alleged specific damages consisting of total lost sales

12    in excess of $1,000,000, lost market share of 1.1%, and increased advertising costs of 30%.

13    (Compl. ¶¶ 49-51, 67, 79, 81.)  These asserted injuries are the exact type of economic harm that

14    was found to be sufficient to establish standing in *Higbee* to avoid dismissal and RAPC and

15    Trademarkia should be afforded the same opportunity to move forward to prove their claims.

16         **3.   The Complaint States a Plausible Claim Under the Unlawful Prong of UCL**

17         Defendant's understanding of the law when bringing actions under the unlawful prong of

18    the UCL is grossly inaccurate. It is well established that claims brought under the UCL (Section

19    17200) do not need to derive from unlawful actions that only have a private right of action. In a

20    2015 opinion by Hon. Yvonne Gonzalez Rogers, this Court clearly stated that "[b]y proscribing

21    ***any*** unlawful business practice, Section 17200 borrows violations of other laws and treats them

22    as unlawful practices that the unfair competition law makes ***independently actionable***. Virtually

23    any law—federal, state or local—can serve as a predicate for a UCL action." *AngioScore, Inc. v.*

24    *TriReme Med., Inc.*, 2015 U.S. Dist. LEXIS 86041, *95 (N.D. Cal. July 1, 2015) (emphasis

25    added) (citing *Higbee* at 553). Defendant's cited case does not support the asserted rule that "A

26    plaintiff may only maintain an unlawful claim under the UCL if he or she could have asserted a

27    right under the predicate law. (MTD 11:1-3, citing *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d

28    1074, 1094 (N.D. Cal. 2017).) Instead, what the case actually says is that where a plaintiff is not

1   able to sufficiently plead a violation of the underlying law, he or she would not be able to

2   maintain a UCL claim under the unlawful claim. *See Hadley* at *1095 (stating, " . . . because the

3   Court concluded above that Plaintiff has inadequately alleged a violation of the FAL and CLRA

4   under the  requirements of Rule 9(b), that holding also precludes Plaintiff from basing his

5   unlawful prong UCL cause of action on violations of those two statutes.").

6   In fact, UCL claims under the unlawful prong have been allowed for various types of

7   statute,[1] local ordinance[2], and standards of professional conduct violations[3]. In *Rubin v. Green*, 4

8   Cal. 4th 1187, 1198, 1204 (1993), an attorney brought a UCL claim based unlawful client

9   solicitations and the California Supreme Court noted that even though the solicitations can be

10  enforced through State Bar and prosecutorial actions, members of the public could also pursue a

11  UCL action for the unlawful solicitations. Furthermore, in *People ex rel. Herrera v Stender*, 212

12  Cal. App. 4th 614, 631-32 (2012), an unfair competition claim was brought based on

13  unauthorized practice of law, and failing to provide notice of a resigning lawyer's bar status.  In

14  that case the appellate court confirmed that a UCL claim can be brought based on a violation of

15  a professional conduct rule:

16  > Similarly, here, the complaint does not allege any independent cause of action for

17  > breach of a rule of professional conduct. Rather, the complaint alleges unlawful

18  > business practices under section 17200, using violation of the Rules of

19  > Professional Conduct as a measure of the unlawful practice. It is well established

20  > that HN10 a section 17200 claim may be based on violation of a statute that the

21  > plaintiff could not directly enforce with a private action.

22  > *Id*. at 632.

23

---

24  [1] *See e.g., People ex rel. Van de Kamp v. Cappuccio, Inc.*, 204 Cal. App. 3d 750, 759 (1988)

25  (UCL action based on a Fish & Game Code violation).

[2] *See e.g., Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 967

26  (1992) (UCL claim for noncompliance with a county ordinance regulating the sale of certified

27  raw milk products); *People v. Thomas Shelton Powers, M.D., Inc*., 2 Cal. App. 4th 330, 334-36

(1992) (UCL claim based on city subdivision code violation), abrogated on other grounds.

28  [3]  *See e.g., Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839-41 (1994) (violation of a state

licensing statute regulating shorthand reporters could support a UCL claim).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO.: 4:18-CV-02573-YGR

RAPC and Trademarkia sufficiently state claims plausible on their face under the UCL unlawful prong for Defendant's underlying unlawful fee sharing, solicitation, and practice of law violations. (*See* Compl. ¶ 74.) Defendant's fee sharing violates 37 C.F.R. § 11.504 and the equivalent state bar rules (e.g., Cal. R. Prof. Conduct 1-320). (Compl. ¶¶ 27, 30-35, 74(a).) Defendant's actions violate the solicitation provisions of 37 C.F.R. § 11.703 and equivalent state bar rules (e.g., Cal. R. Prof. Conduct 1-400). (Compl. ¶¶ 27, 29, 46, 74(b).) Defendant's actions also violate Cal. Bus. & Prof. Code § 6126. (Compl. ¶¶ 29, 39-42, 74(c).) Similar to the defendant's alleged unlawful behavior in *Higbee*, UpCounsel also violates Cal. Bus. & Prof. Code § 6400 et seq. by not registered as a bonded legal document assistant. (Compl. ¶ 39.) Regardless of whether any of these unlawful violations include a private right of action, like many of the UCL cases cited above, Defendant's violations give rise to an independent action under the UCL unlawful prong and RAPC and Trademarkia's complaint should not be dismissed. Defendant's behavior is unfair and Plaintiff's should be allowed to fully pursue their claims under the unlawful prong of California's UCL.

