RAJ V. ABHYANKER, SBN 233284
Email: raj@legalforcelaw.com
WENSHENG MA, SBN 299961
Email: vincent@legalforcelaw.com

LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:     (650) 965-8731
Facsimile:     (650) 989-2131

Attorneys for Plaintiffs,
LegalForce RAPC Worldwide, P.C. and
LegalForce, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C.; and LEGALFORCE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UPCOUNSEL, INC., <br><br> Defendant. | Case No. 4:18-cv-02573-YGR <br><br> Judge: Horn. Yvonne Gonzalez Rogers <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> 1. LANHAM ACT, 15 U.S.C. § 1125(a); <br> 2. CALIFORNIA FALSE & MISLEADING ADVERTISING; and <br> 3. CALIFORNIA UNFAIR COMPETITION. <br><br> **JURY TRIAL DEMANDED** |

1. LegalForce RAPC Worldwide, P.C. ("RAPC") and LegalForce, Inc. ("Trademarkia") (collectively "Plaintiffs") allege as follows against UpCounsel, Inc. ("UpCounsel" or "Defendant") upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters.

## NATURE OF ACTION

2. UpCounsel and Plaintiffs compete to provide individuals and small businesses with affordable access to attorneys. Each use technology and innovation to provide access to attorneys specialized in corporate law, patent law, and trademark law. However, UpCounsel flagrantly uses false and misleading advertising to convince customers to select its service by **falsely boasting** that its attorneys are in the "Top 5%" and the "10 Best lawyers...NEAR ME" in cities across America. Even worse, UpCounsel uses illegal and unethical techniques to gain an unfair advantage over Plaintiffs and other competitors by manufacturing "5 star" ratings on Google search results.

3. Businesses and individuals in California must follow California statutory law. Cal. Bus. & Prof. Code § 6151(a) defines a runner or capper as "any person, firm, association or corporation acting for consideration in any manner or in any capacity as an agent for an attorney at law or law firm, whether the attorney or any member of the law firm is admitted in California or any other jurisdiction, in the solicitation or procurement of business for the attorney at law or law firm . . . ." (*See* **Exhibit 41-A**.) It is unlawful "for any firm, corporation, partnership or association to act as a runner or capper for any attorneys or to solicit any business for any attorneys … in any public place … or upon private property of any character whatsoever." Cal. Bus. & Prof. Code § 6152(a). (*See* **Exhibit 41-B**.)

4. UpCounsel violates Cal. Bus. & Prof. Code § 6152(a) because it is a corporation operating in California that receives money in the form of "Success Fees" for soliciting and procuring business for the attorneys and law firms listed on the UpCounsel website. (*See* Terms of Use, **Exhibit 11** at 8-10.) Punishments for violation of § 6152(a) is outlined in Cal. Bus. & Prof. Code § 6153 which provides upon a first conviction, by imprisonment in a county jail for not more than one year or by a fine not exceeding fifteen thousand dollars ($15,000), or by both

1    imprisonment and fine. (*See* **Exhibit 41-C**.)

2        5.    In addition to the statutory law, attorneys and law firms licensed in each state of the

3    United States must follow ethical rules that do not exist for non-attorneys. One such rule is the

4    prohibition against attorney fee sharing with non-attorneys. This rule was adopted to prevent

5    non-lawyers from aggressively reselling hourly and fixed fee attorney services at a markup

6    causing the public to lose faith in the legal profession. These rules have not been revised in the

7    age of the Internet. UpCounsel has brazenly ignored law, ethics, and common sense in defiance

8    of healthy competition. In contrast, despite Plaintiffs' belief that fee sharing rules are out of

9    date, in the absence of formal legislative change, Plaintiffs are committed to lawfully abide by

10   all regulations. As a result of UpCounsel's malfeasance, Plaintiffs, law firms, and legal

11   technology companies across the United States are unable to fairly compete with UpCounsel.

12       6.    Practitioners are bound by the USPTO Rules of Professional conduct, even if they act at

13   the direction of another person. 37 CFR § 11.502. Practitioners may generally not: (1) share

14   legal fees with non-practitioners; (2) form partnerships with non-practitioners if any of the

15   activities consist of the practice of law; (3) "permit a person who recommends, employs, or pays

16   the practitioner to render legal services for another to direct or regulate the practitioner's

17   professional judgment in rendering such legal services;" or (4) practice law in a corporation

18   where a non-practitioner owns an interest, is a director or officer, or has the right to direct the

19   professional judgment. 37 CFR § 11.504. Indeed, practitioners have been disciplined for, *inter*

20   *alia*, sharing fees with non-practitioners and permitting others to regulate the practitioner's

21   professional judgment. (*See* **Exhibit 60,** *In re Lavenda*, Proceeding No. D2018-21 (USPTO,

22   February 27, 2018).)

23                                       **THE PARTIES**

24   **The Plaintiffs**

25       7.    RAPC is a law firm wholly owned by Raj Abhyanker ("Abhyanker"), a patent and

26   trademark attorney in good standing of the State Bar of California (Bar #233,284), and the

27   United States Patent Bar. The firm practices corporate and intellectual property law with a

28   principal place of business at 1580 W. El Camino Real, Suite 10, Mountain View, CA 94040,

and a law office located at 446 E. Southern Ave., Tempe, AZ 85282. RAPC has clients for intellectual property services in all 50 states and more than 300 cities and towns across America. RAPC offers services including trademark preparation and prosecution, patent preparation and prosecution, copyright registration and counseling, international trademark and patent filings, and corporate formation and stock and equity structuring, etc. (*See* **Exhibit 25**.)

8.   Trademarkia is a Delaware corporation offering law firm automation and free trademark search services through its website, Trademarkia.com, with a principal place of business at 1580 W. El Camino Real, Suite 9, Mountain View, CA 94040. Abhyanker is the co-founder and CEO of Trademarkia. Trademarkia refuses to act as runner or capper to solicit business for attorneys and refuses to fee-share with attorneys. However, by strictly adhering to California laws, federal regulations and ethical rules, Trademarkia is prohibited from raising venture capital needed to scale its business.

**The Defendant**

9.   UpCounsel is a Delaware corporation with a principal place of business at 580 Market Street, 5th Floor, San Francisco, CA 94104. Matthew Faustman ("Faustman"), CEO of UpCounsel, was admitted to the State Bar of California in 2010 (Bar # 273,822) but became inactive in 2013 for MCLE noncompliance and was suspended in 2014 for failure to pay bar fees. UpCounsel advertises corporate and intellectual property attorneys for hire. Since its seed funding round on April 1, 2013, UpCounsel has raised approximately $26 million dollars in venture capital over five additional rounds. The latest funding came from a Series B round on April 5, 2018.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under federal question jurisdiction (28 U.S.C. § 1331) because Defendant violated the Lanham Act. This court has supplemental jurisdiction over the California FAL and UCL claims under 28 U.S.C. § 1367 because the state law claim arises from the same nucleus of operative facts as the Lanham Act claim.

11. This Court has general personal jurisdiction over UpCounsel because UpCounsel's principal place of business is in California. This Court has specific personal jurisdiction over

UpCounsel because it has minimum contacts with California. UpCounsel purposefully directed their advertisements or promotions at consumers in California. These activities are intentional acts expressly aimed at California consumers and are likely to cause harm in California. Plaintiffs' claims arose out of these activities and exercising jurisdiction over Defendant would not be unreasonable. Moreover, Defendant has waived its objection to personal jurisdiction by not raising it in its first Rule 12 motion (Dkt. 25).

12. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district. It is convenient for third-party witnesses to testify in this Court to prove the alleged illegal activities of Defendant. Judges in this district are more familiar with California laws than in judges in other states. In addition, California has a general policy interest in protecting residents harmed by violations of California law by in-state actors such as Defendant. Moreover, Defendant has waived its objection to venue by not raising it in its first Rule 12 motion.

## BACKGROUND

### I.  Plaintiffs' Pioneering Efforts In Online Legal Marketplaces

13. The founder and CEO of the Plaintiffs, Abhyanker, has been an early pioneer of legal marketplaces. After leading an Internet neighborhood social network through two rounds of venture funding in 2007 (which later sold to Google, Inc.), Abhyanker built the very first legal marketplace for online legal services called LegalForce.com ("LegalForce One"). Through this website, users were able to hire, manage and pay lawyers and legal staff for legal projects. (**Exhibit 5**.)

14. On June 12, 2008, Abhyanker received an offer for venture capital funding from prominent venture capitalist investor Kevin Compton, a partner of Kleiner Perkins Caufield & Byers; and Jeff Drazan, Partner of Sierra Ventures and Bertam Capital, for $500,000.00 in a Series A financing offer. (**Exhibit 6**.) Abhyanker was willing to work for $1 per year salary as part of this term sheet until the next round of funding with no rent charged to LegalForce One in Abhyanker's law office. *Id.*

15. Over the next few days, during diligence discussions, requests were made by the venture

capitalists that LegalForce One's business model adapt to permit markup of attorney fees secured through the LegalForce One website to scale revenues faster and achieve an inflection point before a next round of funding. Abhyanker believed that this financial arrangement between a non-lawyer and lawyer would violate obligations to the USPTO and the California State Bar with respect to fee sharing. Abhyanker refused to break USPTO and State Bar rules. Concerns were then raised how fast law firms would agree to sign up given the regulatory hurdles on fee sharing. The investors met with Gordy Davison, leading IP attorney and founder of Fenwick & West, on or about June 17, 2008, as well as other IP attorneys. (**Exhibit 7**.) Upon information and belief, Gordy Davison and IP attorneys confirmed rules with respect to fee sharing. Hence, term sheets were never finalized. (**Exhibit 8**.)

## II. UpCounsel Copycat Website Of Abhyanker's Pioneering Efforts

16. Like Abhyanker's earlier efforts for LegalForce One in 2008, UpCounsel is an online marketplace for legal services that enables users (primarily entrepreneurs and businesses) to find and hire attorneys via their site. UpCounsel has fully launched its service across the United States.