**4. The Complaint States a Plausible Claim Under the Unfair Prong of UCL**

"The unfair prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Nexus 6P Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 35739 at *67 (N.D. Cal. Mar. 5, 2018) (citation and quotation omitted). "The UCL does not define the term 'unfair,' and the proper definition in the consumer context is 'currently in flux' among California courts." *Id.* (quotation omitted).

According to one of California's unfair prong tests, the *South Bay* balancing test, "a practice is unfair when it offends an established public policy *or* when the practice is immoral, unethical, oppressive, unscrupulous *or* substantially injurious to consumers." *Id.* (citation and quotations omitted) (emphasis added). Under this test, the practice is unfair when (1) it offends an established public policy; **or** (2) immoral, unethical, oppressive, unscrupulous **or** substantially injurious to consumers. The complaint pleads sufficient facts under this test. Defendant's business practices unethically splits the attorneys' legal fees with non-attorneys and violates solicitation rules meant to protect the public. Additionally, Defendant's misleading

1    fee percentages and simultaneous holding itself out as a law firm and as not a law firm are

2    immoral and unethical practices to meant to provide Defendant the greatest profit at the expense

3    of the public and other parties in the legal field, like RAPC, that are not willing to violate ethics

4    rules for profit.. Thus, the complaint has met the *South Bay* balancing test. Furthermore, the

5    complaint specifically alleges that Defendants' practice is immoral, unethical, and substantially

6    injurious to consumers. (*See* Compl. ¶ 76.) Therefore, Plaintiffs have plausibly pleaded their

7    claims under the unfair prong of UCL.

8              **5.   The Complaint States a Plausible Claim Under the Fraudulent Prong of UCL**

9              Defendant incorrectly concludes that the complaint fails for not alleging actual reliance

10   under the fraudulent prong of the UCL. (MTD 11:19-25). However, Defendant's cite to *Kwikset*

11   for support is inappropriate for two reasons: first, the analysis Defendant cited concerns

12   statutory standing, which Defendant already alleged in another section of the motion and

13   Plaintiffs addressed this *supra* in Section IV.D.1.-2..; second, the *Kwikset* case concerns a claim

14   brought by a consumer rather than a marketplace competitor. 51 Cal. 4th at 326. In the present

15   case, the analysis in *Higbee* is more appropriate where a plaintiff alleged fraudulent unfair

16   behavior of another competitor. 214 Cal. App. 4th 544. In that more recent case, the defendant

17   also cited cases claiming that the plaintiff was required to "allege reliance in order to show

18   causation in cases based on fraud." *Id*. at 564. However, the court dismissed the defendant's

19   assertions and held that in a business competitor is required to actually rely or engage in

20   business dealings with the defendant. *Id*. at 564-65. This Court agreed with the *Higbee* decision

21   in another business competitor case, noting that allegations of business dealings between

22   plaintiff and defendant is not required to survive a motion to dismiss. *Campbell v. Feld Entm't,*

23   *Inc.*, 2013 U.S. Dist. LEXIS 145495 at *34-35 (N.D. Cal. Oct. 4, 2013). Therefore, plaintiffs

24   claims under the the fraudulent prong of California's UCL do not need to allege actual reliance

25   and sufficiently plead a plausible cause of action for unfair competition.

26             **6.   Plaintiffs Request Various Forms of Relief Under all Causes Alleged to the**

27                  **Extent Permitted**

28             Plaintiffs specifically asserted the harm it suffered from Defendant's behavior under

multipole causes of action, not just UCL. These damages include the loss of funds or property to which they plausibly had an ownership interest, such as the lost asset value and increased advertising costs. Additionally, Plaintiffs permissibly request injunctive relief under its UCL claims. (Compl. ¶ 82.) None of this changes the fact that the complaint contains sufficient factual matter to state a claim to relief that is plausible on its face.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons Plaintiffs respectfully submit that Defendant's Motion to Dismiss should be denied. If the Court finds any part of the complaint is insufficient, Plaintiffs request the Court to grant leave to amend to cure the defect in the complaint.


Dated: August 3, 2018                          Respectfully submitted,
                                               LEGALFORCE RAPC WORLDWIDE P.C.

                                               /s/ Raj Abhyanker

                                               _____
                                               Raj V. Abhyanker (233284)
                                               Attorney for Plaintiff:
                                               LegalForce RAPC Worldwide P.C.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO.: 4:18-CV-02573-YGR