17. Then-attorney Matthew Faustman ("Faustman") launched his copycat website UpCounsel.com in 2012. Soon after launching his website, Faustman ceased reporting his continuing legal ethics requirements to the State Bar of California in 2013. Faustman was suspended the very next year by the State Bar of California after he failed to pay bar fees. Faustman has been suspended ever since, including up through the filing of this first amended complaint.

## FACTUAL ALLEGATIONS

## III. False And Misleading Advertisement

18. 15 U.S.C. § 1125(a)(1)(B) of the Lanham Act prohibits any person from using false or misleading statements to misrepresent the nature or qualities of his services in commercial advertising or promotion. UpCounsel violated the Lanham Act by making the following false and/or misleading advertising or promotional statements (Statements A-J).

### A.  "UpCounsel is the world's largest virtual law firm."

19. On the website of UpCounsel's business partner inDinero Inc. (www.indinero.com), UpCounsel made the following advertising or promotional statements:

> *We are the world's largest virtual law firm* for businesses of any size. We allow businesses to get high quality, cost-effective legal services. While our lawyers serve as outside general counsel to many companies, we also assist with specialized legal work like IP, immigration, commercial contracts, litigation, and much more.

(**Exhibit 35** at 1 (emphasis added).) The statement was made on July 18, 2014. Notably, there are no qualifications to this statement indicating that UpCounsel is not a law firm.

20. Customers of UpCounsel such as DataFox believe UpCounsel's marketing that they are the largest virtual law firm stating, "*UpCounsel is the world's largest virtual law firm.* With UpCounsel, businesses can access and manage a high-quality and on-demand legal workforce. Today, both big and small businesses use UpCounsel to supplement or replace their traditional service providers." (**Exhibit 36** (emphasis added).) This article is still available as of the date that this First Amended Complaint was filed, September 11, 2018.

21. On March 5, 2015, Mimesis Law, a strategic communications consultancy firm which partners with companies to design, create and leverage video content, published a video they produced of an interview with UpCounsel's co-founder and CEO, Faustman, about UpCounsel. During the video[1], which is titled "Competitor or Collaborator? What UpCounsel's Growth Means for BigLaw," Faustman made the following statement: "So, what we have created UpCounsel …[sic] is equivalent to the world's largest virtual law firm."[2]

22. On December 12, 2014, Faustman made a promotional marketing presentation at Persian Tech Conference. During the conference, he made the following statements about UpCounsel:

---

[1] The video with Mr. Faustman is essentially a monologue advertisement for UpCounsel, interspersed only briefly by the host to help move the presentation along and allow Mr. Faustman to describe how UpCounsel works, the company's growth, and its unique features. It is more like an early-morning weekend infomercial for UpCounsel. The blog that "independently produced" the video describes the site and its founder (also the creator of Mr. Faustman's video) as follows: "Lee Pacchia is the Founder and CEO of Mimesis Law which covers the business, practice and culture of Law, as well as Mimesis Labs which partners with companies and organizations to design, create and leverage video content."

[2] Competitor or Collaborator? What UpCounsel's Growth Means for BigLaw
https://www.youtube.com/watch?v=FG1ZBCL181I&app=desktop&t=0m44s

a. "We have created what's essentially the world's largest virtual law firm."[3] This statement was again made without any follow up qualifying statements.

b. "We are able to deliver high quality, cost effective, and faster solutions than what the traditional law firms are actually able to provide."[4] This statement conveys a message to the audience that UpCounsel is a modern, non-traditional law firm.

23. In a Sept. 21, 2015 online marketing video titled "Inside UpCounsel's Mission to Modernize the Legal Industry," the UpCounsel co-founders make the following statements:

a. "This is a very high trust kind of industry, and in order to make any movement people have to associate you (UpCounsel) with very high quality [that] this is *as good as using a law firm.*"[5] This statement was made by Faustman, Co-founder and CEO of UpCounsel.

b. "The beauty of UpCounsel is that it is *essentially a virtualized law firm in a box.*"[6] This statement was made by Mason Blake, Co-Founder and CTO of UpCounsel.

24. In an interview with San Gabriel Valley Tribune on March 25, 2015 (published in an article on March 26, 2015 and updated on August 30, 2017), Faustman once again emphatically describes UpCounsel as "*equivalent to the largest virtual law firm in the world.*" (**Exhibit 40** at 2**.)**

25. Exhibits and statements made with respect to "UpCounsel is the world's largest virtual law firm" were published, available to the public, and printed or playable as videos on YouTube and online 2018, as displayed on each exhibit or footnote ("when"). The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing statements originally made by UpCounsel ("who") on the UpCounsel website, on third party websites, or at public events. The statements were made with an intent to deceive

---

[3] Persian Tech Conf, December 12, 2014,
https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=0m30s
[4] Persian Tech Conf, December 12, 2014,
https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=1m20s
[5] Episode 1028 | Inside UpCounsel's Mission to Modernize the Legal Industry, Sept. 21, 2015,
https://www.youtube.com/watch?v=eKe3y2aEG2I&app=desktop&t=8m17s
[6] Episode 1028 | Inside UpCounsel's Mission to Modernize the Legal Industry, Sept. 21, 2015,
https://www.youtube.com/watch?v=eKe3y2aEG2I&app=desktop&t=2m22s

consumers into thinking the statement "UpCounsel is the world's largest virtual law firm" is trustworthy and legitimate.

26. Since UpCounsel is not a law firm, these statements are false and misleading to average consumers. Although UpCounsel attempts to disclaim being a law firm in legalese and fine print, it is obvious that their messages to the general public and investors is quite different. Clearly, UpCounsel sells itself as a law firm, acts like a law firm, and therefore is a law firm despite its self-serving statements to the contrary.

### B.  "Top 5% of {Practice Area} Lawyers in {City}"

27. UpCounsel has made tens of of thousands of false and misleading statements in the format of "Top 5% of {Practice Area} Lawyers in {City}" in tens of thousands of web pages on its website. Because of the incredible volume of these statements and web pages, only a few examples (related to the practice areas of RAPC) are shown below and in the exhibits. As displayed on the **Exhibits 26-29**, these statements were online and published at the time the exhibits were printed, between August 29, 2018 to September 1, 2018.

a. "Top 5% of Trademark Lawyers in {City}" appears in web pages for approximately 25,900 cities across the United States. (**Exhibit 26**.)

b. "Top 5% of Patent Lawyers in {City}" appears in web pages for approximately 15,800 cities across the United States. (**Exhibit 27**.)

c. "Top 5% of Intellectual Property Lawyers in {City}" appears in web pages for approximately 23,100 cities across the United States. (**Exhibit 28**.)

d. "Top 5% of Copyright Lawyers in {City}" appears in web pages for approximately 14,900 cities across the United States. (**Exhibit 29-A**.)

e. "Top 5% of Startup Lawyers in {City}" appears in web pages for approximately 29,400 cities across the United States. (**Exhibit 29-B**.)

**Exhibit 26** was published, available to the public, and printed on August 29, 2018, as displayed on the exhibit ("when"). **Exhibit 27** was published, available to the public, and printed on August 30, 2018, as displayed on the exhibit ("when"). **Exhibit 28** was published, available to the public, and printed on August 30, 2018, as displayed on the exhibit ("when"). **Exhibit 29-A**

was published, available to the public, and printed on September 1, 2018, as displayed on the exhibit ("when"). **Exhibit 29-B** was published, available to the public, and printed on August 30, 2018, as displayed on the exhibit ("when").The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing statements originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibits was trustworthy and legitimate.

28. Whenever a potential customer enters a search term "{practice area} lawyer in {city}" in the Google search box, UpCounsel's statement "Top 5% of {Practice Area} Lawyers in {City}"would often appear on Page 1 of the Google search result. For example, *see* **Exhibit 33-G**, when a customer searches "intellectual property lawyer in cotati, ca", UpCounsel's statement "Top 5% of Intellectual Property Lawyers in Cotati, CA" shows up at the seventh result position. Plaintiffs counsel randomly selected Cotati, California as an example city out of of the tens of thousands of other cities targeted by UpCounsel's false and misleading advertisement scheme. This search was conducted by Plaintiffs' counsel on September 7, 2018. The landing page (after the customer clicks on the link of the seventh search result) is shown in **Exhibit 61. Exhibit 33-G** was published, available to the public, and printed on September 7, 2018, as displayed on the exhibit ("when"). **Exhibit 61** was published, available to the public, and printed on September 10, 2018, as displayed on the exhibit ("when"). The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing statements originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibits was trustworthy and legitimate.

29. To find out the number of search results showing similar statements for all practice areas, on September 7, 2018, Plaintiffs' counsel entered a Google search command "site:upcounsel.com 'top 5%'" in Google's search box and came up with 51,700 results. Due to the volume of the search result, just the first 10 pages are shown in **Exhibit 30**.

30. Even if UpCounsel were to actually recruit, retain, and display on its web pages exactly

the top 5% of trademark lawyers—not 3%, not 8%, but exactly the top 5% of trademark lawyers—from **each and every** of the 25,900 cities across the United States, that is not what UpCounsel has done. By indicating "5%", UpCounsel implies that there exists an independent and publicly trusted ranking system in each and every city and the attorneys that UpCounsel lists on its city pages are chosen from the top 5% of such a list. In reality, no such list exists. Thus, a vast majority of the statements alleged herein, if not *all* statements, plus hundreds of thousands of similar statements made by UpCounsel for its other practice areas, cities, and states are patently false.

31. **Exhibit 30** was published, available to the public, and printed on September 7, 2018, as displayed on the exhibit ("when"). The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing statements originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibits was trustworthy and legitimate.

32. Customers are actually misled by these statements. For example, a review of UpCounsel on Yelp from a customer Sterling Anno, Director of Programming at Oceanside Intl. Film Festival in Murrieta, California states that the reason he selected UpCounsel was because he believed UpCounsel was "*a network for only the most top notch legal reps in the area*" and "*The attorneys offered with them are at the top of their game and you will get what you pay for.*" (**Exhibit 39**.) Separately, a customer wrote on Quora that he was deceived when he say an advertisement on a search engine because "*Offering "Business Legal Services On-Demand by Top Attorneys," UpCounsel also promised attorneys who could do the job for much less money.*" The customer wrote "*Well, the bottom line in this review of UpCounsel: I wish I had never used UpCounsel and I'm warning all startups, businesses and companies out there to never make the same mistake!*" (**Exhibit 72**.)

### C.  "The 10 Best {Practice Area} Lawyers in {State} NEAR ME"

33. UpCounsel has made over 1,000 false and misleading statements in the format of "The 10 Best {Practice Area} Lawyers in {State} NEAR ME" in over 1,000 web pages on its

website. Examples related to the practice areas of RAPC are shown below. **Exhibit 52** was published, available to the public, and printed on September 9, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on **Exhibit 52** is trustworthy and legitimate.

    a. "The 10 Best Trademark Lawyers in {State} NEAR ME" appears in web pages in states across the United States. (*See* **Exhibit 52**.)

    b. "The 10 Best Patent Lawyers in {State} NEAR ME" appears in web pages in states across the United States. (*Id.*)

    c. "The 10 Best Intellectual Property Lawyers in {State} NEAR ME" appears in web pages in states across the United States. (*Id.*)

    d. "The 10 Best Copyright Lawyers in {State} NEAR ME" appears in web pages in states across the United States. (*Id.*)

34. In addition, when a potential customer enters a search term "Best {practice area} lawyer in {state}" in Google search box, UpCounsel's statement "The 10 Best {Practice Area} Lawyers in {state}" would often appear in Page 1 of the Google search result.

35. These statements are false because individuals listed in each resulting page are not usually near the customer who did the search, and often not even in the same state. For example, Plaintiffs' counsel did a Google search of "best trademark lawyers in Idaho" on September 11, 2018. UpCounsel's advertising link "Idaho Trademark Attorneys & Lawyers in Idaho NEAR ME | UpCounsel 2018" appeared in the fifth search result. (*See* **Exhibit 67** at 1.) The landing page was shown when counsel clicked on the link and still published to the public as of the date this First Amended Complaint was filed, September 11, 2018. (*Id.* at 3-13.) However, none of the attorneys listed on the landing page are Idaho attorneys and they practice nowhere near Idaho. **Exhibit 67** was published, available to the public, and printed on September 11, 2018, as displayed on the exhibit ("when"). For both **Exhibit 52** and **Exhibit 67**, the statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"),

republishing statements originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

### D.  "{City} Attorneys & Lawyers for Hire On-Demand"

36. UpCounsel has made over 25,000 false and misleading statements in the format of "{City} Attorneys & Lawyers for Hire On-Demand" in over 25,000 web pages on its website. (**Exhibit 53**.) This was published and available to the public at least as of September 9, 2018, when **Exhibit 53** was printed ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on **Exhibit 53** is trustworthy and legitimate. Because of the incredible volume of these statements and web pages, only a few examples are shown below.

a. Plaintiffs' counsel did a Google search of "Richmond attorneys 'for hire'" on September 11, 2018. UpCounsel's advertising link "Richmond, CA Attorneys & Lawyers for Hire On-Demand - UpCounsel" appeared in the fourth search result. (*See* **Exhibit 62** at 1.) The landing page was shown when counsel clicked on the link. (*Id.* at 10-39.) However, out of the 45 listed attorneys in Richmond, only two attorneys are actually located in Richmond.

b. On a page titled "Mountain View Attorneys & Lawyers for Hire On-Demand," only two out of the more than fifty listed attorneys in Mountain View, California are actually located in Mountain View, and some are not even licensed to practice law in the State of California (for state law practice areas). (*See* **Exhibit 54**.) These statements are still available as of the date that this First Amended Complaint was filed, September 11, 2018.

c. On the page titled "Tempe Attorneys & Lawyers for Hire On-Demand," only three of the more than fifty listed attorneys in Tempe, Arizona are actually located in Tempe, and some are not even licensed to practice law in the State of Arizona (for state law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

practice areas). (*See* **Exhibit 55**.) These statements are still available as of the date that this First Amended Complaint was filed, September 11, 2018.

37. The example statements alleged herein are false and misleading because most of the attorneys listed are not "Richmond, CA Attorneys," "Mountain View Attorneys" or "Tempe Attorneys." Several of the attorneys even appear in all three cities, e.g., Seth Wiener, Sue Dunbar, Johnny Manriquez, etc. (*See* **Exhibit 54, 55, 62**.) Similarly, the rest of the over 25,000 statements are also false and misleading for the same reason. **Exhibit 54** was published, available to the public, and printed on September 9, 2018, as displayed on the exhibit ("when"). **Exhibit 55** was published, available to the public, and printed on September 9, 2018, as displayed on the exhibit ("when"). **Exhibit 62** was published, available to the public, and printed on September 11, 2018, as displayed on the exhibit ("when"). The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing statements originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibits was trustworthy and legitimate.

**E.  "{City} {Practice Area} Lawyers 5.0 ***** Based on {X number of} reviews"**

38. In the right column of each of the UpCounsel landing pages (the pages displayed after clicking on the search results) of Statement B in **Exhibits 26-29** alleged above (total of 51,700 webpages as of September 7, 2018) there is a Page Summary Block which shows "{City} {Practice Area} Lawyers 5.0 ***** Based on {X number of} reviews." This statement is misleading. For example, for intellectual property lawyers of Cotati, California, the landing page (**Exhibit 61**) shows the Page Summary Block in the right column, as provided below. The statement shown on **Exhibit 61** was published and available to the public at least as of September 11, 2018, when **Exhibit 61** was printed ("when"). The statement ("what") was made on UpCounsel's website (URL is included on the exhibit) ("where") by UpCounsel ("who"). The statement was made with an intent to deceive consumers into thinking the content shown on **Exhibit 61** is trustworthy and legitimate.



39. The statement here, "Cotati Intellectual Property Lawyers, 5.0 ***** Based on 5450 reviews", is a false statement. It is impossible for Cotati Intellectual Property Lawyers to have 5,450 reviews on UpCounsel. Cotati is a small town in Northern California with a population of 7,455. There are only 21 attorneys in the city of Cotati licensed to practice law in California, and none of these 21 attorneys are listed on UpCounsel. (*See infra,* Statement F "***** Rating: 5 - {X number of} reviews." )

40. Other statements in the Page Summary Block show that UpCounsel's Cotati Intellectual Property Lawyers have a perfect score of 5.0 for "Clear Communications", a nearly perfect score of "4.9" for "Response Time", a perfect score of 5.0 for "Knowledgeable", and a perfect score of 5.0 for Meets Deadlines. The tenth decimal point of "5.0" instead of "5" is relevant as it is a significant figure it means that any rounding must occur to the nearest tenth if it was "5" a 4.5 could be a five but since it's 5.0, it means that the aggregate is at least 4.95.

41. Egregiously, this perfect or near-perfect review scores are duplicated on tens of thousands of web pages on UpCounsel, producing fraudulent and fabricated "5 star" ratings on tens of thousands of Google search results. (*See, e.g.,* **Exhibit 74** ("Tallahassee Intellectual Property Lawyers" having 5,238 reviews with all-perfect scores); **Exhibit 75** ("Savannah Intellectual Property Lawyers" having 5,232 reviews with all-perfect scores).) Again, same attorneys (Steven Stark, Richard Gora, Joshua Garber, etc.) appear on both pages as Tallahassee attorneys and Savannah attorneys. *Compare* **Exhibit 74** at 1 (listing the three attorneys) *with* **Exhibit 75** at 1 (listing the same three attorneys). These were published and available to the public at least as of September 11, 2018, when **Exhibits 74 and 75** were printed ("when"). Each statement ("what") was made on UpCounsel's website (URL is included on the exhibit) ("where") by UpCounsel ("who"). The statements were made with an intent to deceive

consumers into thinking the content shown on **Exhibits 74 and 75** are trustworthy and legitimate.

42. Google's own technical guidelines for search optimization "assumes that your site uses a 5-point scale, where 5 is the best possible rating and 1 is the worst, but you can use any other scale. If you use a different scale, you can specify the best and worst ratings, and Google scales that to the 5-star system. (**Exhibit 66**.) UpCounsel manipulates this technique to deceive Google crawlers and other search engines so that Google will display UpCounsel's fabricated and false ratings and reviews on the first page search result. As such, UpCounsel steers away potential clients from Plaintiffs and hinders Plaintiffs' ability to compete. This statement is still published on UpCounsel's website as of the date that this First Amended Complaint was filed, September 11, 2018.

### F.   "***** Rating: 5 - {X number of} reviews"

43. In the same search conducted by Plaintiffs' counsel on September 7, 2018, when a customer searches "intellectual property lawyer in cotati, ca," UpCounsel makes another false and misleading statement: " ⭐⭐⭐⭐⭐ Rating: 5 - 5,174 reviews" beneath the false and misleading statement: "Top 5% of Intellectual Property Lawyers in Cotati, CA." (**Exhibit 33-G**.)[7]  Reasonable consumers seeking lawyers in thousands of cities across the United States often find UpCounsel's attorney pages on the first page of Google search results whenever they search for a lawyer across a wide range of disciplines in their city. Plaintiff's counsel has video recorded a number of such searches on Google for cities across the United States, anticipating that UpCounsel will rectify its clearly false and deceitful practices once they see this amended complaint. **Exhibit 33-G** was published, available to the public, and printed on September 7, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement

---

[7]  **Exhibit 33-G** was saved by Plaintiffs' counsel on Friday, September 7, 2018 when searching "intellectual property lawyer in cotati, ca" on Google. The number of reviews shown was 5,174 (on the 7th search result). On Monday, September 10, 2018, counsel did the same search on Google, but found that the number of reviews has increased to 5,450 over the weekend. Counsel saved **Exhibit 61** as the landing page (the web page shown after counsel clicked on the Google result), which shows 5,450 reviews. *See* Statement E alleged *supra*.

originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

44. Similar statements of the invariable 5-star rating followed by the number of reviews appear in approximately 51,700 Google search results whenever a customer searches "{practice area} lawyer in {city}" on Google. To find out these search results, on September 7, 2018, Plaintiffs' counsel entered a Google search command "site:upcounsel.com 'top 5%'" in the Google search box and came up with 51,700 results. Due to the volume of the search results, just the first 10 pages are shown in **Exhibit 30**. **Exhibit 30** was published, available to the public, and printed on September 7, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

45. The display of the invariable 5-star rating followed by the number of reviews is achieved by manipulating Google search results through deceptive, unethical, and fraudulent search engine optimization techniques. Not only are reasonable consumers deceived into thinking that UpCounsel lists "Top 5%" of lawyers in cities across America, and "The Best 10" lawyers near them in their state, but UpCounsel's deceptive aggregations of reviews mislead them into believing the reviews came from actual customers in those cities and states.

46. As a result, UpCounsel has "five star" reviews from a substantial portion of the population in most small towns across America. For example, Cotati is a small town in Northern California with a population of just 7,455. Search results are made to appear as though 5,174 actual clients of UpCounsel attorneys in Cotati wrote the "Top 5% of Intellectual Property Lawyers in Cotati, CA." If that were true, then approximately 68.3% of the entire population of Cotati used UpCounsel to write reviews of attorneys in Cotati. (*See* below and **Exhibit 33-A**.)

Top 5% of Intellectual Property Lawyers in Cotati, CA | UpCounsel
https://www.upcounsel.com › Intellectual Property › California ▾
★★★★★ Rating: 5 - 5,174 reviews
Compare **Cotati** Intellectual Property Attorneys & Lawyers for hire on UpCounsel and choose the best IP
... Luthien is licensed to practice law in **California**.

**Exhibit 33-A** was published, available to the public, and printed on August 30, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

47. In reality, there are only 21 attorneys in the city of Cotati licensed to practice law in California. (**Exhibit 33-B**.) Of note, none of these 21 attorneys are listed on UpCounsel. Additionally, the USPTO shows only 1 patent attorney in Cotati licensed to practice patent law. (**Exhibit 33-C**.) This person is also not listed on UpCounsel. Moreover, the UpCounsel webpage at the link above shows some attorneys that are not even licensed in the state of California, much less located in the town of Cotati. (**Exhibit 33-D**.)

48. If that is not enough, there are only 348 trademarks ever filed in the city of Cotati since its incorporation in 1963. (**Exhibit 33-E**.) And only 265 patent applications filed. (**Exhibit 33-F**.) Therefore, at least most of the thousands of aggregated reviews on this UpCounsel webpage for Cotati are aggregated in a way to show a deceptive "5 stars" next to Cotati on Google search results. While Cotati is just one example city of this practice, it is just one of tens of thousands of cities across America where UpCounsel deceptively aggregates reviews to deceive the Google search engine into displaying their webpages higher in search results by showing "5 stars" in the title and header. However, the reviews are not by customers and clients in that city or state.

49. To keep its pages at the top of search results, UpCounsel underhandedly tricks Google by "refreshing" its reviews through a posting regularly updated, fabricating reviews directly on each webpage on the UpCounsel website. For example, on UpCounsel's "intellectual property attorneys & lawyers" page for Cotati, it shows 5450 reviews as of September 11, 2018 (**Exhibit**

**76)**, an increase of over 250 reviews in just a span of days (**Exhibit 33-D** taken on Friday, September 7, 2018). See below:



### G.  Reviews and Web Page Source Code Deception

50. When inspecting UpCounsel's presentation layer code (software code that is executed on a client side device and which is responsible for displaying textual and graphical elements printed on a webpage to users through their monitors) as of the filing of this First Amended Complaint on September 11, 2018, it is clear that UpCounsel intentionally and purposefully, and in bad faith, attempts to deceive Google search crawlers and the public that uses Google to

search for legal services. (*See* **Exhibit 76**.)

51. **Exhibit 76** was published, available to the public, and printed on September 11, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

52. UpCounsel's tag for its total 5450 fabricated reviews for attorneys in Cotati is based on a fraudulent data field called "reviewCount" which is printed on each page. See below and lines 1504-1510 of code in **Exhibit 76**.



53. More tellingly, UpCounsel's page source for each of its tens of thousands of reviews includes the following line of code:

<div itemprop="aggregateRating" itemscope itemtype="http://schema.org/AggregateRating">

54. The sole purpose of this line of code is to trick search engines into recognizing UpCounsel's aggregate ratings as trustworthy. Specifically, this descriptor indicates that UpCounsel is attempting to fraudulently utilize the "AggregateRating" class or library on the website www.schema.org to trick search engines into recognizing its ratings and reviews as honest and reputable, when in fact they are aggregated fraudulently to generate a fabricated city

rating. For example, on www.schema.org, it states "The average rating based on multiple ratings or reviews." (*See* **Exhibit 64**, and shown below.)



55. Schema.org is a "...collaborative, community activity with a mission to create, maintain, and promote schemas for structured data on the Internet, on web pages, in email messages, and beyond." (*See* **Exhibit 71**.) Schema.org is a good faith, open source community, founded by "...Google, Microsoft, Yahoo and Yandex..." whose "...shared vocabulary makes it easier for webmasters and developers to decide on a schema and get the maximum benefit for their efforts."

56.   Google published a whitepaper on how Employer aggregate data should be structured in a website using the "EmployerAggregateRating" library. Shown in **Exhibit 65** and below:



57. When adding this library of code, UpCounsel intentionally violates (1) the technical and content guidelines of Google, which require legitimate reviews and (2) provisions of the Google Technical guidelines:

    a. "Make sure that the ratings are available to users from the page where you add EmployerAggregateRating structured data. It should be immediately obvious to users that the page has rating content." (*See* **Exhibit 66**.)

    b. "Provide rating information about a specific hiring organization, not about a category or a list of items. For example, "top 10 best places to work" and "tech companies" aren't specific hiring organizations." (*Id.*)

    c. "By default, Google assumes that your site uses a 5-point scale, where 5 is the best possible rating and 1 is the worst, but you can use any other scale. If you use a different scale, you can specify the best and worst ratings, and Google scales that to the 5-star system." (*Id.*)

58. UpCounsel also intentionally violates the Google's Content guidelines:

a. "Users must be able to post their own ratings on your site and your site must host those user ratings." (*See* **Exhibit 66**.)

b. "The number of ratings should reflect actual ratings that users provide." (*Id.*)

c. "The aggregate score should be accurately derived from the provided ratings." (*Id.*)

59. UpCounsel fraudulently and unethically employs techniques published on Schema.org to deceive Google and average consumers into thinking that when they search on Google, they are receiving trustworthy reviews of real attorneys in their city or "near them" when in fact, the reviews are a manufactured hodgepodge of unrelated UpCounsel attorneys who often have no connection to the particular city or state.

60. One such example is Joseph M. Aliberti ("Aliberti"), a California licensed attorney based in Newport Beach, that the defense counsel for UpCounsel told the Plaintiffs, on Saturday, September 8, 2018, was someone who "*never used UpCounsel's platform at all*", yet was listed on the UpCounsel website. (**Exhibit 3**.) (Aliberti's profile was removed from UpCounsel's website after Plaintiffs' Initial Complaint.) Aliberti appears as a "Top 5%" franchise lawyer in Santa Rosa, California through UpCounsel, "Top 5%" copyright lawyer in Coeur d'Alene, Idaho through UpCounsel, and a "Top 5%" intellectual property lawyer in Montgomery, Alabama through UpCounsel, among other practice areas and cities. (**Exhibit 50**.) This was published and available to the public at least as of September 9, 2018, when **Exhibit 50** was printed ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on **Exhibit 50** is trustworthy and legitimate.

61. While these are federal practice areas, this is not true for other attorneys. For example, California licensed attorney Seth Wiener based in San Ramon, is listed as one of "The 10 Best Employment Lawyers in South Carolina NEAR ME" through UpCounsel despite not being licensed to practice in that state. (*See* **Exhibit 51**.) **Exhibit 51** was published, available to the public, and printed on September 9, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine

("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on **Exhibit 51** was trustworthy and legitimate.

62. UpCounsel has greatly benefited from deceptive, unethical, and fraudulent search engine optimization techniques. Jeff Chen ("Chen"), UpCounsel's SEO Project Manager since March 2016, has boasted on his LinkedIn profile that UpCounsel has:

    a.  "Increased organic search traffic 700%+" Year over Year to 2.4+ million visitors per year. (*See* **Exhibit 63**.)

    b.  Increased "revenue 300%+ YoY, tripled the largest marketing channel, set new traffic and revenue records almost every month for past 12 months..." (*Id.*)

    c.  Ranked "90,000+ new unbranded keywords with 15,000+ keywords in top 10..." (*Id.*)

    d.  Helped to capture "$8.4 million of Adwords traffic/year" as free traffic thanks to UpCounsel's search engine optimization techniques. (*Id.*)

    e.  "Built new attorney listing algorithm in Python, measured with simhash analysis and launched 50,000+ pages." (*Id.*)

63. Also in his LinkedIn profile, Chen admits his search engine marketing work was "peer reviewed" by individuals in UpCounsel's senior management: "*Peer reviewed JIRA specs with CTO and department heads in Product, Engineering, Design, Operations, Growth, and Data to build: content hubs, navigation bar link widget, redesigns of lawyer pages, redesigns of articles with HTML, CSS, and Javascript, TF-IDF internal link widget, attorney bio dashboard, canonicalization of paginated pages, de-indexation and 410 of 600,000+ pages to recover from Google Panda algorithm, sample jobs widget, sidebar internal link importer, article snippets importer, attorney attribution widget, automated article internal links, review algorithm, and others.*" Herein, Chen admits that UpCounsel's "review algorithm" was approved and established under direction of the company's senior management. (*See* **Exhibit 63**.)

64. UpCounsel's false and misleading advertising has propelled it to secure 10,000+ customers. (**Exhibit 73**.) A percentage of these clients would have become clients of RAPC.

    **H.  Distant, Unlicensed Attorneys**

65. UpCounsel deceives customers by steering them to attorneys and non-attorneys who are not located anywhere close to their city, or authorized to practice in their respective state. For example, when searching UpCounsel's site for "Oakland Employment Attorneys & Lawyers" on September 11, 2018, the top two listings shown are for out-of-state attorneys who are not even authorized to practice law in California. (**Exhibit 31**.) **Exhibit 31** was published, available to the public, and printed on September 11, 2018, as displayed on the exhibit ("when").The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing statements originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibits was trustworthy and legitimate.

66. Similarly, for the "Top 5% of Patent Lawyers in Oakland, California," non-lawyer Ahmed Alhafidh ("Alhafidh") is listed as one of these top lawyers, as of August 29, 2018. Alhafidh is a former technical specialist at RAPC, and is not licensed to practice law in any state. (**Exhibit 32**.) Additionally, as of September 9, 2018 Alhafidh still appears as a "Top 5%" immigration lawyer in Blackfoot, Idaho through UpCounsel and as an "Oregon Attorney & Lawyers for Hire On-Demand" through UpCounsel. (**Exhibit 56**.) **Exhibit 32** was published, available to the public, and printed on August 29, 2018, as displayed on the exhibit ("when"). **Exhibit 56** was published, available to the public, and printed on September 9, 2018, as displayed on the exhibit ("when"). The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing statements originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibits was trustworthy and legitimate.

67. Numerous other individuals who are not lawyers are similarly advertised as "attorneys." A few are shown in **Exhibit 57**. For example, non-attorney Mark Levenda ("Levenda") is listed as a "Bend Attorneys & Lawyers for Hire On-Demand" and a "Top 5% of Patent Lawyers in Myrtle Beach, South Carolina." (**Exhibit 37**.) However, Levenda is not a lawyer, not a member of any state bar, and located in Mesa, Arizona, not Myrtle Beach, South Carolina nor Bend,

Oregon. (**Exhibit 38**.) These Exhibits were published, available to the public, and printed between September 9, 2018 and September 11, 2018, as displayed on each exhibit ("when"). The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibits was trustworthy and legitimate.

68. Similarly, non-attorney James Deirmendjian ("Deirmendjian") is listed as a "Top 5% of Patent Lawyers in Acworth, Georgia" and a "Top 5% of Patent Lawyers in Reading, Pennsylvania" by UpCounsel as of September 10, 2018. (**Exhibit 68**.) However, Deirmendjian is not a lawyer, not a member of any state bar, and located in Moorpark, California, not Acworth, Georgia nor Reading, Pennsylvania. (**Exhibit 69**.) These exhibits were published, available to the public, and printed on September 10, 2018, as displayed on each exhibit ("when"). The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibits was trustworthy and legitimate.

### I.   Deceptive "how to" Advertisements

69. UpCounsel's "how to" landing page advertisements are actually false statements and are designed to deceive the public into hiring them.

70. Advertisement: "*Come meet our attorneys and see if we have the right one for you*" (**Exhibit 44, p. 4**, published and printed as of July 26, 2018.) Specifically, UpCounsel's statement is false and misleading because it has no physical presence where any customer of UpCounsel can "meet" independent attorneys, and it has no avenue for Employer Users to meet its in-house attorneys. The very use of the word "our" indicates that UpCounsel thinks of itself as a law firm, in that the phrase "our attorneys" indicate a possessive tense that each attorney works in the same law firm. This false advertisement is made on an UpCounsel webpage in direct competition with the corporate formation and stock, equity structuring services of RAPC. (*See* **Exhibit 25**.) **Exhibit 44** was published, available to the public, and printed on July 26,

2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

71. Advertisement: "*UpCounsel accepts only the top 5 percent of lawyers to its site.*" (**Exhibit 45**, **p. 2,** published and printed as of September 9, 2018.) The advertisement by UpCounsel directly targets Trademarkia, as it appears under a heading titled "Trademarkia." (**Exhibit 45, p. 2**.) Specifically, UpCounsel's statement is false and misleading because it indicates that UpCounsel accepts "top 5 percent" of all lawyers to its website, and thus its site consists only of lawyers who are ***all*** in the top 5%. This false advertisement is made on an UpCounsel webpage in direct competition with the trademark preparation and prosecution services of RAPC. (*See* **Exhibit 25**.) **Exhibit 45** was published, available to the public, and printed on September 9, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

72. Advertisement: "*UpCounsel hires only the very best attorneys and works with top companies like Google, Stripe, and Twilio.*" (**Exhibit 46, p. 5**, published and printed as of August 31, 2018.) Specifically, UpCounsel's statement is false and misleading because it implies that UpCounsel as a corporate entity "hires" the attorneys (referred to as "Consultant Users") independently retained by Employer Users through its website and contracts them out to Employer Users, similarly to the way a law firm would do so. In addition, this statement is false and misleading because the phrase "works with" implies that UpCounsel as a corporate attorney is retained by companies such as Google, Stripe and Twilio when, in fact, UpCounsel as a corporate entity is not retained by any of these companies for legal services. This false advertisement is made on an UpCounsel webpage in direct competition with the trademark

preparation and prosecution services of RAPC. (*See* **Exhibit 25**.) **Exhibit 46** was published, available to the public, and printed on August 31, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

73. Advertisement: "*You can post your need through UpCounsel to get free custom quotes from the top 5% of intellectual property attorneys on UpCounsel.*" (**Exhibit 47, p. 4**, published and printed as of August 31, 2018.) Specifically, this statement is false and misleading because it implies that the "top 5%" of intellectual property attorneys across the United States provide quotes through UpCounsel, and there is a selection methodology to identify the top 5% of intellectual property attorneys across the United States. This false advertisement is made on an UpCounsel webpage in direct competition with the patent preparation and prosecution services of RAPC. (*See* **Exhibit 25**.) **Exhibit 47** was published, available to the public, and printed on August 31, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

74. Advertisement: "*Posting about your needs gets you multiple free custom quotes instantly from the top 5% of patent lawyers who come from law schools such as Harvard Law and Yale Law School.*" (**Exhibit 48, p. 7**, published and printed as of August 31, 2018.) Specifically, this statement is false and misleading because it implies that the "top 5%" of patent attorneys across the United States provide quotes through UpCounsel, and there is a selection methodology to identify the top 5% of patent attorneys across the United States. It does not appear that any patent lawyers on UpCounsel went to Yale Law School. Despite this, UpCounsel lists that it has attorneys that went to Yale Law on at least 7,540 separate web pages associated with patent services offered by UpCounsel. (**Exhibit 58**.) This false advertisement is made on an

UpCounsel webpage in direct competition with the patent preparation and prosecution services of RAPC. (*See* **Exhibit 25**.) **Exhibit 48** was published, available to the public, and printed on August 31, 2018, as displayed on the exhibit ("when"). **Exhibit 58** was published, available to the public, and printed on September 10, 2018, as displayed on the exhibit ("when"). The statements ("what") were made visible as a Google search result ("where") on the Google search engine ("how"), republishing statements originally made by UpCounsel ("who") on the UpCounsel website. The statements were made with an intent to deceive consumers into thinking the content shown on the exhibits was trustworthy and legitimate.

75. Advertisement: "*Lawyers are recruited from top Ivy League law schools and have on average more than 14 years of legal experience, including work with or on behalf of companies like Google.*" (**Exhibit 49, p. 5**, published and printed as of August 31, 2018.) Specifically, this statement is false and misleading because it implies that the UpCounsel itself recruits lawyers from top Ivy League law schools when in fact UpCounsel itself does not recruit at any Ivy League law schools. This false advertisement is made on an UpCounsel webpage in direct competition with the patent preparation and prosecution services of RAPC. (*See* **Exhibit 25**.) **Exhibit 49** was published, available to the public, and printed on August 31, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible as a Google search result ("where") on the Google search engine ("how"), republishing a statement originally made by UpCounsel ("who") on the UpCounsel website. The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

### J.   False and Misleading Fee Structure

76. UpCounsel deceptively hides exactly how much in fees consultant users or employer users pay as part of its success fee, ranging from 15% to 24%.

77. UpCounsel openly admits to charging processing fees (also referred to as "success fees") to clients who retain the third-party attorneys through UpCounsel. The charge is collected as a percentage proportional to the third-party attorneys' salaries when retained. UpCounsel writes on its terms shown in **Exhibit 11** (effective as of November 5, 2016 and available as of the time

of filing of the initial complaint, May 2, 2018) that:

**b. For Employer Users.**

When a Consultant User accepts your Covered Offer, you agree to pay a success fee to UpCounsel (each, a "Success Fee") equal to the following percentage of the Consultant User's base salary set forth in the Covered Offer (the Consultant User's "Base Salary"), which amount shall be due and payable no later than thirty (30) days after the Start Date and otherwise in accordance with the first sentence of each of Section 13.b. and Section 13.d. hereof:

If Start Date occurs on or before the following number of days after the commencement of the initial Employer User-User Consultant Job Base Salary Percentage

1-182 days 15%
183-365 days 10%
366-550 days 5%
≥ 551 days 0%

By accepting these Terms of Use, Employer User agrees that UpCounsel is authorized to immediately invoice Employer User's account for all Success Fees due and payable to UpCounsel hereunder and that no additional notice or consent is required.

(**Exhibit 11, Section 7.1.**)

78. In other words, UpCounsel blatantly and openly advertises that it not only marks fees up to 15% collected from clients as a percentage of the attorney's fees, but the client's heavy burden in this regard carries forward for nearly 2 years, or 550 days. It should be noted that this 15% mark up in its terms is materially inconsistent with its invoices, in which the mark up spikes to 24%.[8]

79. In addition to the misrepresentations of the mark up, UpCounsel attempts to "mask" this "processing fee" from its Employer Users by including it as part of the hourly fee paid to each lawyer. Specifically, the initial hourly rate shown to each potential client after a proposal is provided by an attorney is silent as to whether it includes the processing fee. (**Exhibit 12**, Section 1, *redacted*) Only after a user clicks twice more to affirmatively expand the "Fee

---

[8] UpCounsel invoices to Employer Users state "UpCounsel only adds a small processing fee to filing fees and expenses. The fees amount to 24% of your total invoice. However, the total invoice still represents no additional costs over what you would pay this attorney if acquired outside of UpCounsel because of their exclusive discounted rate."

details" is the "success fee" unmasked to the user as "insurance and quality fees." (**Exhibit 12**, Section 2 and Section 3, *redacted*) **Exhibit 12** section 1, 2, 3 were published, available to the public, and printed on September 11, 2018, as displayed on the exhibit ("when"). The statement ("what") was made visible to prospective "Employer Users" of UpCounsel ("where") on the UpCounsel.com website ("how") operated by UpCounsel ("who"). The statement was made with an intent to deceive consumers into thinking the content shown on the exhibit was trustworthy and legitimate.

80. Specifically, this second pop up box vaguely says:

> This amount includes the lawyer's exclusive UpCounsel discounted rate. UpCounsel adds fees to this discounted rate to help maintain the platform and to cover critical client benefits such as quality, insurance, and our money-back guarantee. UpCounsel only adds a small processing fee to filing fees and expenses. The total invoice still represents no additional costs over what you would pay this attorney if acquired outside of UpCounsel because of their exclusive discounted rate. (*Id.*)

81. The State Bar of California has recognized that UpCounsel's fee sharing is likely against its rules. On or about September 2016, the State Bar wrote admonishments to some of its members stating:

> The State Bar of California has received information regarding the operations of UpCounsel, Inc. Our review of the company's website shows that you have registered with UpCounsel, Inc., and currently maintain a profile on its website advertising your availability to provide legal services. We have opened this file in order to address our concern that your registration with UpCounsel, Inc., may result in a violation of the Rules of Professional Conduct. (**Exhibit 4**.)

82. The letter went on to say:

> We understand that business expenses, such as advertising and billing and collection services, are necessary expenses in the practice of law. However, allowing UpCounsel, Inc., to take a percentage of the attorney's fees paid by the client as a "processing fee" does not change the fact that UpCounsel, Inc., is receiving a share of legal fees which have been earned by the attorney. To insure that your conduct is in compliance with the ethical obligations of an attorney, please be sure that any fees/costs resulting from the services provided by UpCounsel are not based on a percentage of your legal fees. (*Id.*)

83. Other state bars have also issued similar opinions or rulings. For example, the

Pennsylvania Bar Association[9], the South Carolina Bar Association[10], the New York State Bar Association[11], the Supreme Court of Ohio[12], and the Office of Enrollment & Discipline of the USPTO [13] have stated that fee sharing on legal marketplaces or referral websites may result in a violation of professional ethic rules.

84. Upon information and belief, all UpCounsel received the above letter from the State Bar of California, but all decided to ignore the letter and continue to violate federal regulations and California ethics rules by advertising on and sharing attorney fees with UpCounsel.

## UNLAWFUL CONDUCT OF UPCOUNSEL

### IV.  Acting As Unregistered Lawyer Referral Service.

85. UpCounsel violates Cal. Bus. & Prof. Code § 6155(a) by providing referrals to lawyers of potential clients from a lawyer referral service not registered with the State Bar of California. (*See* **Exhibit 41-E.**)

86. Cal. Bus. & Prof. Code § 6155(a) provides that "[a]n individual, partnership, corporation, association, or any other entity shall not operate for the direct or indirect purpose,

---

[9] The Pennsylvania Bar Association expressly wrote "The manner in which the payments are structured is not dispositive of whether the lawyer's payment to the Business constitutes fee sharing" in Formal Opinion 2016-200, *See* **Exhibit 18** at II, highlighted.

[10] The South Carolina Bar Association expressly wrote "A lawyer cannot do indirectly what would be prohibited if done directly. Allowing the service to indirectly take a portion of the attorney's fee by disguising it in two separate transactions does not negate the fact that the service is claiming a certain portion of the fee earned by the lawyer as its "per service marketing fee." in Ethics Opinion 17-06, *See* **Exhibit 19**, page 2, highlighted.

[11] The New York State Bar Association expressly wrote regarding a different but similar legal marketplace, Avvo.com, "If, however, the marketing fee also includes a payment to Avvo for recommending the lawyer, then the payment constitutes giving something 'of value' for a recommendation, which does violate Rule 7.2(a)", Ethics Opinion 1132, *See* **Exhibit 20**, page 3, highlighted.

[12] The Supreme Court of Ohio expressly wrote "fees tied specifically to the number of individual clients represented or the amount of a legal fee is not permissible," Ethics Op. 2016-3, *See* **Exhibit 21**, page 7, highlighted.

[13] The USPTO expressly wrote, "If the entire amount received by the third party for the practitioner's compensation is not distributed to the practitioner and any undistributed compensation held by the third party is not returned to the inventor, then the practitioner has likely impermissibly shared fees with a non-practitioner." *In re Mikhailova*, Proceeding No. D2017-18, (USPTO June 16, 2017), *See* **Exhibit 22**, page 8, highlighted.

in whole or in part, of referring potential clients to attorneys," unless the service is registered with the State Bar of California as a "lawyer referral service". (*See* **Exhibit 41-E**.) According to the State Bar of California, "[a] lawyer referral service refers potential clients to attorneys." (*See* **Exhibit 34**.)

87. UpCounsel has been acting as an agent for its attorneys in soliciting potential clients using UpCounsel.com's legal resource pages. (*See* **Exhibit 42** showing 300 links out of 18,500 legal resource pages on UpCounsel.) UpCounsel then advertises these pages or causes these pages to show up on the search results of Google and other online marketplaces. At the end of each legal resource page there is always a direct solicitation of legal services for its attorneys. (*See, e.g.*, **Exhibits 44-49** below.)

88. These legal resource pages include sales pitch for UpCounsel through which it steers referrals to Consultant Users.  For Example:

    a.  "Come meet our attorneys and see if we have the right one for you." (**Exhibit 44** at 4.)

    b.  "UpCounsel accepts only the top 5 percent of lawyers to its site." (**Exhibit 45** at 2.)

    c.  "UpCounsel hires only the very best attorneys and works with top companies like Google, Stripe, and Twilio". (**Exhibit 46** at 5.)

    d.  "You can post your need through UpCounsel to get free custom quotes from the top 5% of intellectual property attorneys on UpCounsel." (**Exhibit 47** at 4.)

    e.  "Posting about your needs gets you multiple free custom quotes instantly from the top 5% of patent lawyers who come from law schools such as Harvard Law and Yale Law School."  (**Exhibit 48** at 7.)

    f.  "Lawyers are recruited from top Ivy League law schools and have on average more than 14 years of legal experience, including work with or on behalf of companies like Google." ).  (**Exhibit 49** at 5.)

89. Although UpCounsel carefully avoids mentioning the words "refer" or "referral" on its web pages, a service that connects potential clients with the right attorneys is nothing but a lawyer referral service.

90. Although UpCounsel.com has a disclaimer in fine print stating that it is not a "lawyer referral service", referring attorneys to potential clients is in essence all that UpCounsel does. According to the "How It Works" page of UpCounsel, customers looking for attorneys first post a job on UpCounsel.com, then the website's proprietary algorithm "matches" customers with certain attorneys, and finally customers hire the attorneys instantly through UpCounsel. (*See* **Exhibit 70**.)

91. UpCounsel is thus a *de facto* "lawyer referral service", however, it is not registered with the State Bar of California. (*See* **Exhibit 43**.) Therefore, UpCounsel has violated Cal. Bus. & Prof. Code § 6155(a).

**V.    Acting as Runner and Capper to Solicit Potential Clients.**

92. UpCounsel violates Cal. Bus. & Prof. Code § 6152 by acting as runner and capper to solicit legal service.

93. Cal. Bus. & Prof. Code § 6151(a) defines a runner or capper as "any person, firm, association or corporation acting for consideration in any manner or in any capacity as an agent for an attorney at law or law firm, whether the attorney or any member of the law firm is admitted in California or any other jurisdiction, in the solicitation or procurement of business for the attorney at law or law firm."  (*See* **Exhibit 41-A**.)

94. According to Cal. Bus. & Prof. Code § 6152(a), it is unlawful "for any firm, corporation, partnership or association to act as a runner or capper for any attorneys or to solicit any business for any attorneys …   in any public place … or upon private property of any character whatsoever."

95. As alleged above, UpCounsel violated Cal. Bus. & Prof. Code § 6152(a) by soliciting legal service for its attorneys.

96. UpCounsel has been known to co-locate in "co-working" and "startup" incubator spaces for the specific purpose of in-person solicitation of potential clients with whom the Consultant Users have no prior relationship.

97. For example, UpCounsel advertises job posting for "Account Executive" whose job description includes to "achieve and consistently exceed monthly sales goals" who is "*obsessed*

*with winning and closing deals.*" (*See* **Exhibit 9**.)

98. For another example, UpCounsel hires a "Business Development Partner" who is a "person who can connect with anyone, with the right mix of persistence and charm" in addition to being a "hunter and a relationship builder" for clients. (*See* **Exhibit 10**.) This position requires the "Business Development Partner" to "*Quarterback your own pipeline of inbound and outbound lead development which includes making 40-50 calls per day*" to solicit prospective clients. Upon information and belief, these positions are commission based.

99. Violation of Bus. & Prof. Code § 6152(a) is "punishable, upon a first conviction, by imprisonment in a county jail for not more than one year or by a fine not exceeding fifteen thousand dollars ($15,000), or by both that imprisonment and fine." Bus. & Prof. Code § 6153. (*See* **Exhibit 41-C**.) Upon a second or subsequent conviction, "a person, firm, partnership, association, or corporation is punishable by imprisonment in a county jail for not more than one year, or by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for two, three, or four years, or by a fine not exceeding fifteen thousand dollars ($15,000), or by both that imprisonment and fine." (*Id.*)

100. The consumer injury caused by UpCounsel's violation of Cal. Bus. & Prof. Code § 6152(a) is substantial because the contract between consumers and their attorneys secured through UpCounsel is voided by law. Bus. & Prof. Code provides the following:

> Any contract for professional services secured by any attorney at law or law firm in this state through the services of a runner or capper *is void*. In any action against any attorney or law firm under the Unfair Practices Act, Chapter 4 (commencing with Section 17000) of Division 7, or Chapter 5 (commencing with Section 17200) of Division 7, any judgment shall include an order divesting the attorney or law firm of any fees and other compensation received pursuant to any such void contract. *Those fees and compensation shall be recoverable as additional civil penalties* under Chapter 4 (commencing with Section 17000) or Chapter 5 (commencing with Section 17200) of Division 7.

Bus. & Prof. Code § 6154 (emphasis added, *See* **Exhibit 41-D**). Furthermore, the attorney fees and compensation charged by UpCounsel shall be recoverable as additional civil penalties. (*Id.*)

**VI.    Fee Sharing Between UpCounsel and Its Attorneys.**

101. UpCounsel has also aided and abetted its attorneys to violate California Rules of

Professional Conduct ("CRPC") Rule 1-320 and federal regulation 37 C.F.R. § 11.504 with respect to the prohibition of fee sharing between attorneys and non-attorneys. (**Exhibits 1-2**.) In order to achieve success, UpCounsel has boasted about this on its own blog stating that "Innovators like UpCounsel have to tread carefully around arcane distinctions, and constantly watch their backs for an incoming lawsuit from Bar Associations or lawyers unhappy with the idea of facing competition." (**Exhibit 59**.)

102.    UpCounsel's Terms of Use (**Exhibit 11**) demonstrates that legal fees paid by clients are shared between UpCounsel and its attorneys. UpCounsel marks up at least 15% of the legal fees paid by clients (also called "Users", "Legal Clients" or "Employer Users") for legal service provided by UpCounsel attorneys (also called "Consultant Users"). (*See id.* at 9.)

## VII.   Aiding And Abetting Its Attorneys To Violate CRPC 1-400

103.    Faustman and UpCounsel have also been aiding and abetting its attorneys to violate CRPC Rule 1-400 (*See* **Exhibit 23**) and USPTO 37 C.F.R. § 11.703 (*See* **Exhibit 24**) with respect to phone and in-person solicitation of non-clients. Plaintiffs have refused to violate these rules.

104.    As a result, UpCounsel has steamed ahead of Plaintiffs. UpCounsel has stated that the $26 million in venture capital it has raised will be used to "expand marketing, sales and services."[14] Unlike Plaintiffs, UpCounsel is able to hire experienced non-attorney salespeople, and upon information and belief, provides commission to these salespeople.

105.    CRPC Rule 1-400(C) states that "a solicitation shall not be made by or on behalf of a member or law firm to a prospective client with whom the member or law firm has no family or prior professional relationship, unless the solicitation is protected from abridgment by the Constitution of the United States or by the Constitution of the State of California."

106.    Based on Rule 1-400(B), a solicitation can be any communication concerning the availability for legal service in which a significant motive is pecuniary gain and which is delivered in person or by telephone.

107.    By soliciting on behalf of its attorneys, UpCounsel has been aiding and abetting its

---

[14] **UpCounsel raises $10M to grow on-demand lawyer platform**, July 28, 2015, http://fortune.com/2015/07/28/upcounsel/, last checked May 2, 2018.

attorneys to violate CRPC Rule 1-400 and USPTO Rule 37 C.F.R. § 11.703 with respect to phone and in-person solicitation of non-clients.

**VIII.  The Competition.**

108.    Plaintiff RAPC and Defendant UpCounsel are direct competitors in bidding for online paid search advertising on Google and Bing for "trademark attorney" (**Exhibit 13**) and "trademark lawyer" (**Exhibit 14**) related search terms. UpCounsel's advertisements advertise attorney services offered by a law firm by writing "Find an affordable trademark attorney" (**Exhibit 15**) and "Hire a Trademark Lawyer" (**Exhibit 16**) through its online advertisements. In all ways, UpCounsel operates as a law firm, attracting lawyers by promising them "direct access to clients" and boasting "free marketing opportunities") (**Exhibit 17**).

109.    Despite this, UpCounsel claims it is not a law firm in the United States and is not authorized to practice law in any state. UpCounsel is not a registered or bonded legal document assistant under California Business and Professions Code, sections § 6400 et seq.

110.    For all intents and purposes, UpCounsel is a law firm despite its efforts to disclaim being one. By characterizing UpCounsel as a virtual law firm, equivalent to a "law firm," and later admitting through his own statements that UpCounsel is an alternative to traditional law firms, Faustman essentially admits that UpCounsel is a "law firm," and for this reason the Plaintiffs allege UpCounsel should be held to the same ethical standards as a law firm.

111.    Plaintiffs are not able to compete fairly despite having an early start because they cannot fee share with non-attorneys. For this reason, based on UpCounsel's own admissions, UpCounsel has unfairly threatened Plaintiffs' business directly by unfairly competing.

112.    Collectively UpCounsel has created a virtual law firm that is now amongst the largest in the United States with respect to patents, trademarks, and corporate legal services. The growth in legal services by UpCounsel is a direct result of widespread and aggressive advertising on the Internet and phone solicitation of non-clients by UpCounsel.

113.    UpCounsel advertisements and other promotional statements are false and misleading to reasonable consumers, and create unfair competition. For example:

a.  Claiming That Upcounsel Is A "Virtual Law Firm" In Numerous Public Marketing

Presentations Despite False Disclaimers.

b. Upcounsel Utilizes False And Misleading Advertising Of "Top 5%" Of Attorneys Followed By A City Name In Advertisements With No Legitimate Basis For Making These Claims.

c. "The 10 Best {Practice Area} Lawyers in {State} NEAR ME" as described herein *supra* in Section III.C., and in the exhibits referenced therein.

d. Upcounsel Fabricates Aggregate Reviews of States and Cities To Create A False Illusion Of "5 Star" Quality Of Attorneys In Tens Of Thousands Of Cities Across America.

e. Upcounsel Deceives Clients By Steering Them To Attorneys And Non-attorneys Who Are Not Authorized To Practice In Their Respective State/Jurisdiction.

f. Upcounsel "How To" Landing Page Advertisements Are Actually False Statements And Are Designed To Deceive The Public Seeking Legal Knowledge Into Hiring Them.

g. Upcounsel Deceptively Hides And Conceals Exactly How Much Fees Consultant Users Or Employer Users Pay To It As Part Of Its Success Fee, Ranging From 15% To 24%.

h. Upcounsel Manipulates Presentation Layer Software Code To Deceive The Public And Hurt Competition From Law Firms And Legal Technology Companies To Unfairly Have Their Fraudulent Web Pages Display At The Top Of Search Results In Tens Of Thousands Of Cities Across America.

114.    RAPC has lost revenue due to UpCounsel's conduct. UpCounsel's false advertising and unfair competition have caused consumers to purchase UpCounsel's services instead of RAPC's services. But for the misleading advertisements and unfair competition with respect to the comparability of UpCounsel's services with those of the Plaintiffs, a good percentage of consumers likely would not have consented to "processing fees" with UpCounsel, and opted for those of RAPC instead. In total, RAPC's lost sales opportunities exceed $1,000,000 based on the lifetime value per customer in the past five years alone.

115. RAPC has also lost asset value. Given that Plaintiffs are the largest filer of U.S. trademarks in the United States for at least the last 5 years, it has seen its market share decline from nearly 3% of all U.S. trademarks filed in the United States in 2011 to approximately 1.8% in 2017, as a direct consequence of UpCounsel's unfair competition. RAPC has lost market share of approximately 1.1% of the overall trademark market since 2011 (approximately 5000 trademarks filings per year) in the relevant market for U.S. trademark filing and prosecution as direct result of UpCounsel false and misleading business practices and representations. In addition, RAPC's patent and corporate legal services revenues have dramatically fallen in the last 4 years from over $1.5 million per year to about $500,000 per year in the relevant market for U.S. patent filing and prosecution and corporate legal services for businesses as a direct result of UpCounsel's false and misleading business practices and representations. Tellingly, RAPC ceased making the INC5000 list of the fastest growing companies in America in 2015 after 4 consecutive years of making the list. (*see*: https://www.inc.com/profile/RAPC-rapc). Plaintiffs' value of their business has been directly reduced and negotiations with potential acquirers have stalled.

116. RAPC spends over $1,200,000 a year to acquire new clients through search engines and online marketing, and its costs per client acquisition has been steadily increasing because of the misleading advertising described here. For example, RAPC's cost per click and total advertising to attract trademark, patent, and startup clients has gone up by approximately 30% as a consequence of UpCounsel's conduct.

## FIRST CLAIM FOR RELIEF
### FALSE ADVERTISING AND UNFAIR COMPETITION
### THE LANHAM ACT, 15 U.S.C. § 1125(a)
### (Against UpCounsel by RAPC)

117. RAPC repeats each and every allegations contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth herein.

118. UpCounsel violated 15 U.S.C. § 1125(a) by making false and misleading advertising Statements A to J as alleged *supra* in Section III titled "False And Misleading Advertisement".

119. The statements were made in connection with services offered by UpCounsel. The

statements relate to descriptions or representations of fact that misrepresent the nature, characteristics, and quality of UpCounsel's services.

120.    UpCounsel's false and misleading advertisements have caused and, unless enjoined, will continue to cause immediate and irreparable harm to RAPC for which there is no adequate remedy at law. In addition, as a result of UpCounsel's false and misleading advertisements, RAPC has been injured, including but not limited to, decline in sales and market share, loss of goodwill, and additional losses and damages.

121.    Furthermore, UpCounsel has been unjustly enriched at the expense of RAPC as a consequence of UpCounsel's false and misleading advertising. Accordingly, RAPC is entitled to injunctive relief and to recover three times the damages sustained by RAPC, enhanced profits and costs, as well as UpCounsel's profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**Rule 9(b) standard**

122.    Where a claim "sound[s] in fraud," even where fraud is not a "necessary element" of the subject cause of action, the plaintiff must comply with Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

123.    Nature of Advertising Copy includes:

   a.  "UpCounsel is the world's largest virtual law firm," as described herein *supra* in Section III.A., and in the exhibits referenced therein.

   b.  "Top 5% of {Practice Area} Lawyers in {City}" as described herein *supra* in Section III.B., and in the exhibits referenced therein.

   c.  "The 10 Best {Practice Area} Lawyers in {State} NEAR ME" as described herein *supra* in Section III.C., and in the exhibits referenced therein.

   d.  "{City} Attorneys & Lawyers for Hire On-Demand"as described herein *supra* in Section III.D., and in the exhibits referenced therein.

   e.  "{City} {Practice Area} Lawyers 5.0 ***** Based on {X number of} reviews" as described herein *supra* in Section III.E., and in the exhibits referenced therein.

   f.  "***** Rating: 5 - {X number of} reviews" as described herein *supra* in Section

III.F., and in the exhibits referenced therein.

g.    UpCounsel's misleading reviews, ratings, and search result manipulations as described herein *supra* in Section III.G., and in the exhibits referenced therein.

h.    Various misleading advertising statements about attorneys distant from, and not licensed to practice law in states of, customers as described herein *supra* in Section III.H., and in the exhibits referenced therein.

i.    Various misleading promotional statements on UpCounsel's "how to" web pages as described herein *supra* in Section III.I., and in the exhibits referenced therein

j.    Upcounsel manipulates presentation layer software code to deceive the public and hurt competition from law firms and legal technology companies to unfairly have their fraudulent web pages display at the top of search results in tens of thousands of cities across America.

k.    UpCounsel's misleading fee and representations as described herein *supra* in Section III.J., and in the exhibits referenced therein.

124.    The advertisements above were broadcast or otherwise made to the public at least on, or earlier than, May 1, 2018 and continued onward through the filing of this first amended complaint on September 11, 2018 via the Google search engine and directly on various pages of the UpCounsel website as alleged herein.

125.    The challenged statements are located on the website operated by UpCounsel at www.upcounsel.com on the URLs shown in the various exhibits. The challenged statements in which aggregated reviews are shown are located on the right navigation bar on the top half of webpages in which attorney profiles associated with a city or a state are displayed, whereas any disclaimers that UpCounsel is not a law firm is printed in very small print at the bottom of each page.

126.    Under the requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), a pleading is sufficient as long as it "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993). Even if Rule 9(b) applies here, Plaintiffs clearly met this

1    requirement with respect to the fee advertisements as well as all facts described here. Plaintiffs

2    plainly pleaded that UpCounsel (the Who) provided misleading and deceptive percentages for

3    the markup fees as well as advertisements described above (the What) as 15% in the Terms of

4    Use on the UpCounsel website and the misleading advertising on the UpCounsel website and

5    the Google search engine (the Where), when it is actually 24% in the invoices that are provided

6    to the client consumers and when it widely disseminated its falsehoods on tens and thousands of

7    web pages as alleged herein. (the When and How). *Id*.

8    127.    RAPC not only detailed the misleading terms in its complaint, it also provided the

9    referenced terms of use and misleading description of the fees as exhibits to this first complaint

10   in detail. For example, Defendant's advertised markup is only 15% under the Terms of Use;

11   however, when the client receives the invoice, he or she is then notified that the markup is

12   actually 24%. Not only did RAPC provide the Who, What, Where, and When, it provided

13   exhibits and detailed descriptions identifying the misrepresentations so that Defendant can

14   adequately answer these allegations. Specifically, the complaint goes even further and outlines

15   the steps taken in Defendant's deceit: "[o]nly after a user clicks twice more to affirmatively

16   expand the 'Fee details' is the 'success fee' unmasked to the user as 'insurance and quality

17   fees.' However, the percentage is not disclosed." (*See supra* ¶ 77.)

### SECOND CLAIM FOR RELIEF
#### CALIFORNIA FALSE & MISLEADING ADVERTISING
#### CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*
(Against UpCounsel by RAPC)

128.    RAPC repeats each and every allegation contained in the paragraphs above and

incorporate by reference each preceding paragraph as though fully set forth herein.

129.    UpCounsel publicly disseminated internet advertisements with the intent to perform

services to consumers in the State of California, as further described in this Complaint.

130.    UpCounsel's advertisements were false, misleading, and untrue, as further described

in this Complaint.

131.    UpCounsel's advertisements are likely to and actually have deceived consumers.

Consumers have purchased UpCounsel's services instead of RAPC's services as a result of their

1   deception.

2   132.   RAPC has suffered and will continue to suffer loss of revenue, loss of profits, loss of

3   market share, reduced asset value, diverted sales to UpCounsel, increased advertising costs and

4   loss of valuable business opportunities, all of which belonged to or vested to RAPC but were

5   taken away by UpCounsel as a result of its wrongful acts.

6   133.   UpCounsel has been unjustly enriched through its false and misleading advertising.

7   134.   If UpCounsel is not preliminarily or permanently enjoined, it will continue to derive

8   revenue, profits, market share and sales from RAPC by wrongful acts. Unless restrained by this

9   court, UpCounsel will cause additional injury to RAPC for which RAPC has no adequate

10  remedy at law.

11  135.   RAPC seeks an order of this Court under California Business & Professions Code §

12  17500 to preliminarily and permanently enjoin UpCounsel from continuing to engage in the

13  false and misleading advertising set forth herein.

14  
### THIRD CLAIM FOR RELIEF
CALIFORNIA UNFAIR COMPETITION IN VIOLATION OF
CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*
(Against UpCounsel by all Plaintiffs)

17  136.   Plaintiffs repeat each and every allegation contained in the paragraphs above and

18  incorporate by reference each preceding paragraph as though fully set forth herein.

19  137.   Plaintiffs have standing because they have suffered injury in fact and lost money,

20  including diverted sales to UpCounsel, lost revenue, loss of market share, reduced asset value,

21  and increased advertising costs.

22  138.   UpCounsel violated the unlawful prong of UCL because:

23    a.   UpCounsel violates Cal. Bus. & Prof. Code § 6155 as alleged *supra.*

24    b.   UpCounsel violates Cal. Bus. & Prof. Code § 6152(a) as alleged *supra.*

25    c.   UpCounsel violates 37 C.F.R. § 11.504 and CRPC 1-320 as alleged *supra.*

26    d.   UpCounsel aids and abets attorneys listed on UpCounsel to violate CRPC 1-400 as

27         alleged *supra.*

28  139.   UpCounsel violated the unfair prong of UCL because of, and not limited to, the

following:

    a.  It is unfair to the competition in the practice of law if UpCounsel is able to offer legal services by violating state laws, federal regulations and California ethics rules without being punished, while the vast majority of attorneys and legal technology companies, including Plaintiffs, abide by the laws, federal regulations and California ethics rules.

    b.  The consumer injury caused by UpCounsel violating the state laws, federal regulations and ethics rules is substantial. As these laws, regulations and ethics rules regulate lawyer referral, solicitation and fee sharing with nonlawyers, they are there to ensure that a lawyer's independent professional judgment is not interfered with by nonlawyers, and they are there to protect the interest of the public at large. When they are violated by UpCounsel, consumers become susceptible to the harm of bad legal advice given by attorneys whose independent professional judgment may be tainted. The contract for legal service between consumers and UpCounsel may be voided by the operation of law. The public interest is greatly harmed.

    c.  Providing legal advice to clients by the means of violating state laws, federal regulations and ethics rules offers no countervailing benefits to consumers or the competition.

    d.  Consumers themselves cannot reasonably avoid the injury because reasonable consumers are not aware of the these laws, regulations and ethics rules and are not aware that they are being harmed or will be harmed.

140.    UpCounsel prevented competition from Plaintiffs by unfairly gaining potential clients through illegal solicitation and sharing legal fees with lawyers. But-for UpCounsel's unlawful and unfair competition, a good percentage of these potential clients would have otherwise gone to Plaintiffs.

141.    UpCounsel's conduct of unlawful and unfair competition proximately caused Plaintiffs' injury. UpCounsel advertises on Google and other online marketplaces where Plaintiffs also advertise. UpCounsel purchases the same or similar advertising keywords which Plaintiffs also purchase. Thus, UpCounsel directly competes (unfairly) with Plaintiffs. If

UpCounsel did not engage in the alleged unlawful solicitation and unethical fee sharing, they would not have made false and misleading advertisements on Google and would not have unfairly competed with Plaintiffs. Therefore, UpCounsel's conduct of unfair competition took away potential sales belonging to Plaintiffs and proximately caused injury to Plaintiffs.

142.    As a result of UpCounsel's wrongful acts, Plaintiffs have suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to UpCounsel, increased advertising costs and loss of valuable business opportunities, all belonging to or vesting to Plaintiffs but taken away by UpCounsel as a result of their wrongful acts.

143.    Plaintiffs seek an order of this Court under California Business & Professions Code § 17200 that preliminarily and permanently enjoins UpCounsel from continuing to engage in the unlawful and unfair acts or practices set forth herein.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

144.    Trademarkia seeks a declaration that, LegalForce, Inc., a legal technology C corporation organized in Delaware and substantially owned by California and USPTO licensed attorney Raj Abhyanker is permitted to operate a legal marketplace website similar to UpCounsel that marks up attorney fees as "processing fees" calculated as a percentage of the attorney fees paid by clients retaining independent lawyers through the Trademarkia.com and LegalForce.com websites.

145.    RAPC seeks a declaration as to whether UpCounsel is a "law firm" and therefore subject to the ethics rules of State Bar of California and the USPTO with respect to fee sharing and phone solicitation because UpCounsel operates as a *de facto* law firm by openly advertising that it is "equivalent to the world's largest virtual law firm."

146.    Enter judgment against UpCounsel;

147.    Award RAPC all available damages against UpCounsel in an amount to be proven at trial;

148.    Declare this case as an exceptional case under 15 U.S.C. § 1117(a);

149.   Award Plaintiffs' their costs and expenses of this action against UpCounsel, including their reasonable attorneys' fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 1117(a);

150.   Award Plaintiffs' compensatory and punitive damages if available;

151.   Award Plaintiffs' pre- and post-judgment interest at the applicable rates on all amounts awarded;

152.   Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint; and

153.   Order any other such relief as the Court deems appropriate.

Respectfully submitted this Tuesday, September 11, 2018.

LegalForce RAPC Worldwide P.C.

By   /s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C. and
LegalForce, Inc.

## JURY TRIAL DEMAND

Plaintiffs hereby request a bench trial for the declaratory judgement and injunction causes of action, and a jury trial for all other causes of action alleged in this First Amended Complaint.


Respectfully submitted this Tuesday, September 11, 2018.


LegalForce RAPC Worldwide P.C.


By   /s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Plaintiff & Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C. and
LegalForce, Inc.