United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LEGALFORCE RAPC WORLDWIDE P.C., ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**UPCOUNSEL, INC.,**<br><br>Defendant. | CASE NO. 18-cv-02573-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 49 |

Now before the Court is defendant UpCounsel, Inc.'s ("UpCounsel") motion to dismiss plaintiffs Legalforce RAPC Worldwide P.C.'s ("LegalForce RAPC") and LegalForce, Inc.'s ("Trademarkia") first amended complaint. (Dkt. No. 49 ("MTD").) Having carefully considered the pleadings in this action, the papers submitted, and the oral argument held on November 6, 2018, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** UpCousel's motion.[1]

## I. BACKGROUND

UpCounsel is an online marketplace for legal services that enables users (primarily entrepreneurs and businesses) to find and hire attorneys via its website UpCounsel.com. (First Amended Complaint ("FAC") ¶ 16, Dkt. No. 45.) California attorney Raj Abhyanker started both plaintiff companies approximately four years before UpCounsel launched. (*Id*. ¶¶ 13–15.) Plaintiff LegalForce RAPC is a law firm wholly owned by Abhynaker, which practices corporate and intellectual property law. (*Id*. ¶ 7.) Plaintiff Trademarkia offers law firm automation and free trademark search services through its website Trademarkia.com. (*Id*. ¶ 8.) UpCounsel and

---

[1] Given the sheer number of statements addressed in this Order, the Court summarizes that those which contain specific representations have survived the motion to dismiss, as have the allegations regarding UpCounsel's fee structure.

plaintiffs compete to provide individuals and small businesses with affordable access to attorneys. (*Id*. ¶ 2.)

Plaintiffs allege that UpCounsel's false advertising and unfair competition have caused consumers to purchase UpCounsel's services instead of LegalForce RAPC's services. (*Id*. ¶ 114.) Among the challenged conduct by UpCounsel is its (i) acting as an unregistered lawyer referral service, (ii) acting as a runner and capper to solicit potential clients, (iii) fee sharing with attorneys; (iv) aiding and abetting its attorneys to violate California Rule of Professional Conduct 1-400 and 37 C.F.R. section 11.703; and (v) use of certain advertisements and promotional statements which plaintiffs allege are false and/or misleading to reasonable consumers. Plaintiffs claim that UpCounsel's alleged misconduct has resulted in lost sales opportunities, lost asset value, lost market share, lost revenue, and rising costs per client acquisition for LegalForce RAPC. (*Id*. ¶¶ 114–16.)

On September 11, 2018, plaintiffs filed their FAC, asserting therein three claims for relief: (1) "False Advertising and Unfair Competition [under] the Lanham Act, 15 U.S.C. § 1125(a)"; (2) "California False & Misleading Advertising [under] Cal. Bus. & Prof. Code § 17500 *et seq*. [('FAL')]"; and (3) "California Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 *et seq*. ['UCL']."[2] The instant motion followed.

## II.  LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Id*. Nonetheless, "a plaintiff's obligation to provide the

---

[2] Specifically, LegalForce RAPC asserts all three claims, while Trademarkia asserts only a claim under the UCL.

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* (internal quotation marks, citation, and alterations omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

On a motion to dismiss, a court can consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The court is not required to accept as true allegations that contradict such documents. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### III.    FIRST CLAIM FOR RELIEF:  FALSE ADVERTISING AND UNFAIR COMPETITION (LANHAM ACT, 15 U.S.C. § 1125(A))

The Lanham Act prohibits any person from using, "on or in connection with any goods or services, . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . misrepresents the nature, characteristics, [or] qualities . . . of his or her or another person's goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(B).

LegalForce RAPC's Lanham Act claim is based generally on ten allegedly "false and misleading advertising [s]tatements . . . relat[ing] to descriptions or representations of fact that misrepresent the nature, characteristics, and quality of UpCounsel's services." (FAC ¶¶ 118–19.) UpCounsel argues that all of the challenged statements are non-actionable.

In its motion, UpCounsel generally sorts plaintiffs' false advertisement allegations into

four groups.[3] As a result, UpCounsel's position with respect to *each* statement asserted in the FAC was difficult for the Court to discern. The Court instead understands UpCounsel's motion as attacking *eight* statements, or categories of statements, which are addressed in turn. (*See infra* Sections III.A–H.)[4]

### A. "UpCounsel is the world's largest law firm."

Plaintiffs allege six iterations of the statement that "UpCounsel is the world's largest virtual law firm." According to plaintiffs, all of them were "made with an intent to deceive consumers into thinking the statement 'UpCounsel is the world's largest virtual law firm' is trustworthy and legitimate." (FAC ¶ 25.) "Since UpCounsel is not a law firm," plaintiffs contend that "these statements are false and misleading to average consumers. . . . Clearly, UpCounsel sells itself as a law firm, acts like a law firm, and therefore is a law firm despite its self-serving statements to the contrary." (*Id*. ¶ 26.)

UpCounsel generally argues, without specifically addressing each iteration, that the statement that UpCounsel is "equivalent to the world's largest law firm" is non-actionable puffery. (MTD at 12.)[5] The Court addresses each of the six iterations in turn.

---

[3] Those groups include: "behind-the-scenes HTML source code or 'search engine optimization' ('SEO') efforts," "quotes suggesting that UpCounsel is 'equivalent to the world's largest virtual law firm' or that available lawyers are, for example, the 'best patent lawyers' in a particular city," "whether UpCounsel's fee structure is 'false and misleading,'" and "serious but spurious allegations that some lawyers advertised on UpCounsel's website are 'not even licensed to practice law' in a particular state, or in any state." (*See* MTD at 9–10.)

[4] Any statements not addressed herein are those that were not *clearly* the subject of UpCounsel's motion to dismiss.

[5] UpCounsel also argues as a general matter that "[p]laintiffs cannot rest their Lanham Act claims on UpCounsel's executives' statements, both as a matter of fact and as a matter of law." (MTD at 13.) It cites *L.A. Taxi Cooperative, Inc. v. Uber Technologies, Inc.*, 114 F. Supp. 3d 852 (N.D. Cal. 2015) in support thereof. However, that case is distinguishable because the challenged statements, which were made by Uber representatives to journalists and published in independent online articles, were "'inextricably intertwined' with the reporters' coverage of a *matter of public concern*, i.e. whether Uber is safe for riders[.]" *Id*. at 864 (emphasis supplied). For this reason, the court in *L.A. Taxi* determined that the statements could not constitute commercial speech actionable under the Lanham Act. Unlike the statements in *L.A. Taxi*, the challenged statements here do not implicate matters of public concern. Thus, this argument fails, and the Court does not address it further.

4

*1.      Statements on the website of UpCounsel's business partner inDinero Inc.*

On the website of UpCounsel's business partner inDinero Inc., UpCounsel made the following statements:  "We are the world's largest virtual law firm for businesses of any size.  We allow businesses to get high-quality, cost-effective legal services.  While our lawyers serve as outside general counsel to many companies, we also assist with specialized legal work like IP, immigration, commercial contracts, litigation, and much more."  (FAC ¶ 19; *id*. Exh. 35 at 1.)

First, as plaintiffs' counsel conceded at oral argument, the phrase "world's largest virtual law firm" constitutes non-actionable puffery.  (*See* Transcript of Proceedings held on November 6, 2018 ("Hearing Tr. 2") at 13:23–14:3, Dkt. No. 71.)  Second, LegalForce RAPC's reliance on these statements as a basis for its Lanham Act claim does not persuade, in light of the *context* in which the statements were made, which the Court may consider.  Namely, on its website inDinero also states:  "Every day, we have the pleasure of working with innovative *startups* that are making a true difference in the world around us.  This Customer Spotlight, we'd like to introduce you to UpCounsel.  They make it easy for you to *find talented and local attorneys* at an affordable rate."  (FAC Exh. 35 at 1 (emphases supplied).)  UpCounsel's motion is thus **GRANTED** as to these statements.

*2.      Statements by UpCounsel's customers*

In an article entitled "6 Lexoo Competitors Connecting Lawyers and Clients with Online Legal Platforms," DataFox, a customer of UpCounsel, stated:  "UpCounsel is the world's largest virtual law firm.  With UpCounsel, businesses can access and manage a high-quality and on-demand legal workforce.  Today, both big and small businesses use UpCounsel to supplement or replace their traditional service providers."  (FAC ¶ 20; *id*. Exh. 36 at 2.)

LegalForce RAPC's reliance on these statements similarly does not persuade.  In the article, UpCounsel is featured as one of six private companies "that could help the legal services *technology market* grow . . . ."  (FAC Exh. 36 at 1 (emphasis supplied).)  UpCounsel's motion is thus **GRANTED** as to these statements.

### 3. Statements by UpCounsel's Co-founder and Chief Executive Officer in an interview

On March 15, 2015, Mimesis Law, a strategic communications consultancy firm, published a video it produced of an interview with UpCounsel's Co-founder and CEO, Matthew Faustman, entitled "Competitor or Collaborator? What UpCounsel's Growth Means for BigLaw." (FAC ¶ 21.) In the interview, Faustman made the following statement: "So, what we've created at UpCounsel is equivalent to the world's largest virtual law firm."[6]

The Court already dismissed the Lanham Act claim to the extent it is based on this statement, in the context of UpCounsel's previous motion to dismiss the initial complaint in this action. (*See* Transcript of Proceedings Held on August 28, 2018 ("Hearing Tr. 1") at 9:25–10:20, Dkt. No. 46; *see also* Dkt. No. 42 ("MTD Order") at 1.) To reiterate, LegalForce RAPC's reliance on this statement is disingenuous. While Faustman, indeed, remarks in the video that "what we've created at UpCounsel is equivalent to the world's largest law firm," he *immediately* goes on to say, "But, as I'm sure you know, and many of your viewers know, we aren't a law firm. We are a venture-backed technology company. We've started with technology and we end with technology, where we've created a [*sic*] intelligent technology platform that makes it easy to discover and work with a community of attorneys."[7] UpCounsel's motion is thus **Granted** as to these statements.

### 4. Statements by Faustman at Persian Tech Conference

On December 12, 2014, Faustman made the following statements: "[W]e have created what is essentially the world's largest virtual law firm . . . . We're able to deliver high-quality, cost-effective, and faster solutions than what the traditional law firms are actually able to provide."[8]

LegalForce RAPC's reliance on these statements also does not persuade. Between the two

---

[6] *See* **https://www.youtube.com/watch?v=FG1ZBCL181I&app=desktop&t=0m44s**; *see also* FAC ¶ 21.

[7] *See* **https://www.youtube.com/watch?v=FG1ZBCL181I&app=desktop&t=0m52s**.

[8] *See* **https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=0m35s**; **https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=1m22s**; *see also* FAC ¶ 22.

sentences plaintiffs quote, Faustman states the following: "We essentially allow independent talented lawyers throughout the world through a mobile device or a laptop to *plug into the UpCounsel marketplace and accept work, and essentially work freely as independent contractors*. We then bundle this up and we go to our companies. We go to our clients, which are businesses between 5 and 1000 employees. . . ."[9] UpCounsel's motion is thus **GRANTED** as to these statements.

5. *Statements made up UpCounsel's Co-founders in online video titled "Inside UpCounsel's Mission to Modernize the Legal Industry"*

In a September 21, 2015 online video, Faustman made the following statement: "This is a very high-trust kind of industry, and in order to make any movement people have to associate you with very high quality [that] is as good as using a law firm."[10] In addition, Mason Blake, Co-founder and Chief Technology Officer of UpCounsel, stated: "The beauty of UpCounsel is that it's essentially a virtualized law firm in a box . . . ."[11]

LegalForce RAPC's reliance on Faustman's statement is unpersuasive because the statement itself indicates that using UpCounsel is *as good as using a law firm*. As for Blake's statement, the preceding statement made by the moderator of the discussion is the following: "One of the things that gets me really excited about UpCounsel too is . . . your primary offering is that connection—is the back office for the lawyers and then being able to use your platform to communicate, you know a small business and the lawyer they're working with—but you can also assemble a team of lawyers who help you with different things."[12] Thus, the subsequent statement by Blake which describes UpCounsel as a "virtualized law firm in a box" ties back to the notion that UpCounsel is a technology platform that makes it easy to discover and work with a community of attorneys. UpCounsel's motion is thus **GRANTED** as to these statements.

_____

[9] *See* **https://www.youtube.com/watch?v=jaS7kuEv1Y4&t=0m44s** (emphasis supplied).

[10] *See* **https://www.youtube.com/watch?v=eKe3y2aEG2I&app=desktop&t=8m19s**; *see also* FAC ¶ 23(a).

[11] *See* **https://www.youtube.com/watch?v=eKe3y2aEG2I&app=desktop&t=2m23s**; *see also* FAC ¶ 23(b).

[12] *See* **https://www.youtube.com/watch?v=eKe3y2aEG2I&app=desktop&t=2m02s**.

6.     *Statements by Faustman in an interview with San Gabriel Valley Tribune*

In an article published on March 26, 2015 and updated on August 30, 2017, Faustman was quoted as describing UpCounsel as "equivalent to the largest virtual law firm in the world." (FAC ¶ 24; *id*. Exh. 40 at 2.)

LegalForce RAPC's reliance on this statement does not persuade because the quote by Faustman *immediately* following this one states: "We are a *venture-backed technology compan*y based out of San Francisco . . . . We have a *marketplace structure*, and we power that with a group of top-tier attorneys." (FAC Exh. 40 at 2 (emphases supplied).) UpCounsel's motion is thus **GRANTED** as to these statements.

7.     *Conclusion*

In sum, the Court does not accept as true plaintiffs' allegations with respect to the aforementioned statements as they are contradicted by the documents attached to, and incorporated by reference in, the FAC. Accordingly, UpCounsel's motion to dismiss LegalForce RAPC's Lanham Act claim is **GRANTED WITHOUT LEAVE TO AMEND** to the extent the claim is based on the statement that "UpCounsel is the world's largest law firm."

**B.     "Top 5% of {Practice Area} Lawyers in {City}"**

Plaintiffs allege that "UpCounsel has made tens of thousands of false and misleading statements in the format of 'Top 5% of {Practice Area} Lawyers in {City}' in tens of thousands of web pages on its website." (FAC ¶ 27; *see generally, e.g.*, *id*. Exhs. 26–29.) Plaintiffs contend that "[b]y indicating '5%', UpCounsel implies that there exists an independent and publicly trusted ranking system in each and every city and the attorneys that UpCounsel lists on its city pages are chosen from the top 5% of such a list. In reality, no such list exists." (FAC ¶ 30.) Plaintiffs allege that this statement misled customers, as evidenced by a review of UpCounsel on Yelp from a customer who said the reason he selected UpCounsel was because he believed it was "a network for only the most top notch legal reps in the area" and "[t]he attorneys offered with them are at the top of their game and you will get what you pay for." (FAC ¶ 32 (emphasis removed); *id*. Exh. 39 at 2.) Separately, a customer wrote on Quora that he was deceived when he saw an advertisement on a search engine because "[o]ffering 'Business Legal Services On-

1   Demand by Top Attorneys,' UpCounsel also promised attorneys who could do the job for much

2   less money." (FAC ¶ 32 (emphasis removed); *id*. Exh. 72 at 2.)  The customer wrote:  "Well, the

3   bottom line in this review of UpCounsel:  I wish I had never used UpCounsel and I'm warning all

4   startups, business and companies out there to never make the same mistake!"  (FAC ¶ 32

5   (emphasis removed); *id*. Exh. 72 at 2.)

6       UpCounsel argues that the examples and related exhibits plaintiffs provide are Google

7   *search results*, not statements made by UpCounsel.  (MTD at 12.)  In any event, even if

8   UpCounsel *had* made these statements, UpCounsel argues that they would still be "general

9   assertions" and "mere puffery."  (*Id*.)

10      As a preliminary matter, the Lanham Act claims based on the "Top 5% of Trademark

11  Attorneys" already survived dismissal on the basis of puffery.  (*See* MTD Order at 2; Hearing Tr.

12  1 at 16:14–17.)  That the FAC adds similar statements pertaining to other types of attorneys,

13  namely patent, intellectual property, copyright, and startup attorneys, (*see* FAC ¶ 27), does not

14  affect the Court's ruling as to this category of statements.[13]

15  _____

16      [13]  UpCounsel cites *Hackett v. Feeney*, No. 2:09-cv-02075-RLH-LRL, 2011 WL 4007531

17  (D. Nev. Sept. 8, 2011) in support of its argument that, in order to be actionable under the Lanham
    Act, the statement must answer the "critical question '[Top 5%] *as determined by whom[?]*'"
    (Reply at 11 (emphasis supplied).)  However, that case is distinguishable.  First, it involves a #1

18  claim, namely "Voted #1 Best Show in Vegas!"  *Id*. at *4; *see also In re Century 21-RE/MAX Real
    Estate Advert. Claims Litig*., 882 F. Supp. 915, 923 (C.D. Cal. 1994) ("The word[] . . . '#1'

19  convey[s] no specific meaning and thus cannot be considered literally false.").  Moreover, the full
    quote from *Hackett* cited by UpCounsel provides:  "the[] words (voted, considered, rated, etc.) *in*

20  *combination with* '#1 Best Show in Vegas' begs the question:  By whom?"  *Hackett*, 2011 WL
    4007531, at *5 (emphasis supplied).  Here, unlike in *Hackett*, none of the 5% statements say

21  UpCounsel was voted/considered/rated as top 5%.  Moreover, the "#1 Best Show in Vegas"
    statement at issue in *Hackett* is classic puffery because it made no reference to the *category* in

22  which the show "The Rat Pack is Back" was number one.  Here, on the other hand, the 5%
    statement specifies a *particular category* as to which the 5% statement applies, namely the

23  specific *practice area*.  It cannot be said that no reasonable consumer would rely on such an
    assertion.

24      UpCounsel also cites *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134 (9th Cir.

25  1997) in its reply brief, arguing that "[m]ost of" plaintiffs' "supposedly false claims" are "general
    assertions and vague claims of 'lower costs and superiority' . . . ."  (Defendant UpCounsel Inc.'s

26  Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint ("Reply") at 11, Dkt.
    No. 59.)  However, for the reasons discussed herein, the Court disagrees and finds that they are

27  instead "quantifiable" and/or "make[] a claim as to the specific or absolute characteristics" of
    UpCounsel's services, provided by the attorneys who use its platform.  *Newcal Indus., Inc. v. Ikon*

28  *Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (internal quotation marks omitted).

As for UpCounsel's Google search result argument, the Court finds it unpersuasive at the motion to dismiss stage. Plaintiffs allege that the search results "republish" statements *originally made by UpCounsel*. (FAC ¶ 27.) The issue of who *actually* made the statements (*i.e.*, the search results) is a factual issue to be resolved at summary judgment.

Accordingly, UpCounsel's motion to dismiss LegalForce RAPC's Lanham Act claim is **DENIED** to the extent the claim is based on statements in the format of "Top 5% of {Practice Area} Lawyers in {City}."

## C. "The 10 Best {Practice Area} Lawyers in {State} NEAR ME"

Plaintiffs allege that "UpCounsel has made over 1,000 false and misleading statements in the format of 'The 10 Best {Practice Area} Lawyers in {State} NEAR ME' in over 1,000 web pages on its website." (FAC ¶ 33; *see also id*. Exh. 52.) According to plaintiffs, "[t]hese statements are false because individuals listed in each resulting page are not usually near the customer who did the search, and often not even in the same state." (*Id*. ¶ 35.)

While LegalForce does not address this category of statements directly, it appears to fall within the second of its four groups, namely the group encompassing "quotes suggesting that UpCounsel is 'equivalent to the world's largest virtual law firm' or that available lawyers are, for example, the 'best patent lawyers' in a particular city." (MTD at 9–10.) Against this backdrop, the argument that statements in the format of "The 10 Best {Practice Area} Lawyers in {State} NEAR ME" are Google search results fails for the reasons previously stated, as does the contention that the statement must answer the question "as determined by whom[?]" Moreover, statements in the format of "The 10 Best {Practice Area} Lawyers in {State} NEAR ME" are not puffery because UpCounsel is advertising a top-10 list of the best attorneys practicing in a *specific area of law* in a *geographically limited area*. *See Newcal*, 513 F.3d at 1053 (explaining that "[u]ltimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim"). A reasonable consumer reading these statements could conclude that UpCounsel attorneys are objectively and measurably superior to other "{practice area} lawyers in {state}" near the consumer. (FAC ¶ 33.)

Accordingly, UpCounsel's motion to dismiss LegalForce RAPC's Lanham Act claim is

DENIED to the extent the claim is based on statements in the format of "The 10 Best {Practice Area} Lawyers in {State} NEAR ME."

### D. "{City} {Practice Area} Lawyers 5.0 ***** Based on {X number of} reviews"

Plaintiffs allege that in a total of 51,700 landing pages, "there is a Page Summary Block which shows '{City} {Practice Area} Lawyers 5.0 ***** Based on {X number of} reviews.'" (FAC ¶ 38.) For example:



(*See id*. Exh. 61 at 1.) According to plaintiffs, the statement "Cotati Intellectual Property Lawyers 5.0 ***** Based on 5450 reviews" is a false statement, namely: "It is impossible for Cotati Intellectual Property Lawyers to have 5,450 reviews on UpCounsel. Cotati is a small town in Northern California with a population of 7,455. There are only 21 attorneys in the city of Cotati licensed to practice law in California, and none of these 21 attorneys are listed on UpCounsel." (*Id*. ¶ 39.) Thus, plaintiffs maintain that "UpCounsel manipulates [Google's search optimization] technique to deceive Google crawlers and other search engines so that Google will display UpCounsel's fabricated and false ratings and reviews on the first page search result." (FAC ¶ 42.) As a result, UpCounsel "steers away potential clients from [p]laintiffs and hinders [p]laintiffs' ability to compete." (*Id*.)

UpCounsel argues that use of search-engine optimization techniques "as a *means* to its advertising ends" does not suffice to state a claim under the Lanham Act because UpCounsel's "software code" is not a statement that was seen or relied on by customers. (MTD at 10 (emphasis in original).) UpCounsel also maintains that its advertising statements regarding five-star reviews

are non-actionable puffery.

Whether UpCounsel's software code is a statement that was seen and relied on by customers is a factual issue to be resolved at summary judgment. As for UpCounsel's argument that the statements themselves are non-actionable puffery, it does not persuade. The statements indicate a *specific area of law* in a *geographically limited area* and also a *specific number of reviews*. A reasonable consumer reading these statements could conclude that UpCounsel attorneys are objectively and measurably superior to other "{city} {practice area} lawyers." (FAC ¶ 38.)

Accordingly, UpCounsel's motion to dismiss LegalForce RAPC's Lanham Act claim is **DENIED** to the extent the claim is based on the Page Summary Block on UpCounsel's landing pages which shows "{City} {Practice Area} Lawyers 5.0 ***** Based on {X number of} reviews."

### E. "***** Rating: 5 – {X number of} reviews"

Plaintiffs allege that "when a customer searches 'intellectual property lawyer in cotati, ca,' UpCounsel makes another false and misleading statement," which appears beneath the separate false and misleading statement "Top 5% Intellectual Property Lawyers in Cotati, CA," namely "***** Rating: 5 – {X number of} reviews." (FAC ¶ 43.) For example:

Top 5% of Intellectual Property Lawyers in Cotati, CA | UpCounsel
https://www.upcounsel.com › Intellectual Property › California ▾
★★★★★ Rating: 5 - 5,174 reviews
Compare **Cotati Intellectual Property Attorneys & Lawyers** for hire on UpCounsel and choose the best **IP attorney** for your **intellectual property** needs in **Cotati**, ...

(*Id*. Exh. 33-G at 1.) According to plaintiffs, "[t]he display of the invariable 5-star rating followed by the number of reviews is achieved by manipulating Google search results through deceptive, unethical, and fraudulent search engine optimization techniques. . . . UpCounsel's deceptive aggregations of reviews mislead [consumers] into believing the reviews came from actual customers in those cities and states." (*Id*. ¶ 45.) In addition, "[t]o keep its pages at the top of search results," plaintiffs allege that UpCounsel "underhandedly tricks Google by 'refreshing' its reviews through a posting regularly updated, fabricating reviews directly on each webpage on the UpCounsel website." (*Id*. ¶ 49.)

UpCounsel repeats its argument regarding HTML code and search-optimization techniques and generally asserts that statements that attorneys have five-star reviews are non-actionable puffery. (MTD at 12.)

The former argument fails for the reasons discussed in the previous section. As for UpCounsel's argument that the statements are puffery, it does not persuade. The statements are "quantifiable," namely they indicate a five-star rating based on a *specific number of reviews*, and are thus actionable. *Newcal*, 513 F.3d at 1052.

Accordingly, UpCounsel's motion to dismiss LegalForce RAPC's Lanham Act claim is **DENIED** to the extent the claim is based on statements in the format of "***** Rating: 5 – {X number of} reviews."

**F.     Review and Web Page Source Code Deception**

Plaintiffs allege generally that UpCounsel's presentation layer code (*i.e.*, "software code that is executed on a client side device and which is responsible for displaying textual and graphical elements printed on a webpage to users throughout their monitors") reveals that UpCounsel "intentionally and purposefully, and in bad faith, attempts to deceive Google search crawlers and the public that uses Google to search for legal services." (FAC ¶ 50.) For example, "UpCounsel's tag for its 5450 fabricated reviews for attorneys in Cotati is based on a fraudulent data field called 'reviewCount' which is printed on each page," and "UpCounsel's page source for each of its tens of thousands of reviews includes the following line of code: <div itemprop='aggregateRating' itemscope itemtype= 'http://schema.org/AggregateRating'>," the sole purpose of which is to "trick search engines into recognizing UpCounsel's aggregate ratings as trustworthy." (FAC ¶¶ 52, 53; *id*. Exh. 76 at 26.) "Specifically," plaintiffs allege, "this descriptor indicates that UpCounsel is attempting to fraudulently utilize the 'AggregateRating' class or library on the website www.schema.org to trick search engines into recognizing its ratings and reviews as honest and reputable, when in fact they are aggregated fraudulently to generate a fabricated city rating." (*Id*. ¶ 54.) The lines of code are depicted in the FAC as follows:

\\

\\

(*Id*. ¶ 52.)  According to plaintiffs, "[w]hen adding this library of code, UpCounsel intentionally violates (1) the technical and content guidelines of Google, which require legitimate reviews and (2) provisions of the Google Technical guidelines."  (*Id*. ¶ 57.)  The core of plaintiffs' allegations regarding review and web page source code deception is thus that "UpCounsel fraudulently and unethically employs techniques published on Schema.org to deceive Google and average consumers into thinking that when they search on Google, they are receiving trustworthy reviews of real attorneys in their city or 'near them' when in fact, the reviews are a manufactured hodgepodge of unrelated UpCounsel attorneys who often have no connection to the particular city or state."  (*Id*. ¶ 59.)  UpCounsel, in turn, has "greatly benefited from deceptive, unethical, and fraudulent search engine optimization techniques."  (*Id*. ¶ 62.)  Namely, plaintiffs claim that "UpCounsel's false and misleading advertising has propelled it to secure 10,000+ customers" and that "[a] percentage of these clients would have become clients of RAPC."  (*Id*. ¶ 64.)

　　　　UpCounsel argues that its "software code," or the pages of HTML "page source" that plaintiffs use in their brief, are not *statements* that were seen and relied on by customers.  (MTD at 10.)  As for the corresponding search results, UpCounsel argues that plaintiffs cannot rest a false advertising claim—which requires a false statement made by the defendant—on search results that *plaintiffs* have elicited from a third party using words that *plaintiffs* have chosen.  (*Id*. at 11.)

　　　　The Court agrees in part.  Specifically, the Court finds that *standing on their own*, the

software code and HMTL page source are not actionable statements. However, plaintiffs have tied the software code and HTML page source to *specific actionable statements*. (*See* Plaintiffs' Opposition to Defendant's Motion to Dismiss First Amended Complaint ("Opp.") at 16, Dkt. No. 55 ("UpCounsel . . . carefully tags the statements in the website coding so that Google includes the false and misleading statements in search results for consumers.").) Thus, the software code and HTML page source represent UpCounsel's purported *intent* when making the statements, namely to mislead consumers. Accordingly, allegations pertaining to the same, while not sufficient to give rise to a separate Lanham Act claim, shall not be dismissed.[14]

Accordingly, UpCounsel's motion to dismiss LegalForce RAPC's Lanham Act claim is **DENIED** to the extent the claim is based on UpCounsel's alleged review and web page source code deception.

### G. Distant, Unlicensed Attorneys

Plaintiffs allege that "UpCounsel deceives customers by steering them to attorneys and non-attorneys who are not located anywhere close to their city, or authorized to practice in their respective state" or in any state. (FAC ¶ 65; *see also id.* ¶ 66.) For instance, plaintiffs "take issue . . . with UpCounsel listing . . . patent agents as lawyers." (Opp. at 26.)

UpCounsel concedes that the three examples that plaintiffs cite in the FAC (*see* FAC ¶¶ 66–68) are, as indicated in the corresponding exhibits, patent prosecutors. However, UpCounsel argues that it does not steer anyone to unlicensed attorneys and that plaintiffs identify nothing on UpCounsel's website that represents that these individuals are attorneys. In addition, UpCounsel reiterates its argument that Google search results are not statements. (*See* Reply at 13) ("That leaves Plaintiffs with just one allegation: that *Google* is somehow displaying these individuals under misleading headings.") (emphasis in original).) Without some false statement by

---

[14] As for UpCounsel's argument regarding the corresponding search results, the fact that plaintiffs formulated the searches which triggered the results is of no moment. UpCounsel does not dispute that the search results and information contained therein are accessible to the broader public. As previously stated, the issue of who actually made the statements (*i.e.*, the search results), whether it be UpCounsel or a third party, is a factual issue to be resolved at summary judgment. (*See supra* p. 10.)

15

UpCounsel, UpCounsel insists that LegalForce RAPC has no Lanham Act claim.

Accepting as true plaintiffs' allegation that the search results "republish" statements *originally made by UpCounsel*, as the Court must in analyzing UpCounsel's motion to dismiss, UpCounsel cannot reasonably argue at this stage that it has not made false statements by way of the search results. Indeed, UpCounsel does not refute that the patent prosecutors are linked to search results advertising *attorney services*, and in *different states*. (*See, e.g.*, FAC Exh. 57 at 1 ("Mark Levenda *Attorney* Profile on Upcounsel") (emphasis supplied); *id*. Exh. 37 at 1 (search result heading is "*Bend Attorneys & Lawyers* for Hire On-Demand" but description states "Mark Levenda is a patent attorney with over 12 years of experience. He is licensed to practice law in *Arizona* and is also a member of the Arizona patent bar") (emphasis supplied)); *see also, e.g.*, FAC Exhs. 32 at 3 & 56 at 1, 2 (patent agent appears as "Top 5%" immigration lawyer in Blackfoot Idaho and as an "Oregon Attorney[] & Lawyer[] for Hire On-Demand" through UpCounsel).)

Accordingly, UpCounsel's motion to dismiss LegalForce RAPC's Lanham Act claim is **DENIED** to the extent the claim is based on UpCounsel's alleged "dece[ption] [of] customers by steering them to attorneys and non-attorneys who are not located anywhere close to their city, or authorized to practice in their respective state." (FAC ¶ 65.)

### H. False and Misleading Fee Structure

Plaintiffs allege that "UpCounsel deceptively hides exactly how much in fees consultant users or employer users pay as part of its success fee, ranging from 15% to 24%." (FAC ¶ 76.) Specifically, "th[e] 15% mark up in its terms is materially inconsistent with its invoices, in which the mark up spikes to 24%." (*Id*. ¶ 78.) In addition to these alleged misrepresentations regarding the mark up, plaintiffs allege: "UpCounsel attempts to 'mask' this 'processing fee' from its Employer Users by including it as part of the hourly fee paid to each lawyer. Specifically, the initial hourly rate shown to each potential client after a proposal is provided by an attorney is silent as to whether it includes the processing fee." (*Id*. ¶ 79.)

UpCounsel argues that plaintiffs are "either confused or intentionally obfuscating the truth." (MTD at 13.) Namely, "[t]here is no 'range' from 15% to 24%; those are different fees

charged for entirely different services." (*Id.*) Regarding the former, UpCounsel explains that Section 7.1 of its Terms of Service, (*see* FAC Exh. 11), has nothing to do with work performed by attorneys through UpCounsel's platform. Rather, it sets out the referral fee an employer is to pay UpCounsel if it decides to employ—on a full-time basis in the future—an attorney it met through the platform. (MTD at 13; *See* FAC Exh. 11 at ECF pp. 57–58.) The amount of that referral fee is "determined by the start date of that employment, and how close in time it is to when those parties first met through UpCounsel." (Reply at 12.) Regarding the latter, UpCounsel contends that it makes clear that its "processing fee"—not a referral fee—"amounts to 24% of your total invoice." (MTD at 13 (citing FAC ¶ 78 n.8).) "In other words, if an attorney performs an hour's work for an UpCounsel client and charges $250, the client pays that attorney $250 and, in addition, pays UpCounsel 24% (or $60) in processing fees." (MTD at 13.) In any event, UpCounsel maintains that its fee structure does not constitute a statement, in interstate commerce or advertising, that is literally false.

The Court finds that the disagreement between the parties boils down to a factual dispute appropriate for resolution at summary judgment, not on a motion to dismiss. Accordingly, UpCounsel's motion to dismiss LegalForce RAPC's Lanham Act claim is **DENIED** to the extent it is based on UpCounsel's allegedly false and misleading fee structure.

### I. Conclusion

LegalForce RAPC's Lanham Act claim is subject to dismissal only to the extent the claim is based on the statement that "UpCounsel is the world's largest law firm." Otherwise, the claim survives UpCounsel's motion to dismiss.

### IV. SECOND CLAIM FOR RELIEF: CALIFORNIA FALSE & MISLEADING ADVERTISING (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)

California's FAL prohibits the dissemination of any advertising "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500; *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985–86 (S.D. Cal. 2014).

UpCounsel argues that LegalForce RAPC's FAL claim fails for the same reasons as its Lanham Act and UCL claims. First, UpCounsel contends that plaintiffs have not alleged a false or

17

misleading statement sufficient to state a false advertising claim. Second, UpCounsel argues that LegalForce RAPC does not have standing under the FAL because it has not suffered an injury in fact or lost money or property as a result of a violation.[15]

As a preliminary matter, because the Court previously ruled in plaintiffs' favor on the issue of standing under *both* the FAL and UCL, UpCounsel's motion based on lack of standing is **DENIED**. (*See* MTD Order at 2.)[16] Otherwise, because LegalForce RAPC's FAL claim is based in its entirety on conduct which forms the basis of its Lanham Act claim, this claim rises and falls with LegalForce RAPC's Lanham Act claim. *See Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) ("[C]laims of . . . false advertising under state statutory and common law are 'substantially congruent' to claims made under the Lanham Act.") (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994)). Accordingly, UpCounsel's motion as to the FAL claim is **GRANTED IN PART AND DENIED IN PART** in accordance with the Court's aforementioned rulings regarding LegalForce RAPC's Lanham Act claim.

## V. THIRD CLAIM FOR RELIEF: CALIFORNIA UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)

The UCL proscribes business practices that are "unlawful, unfair[,] or fraudulent." Cal. Bus. & Prof. Code § 17200; *see also In re Sony*, 996 F. Supp. 2d at 985. Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).

Plaintiffs assert claims under the unlawful and unfair prongs only. The Court discusses each prong in turn after addressing the threshold issue of Trademarkia's standing.

### A. Trademarkia's Standing

At the hearing on the instant motion, UpCounsel addressed the issue of Trademarkia's

---

[15] UpCounsel's motion actually makes these arguments as to "plaintiffs," *i.e.*, *both* LegalForce RAPC and Trademarkia. However, only *LegalForce RAPC* asserts a claim under the FAL. (*See* FAC at p. 42 (indicating that the FAL claim is asserted "[a]gainst UpCounsel by RAPC").) UpCounsel's standing argument in the context of the FAL claim therefore pertains to LegalForce RAPC only, and the Court thus proceeds with its discussion accordingly.

[16] *See also* discussion at *infra* pp. 19–20.

standing to pursue its UCL claim against UpCounsel, arguing for the first time that plaintiffs'

allegations in the FAC regarding "lost sales and increased costs," namely those contained in FAC

¶¶ 114–116, pertain to LegalForce RAPC only, and not Trademarkia. (*See* Hearing Tr. 2 at 11:2–

25.) While UpCounsel is correct regarding these specific allegations, its argument that

Trademarkia lacks standing to pursue its UCL claim against UpCounsel does not persuade.

Because UpCounsel did not distinguish at the hearing between Article III standing and statutory

standing, the Court addresses both.[17]

A plaintiff asserting a UCL claim must satisfy both the Article III and UCL standing

requirements. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009). To have standing to

assert a UCL claim, the plaintiff must show that "she hast lost 'money or property' sufficient to

constitute an 'injury in fact' under Article III of the Constitution." *Rubio v. Capital One Bank*,

613 F.3d 1195, 1203–04 (9th Cir. 2010). Thus, the plaintiff asserting a UCL claim must have

Article III standing in the form of economic injury. *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984,

991 (E.D. Cal. 2012); *see also Birdsong*, 590 F. 3d at 960 n.4 ("[T]he UCL incorporates Article

III's injury in fact requirement . . . .") (citation omitted).

The UCL's loss of "money or property" requirement is broadly expansive as to what sort

of economic injury suffices. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011).

The California Supreme Court instructs that "[t]here are innumerable ways in which economic

injury from unfair competition may be shown." *Id.*; *see also Law Offices of Mathew Higbee v.*

*Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 561 (2013) ("[T]he notion of 'lost money'

under the UCL is not limited."). Loss of business to a competitor as a result of unfair competition

is a paradigmatic, and indeed the original, variety of loss contemplated by the UCL. *See Law*

*Offices of Mathew Higbee*, 214 Cal. App. 4th at 560–61 (explaining that while the UCL has

developed into an important consumer-protection statute, its "original purpose . . . was to protect

---

[17] Moreover, because UpCounsel's standing point at oral argument was limited to Trademarkia's purported injuries, and because the Court previously ruled on the issue of plaintiffs' standing under the UCL, (*see* Dkt. No. 42 at 2), the Court limits its discussion herein accordingly. Thus, the Court does not address the causation or redressability requirements of Article III standing.

19

against wrongful conduct in commercial enterprises which resulted in business loss to another, ordinarily by the use of unfair means in drawing away customers from a competitor") (internal quotation marks omitted). A decrease in business value has also been deemed sufficient to show "an identifiable trifle of injury as necessary for standing under the UCL." *Id*. at 561.

Here, plaintiffs make the following allegations of economic injury, *inter alia*, with respect to *both* Trademarkia and LegalForce RAPC:

- "UpCounsel . . . deceive[s] Google crawlers and other search engines so that Google will display UpCounsel's fabricated and false ratings and reviews on the first page search result. As such, UpCounsel steers away potential clients from [p]laintiffs and hinders [p]laintiffs' ability to compete." (FAC ¶ 42.)

- "Plaintiffs' value of their business has been directly reduced and negotiations with potential acquirers have stalled." (*Id*. ¶ 115.)

- "UpCounsel prevented competition from [p]laintiffs by unfairly gaining potential clients through illegal solicitation and sharing legal fees with lawyers. But-for [*sic*] UpCounsel's unlawful and unfair competition, a good percentage of these potential clients would have otherwise gone to [p]laintiffs." (*Id*. ¶ 140.)

- "If UpCounsel did not engage in the alleged unlawful solicitation and unethical fee sharing, [it] would not have made false and misleading advertisements on Google and would not have unfairly competed with [p]laintiffs. Therefore, UpCounsel's conduct of unfair competition took away potential sales belonging to [p]laintiffs and proximately caused injury to [p]laintiffs." (*Id*. ¶ 141.)

The Court concludes that allegations of "plaintiffs'," *i.e.* LegalForce RAPC's *and* Trademarkia's, lost business and decrease in business value, in the overall context of the FAC and its allegations of wrongfully denied business opportunities, suffice to plead standing under the UCL's expansive standing doctrine. Because these allegations also suffice for pleading injury in fact under Article III,[18] UpCounsel's argument regarding Trademarkia's lack of standing is without merit.

### B. Unlawful Prong

"The unlawful prong of the UCL prohibits anything that can properly be called a business practice and that at the same time is forbidden by law." *In re Adobe Sys., Inc. v. Privacy Litig.*, 66

---

[18] *See Kwikset*, 51 Cal. 4th at 325 ("If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact.").

F. Supp. 3d 1197, 1225 (N.D. Cal. 2014) (internal quotation marks omitted). "Generally, violation of almost any law may serve as a basis for a UCL claim." *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010) (internal quotation marks omitted). However, a UCL claim "must identify the particular section of the statute that was violated and must describe with reasonable particularity the facts supporting the violation." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (internal quotation marks omitted). Plaintiffs asserts five predicates for their "unlawful" UCL claim: California Business and Professions Code sections (1) 6152(a) and (2) 6155; (3) 37 C.F.R. section 11.504; and California Rules of Professional Conduct ("RPC") (4) 1-320 and (5) 1-400. (*See* FAC ¶ 138(a)–(d).)

UpCounsel contends that plaintiffs "may not 'plead around an absolute bar to relief by recasting the cause of action as one for unfair competition.'" (MTD at 5 (quoting *Cel-Tech Commc'ns Inc v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999)).) Specifically, UpCounsel argues that plaintiffs' "unlawful" UCL claim fails because "its purported statutory hooks expressly forbid private rights of action . . . ." (MTD at 5.) Plaintiffs, in opposition, respond that "[a] claim under the UCL cannot be brought [only] where the legislature has created an immunity or provided a 'safe harbor' for that action." (Opp. at 8 (quoting *Cel-Tech*, 20 Cal. 4th at 182).) At oral argument, UpCounsel agreed with plaintiffs that, in some instances, a statute that does not provide a private cause of action can serve as a predicate for a UCL claim. (Hearing Tr. 2 at 10:1–2 ("I completely agree that if a statute is entirely silent[,] that can serve a statutory hook.").) However, UpCounsel maintained that where a private right of action to enforce a statute has been expressly foreclosed, that statute may not serve as a predicate for a UCL claim. Specifically, UpCounsel argued that section 6156 forecloses a private cause of action under section 6155 because the former specifically provides for enforcement actions by public entities or the state of California, but not actions by individuals or competitors. (*See id*. at 9:22–25.)

It is true that plaintiffs may not "plead around an absolute bar to relief" by recasting the cause of action as a claim under the UCL. *Cel-Tech*, 20 Cal. 4th at 182–83 (internal quotation marks omitted). At the same time, California courts have repeatedly stated that a plaintiff may bring a UCL claim even when the conduct alleged to constitute unfair competition violates a

21

statute that does not provide a private right of action.  *See, e.g., Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1335 (2009); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1475 (2006); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 561–66 (1998), *superseded by statute on other grounds as stated in Arias v. Superior Court*, 46 Cal. 4th 969 (2009).  Courts have reconciled these two principles by holding that "[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action . . . ." *Cel-Tech*, 20 Cal. 4th at 183.  Thus, if a statute explicitly precludes private enforcement, or if a statute expressly provides immunity for the conduct alleged, a plaintiff may not plead around this bar by bringing a claim under the UCL.  *Compare Hartless v. Clorox*, No. 06CV2705 JAH(CAB), 2007 WL 3245260, at *4 (S.D. Cal. Nov. 2, 2007) (holding that a UCL claim cannot be predicated on Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") due to Congress' express rejection of private actions to enforce FIFRA), *with Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2017 WL 3977385, at *3 (N.D. Cal. Sept. 11, 2017) (permitting 24 C.F.R. section 203.558 to serve as predicate for UCL claim because it "does not explicitly bar private enforcement"), *and Stop Youth Addiction*, 17 Cal. 4th at 566 (permitting provision of California Penal Code to serve as basis for UCL claim because there was no "absolute[] bar[]" to relief).

With these principles in mind, the Court turns to the five predicates plaintiffs assert for their "unlawful" UCL claim, namely California Business and Professions Code sections (1) 6152 and (2) 6155, California Rules of Professional Conduct (3) 1-320 and (4) 1-400, and (5) 37 C.F.R. section 11.504.

### 1. *Cal. Bus. & Prof. Code §§ 6152 & 6155*

The Court is not persuaded by UpCounsel's argument that section 6156 forecloses a private right of action under section 6155.  In *Stop Youth Addiction*, the California Supreme Court considered a similar question, namely "whether the absence of a private right of action to enforce the predicate statute compromises a plaintiff's eligibility to maintain a UCL cause of action."  17 Cal. 4th at 563.  With respect to Penal Code section 308, one of the two predicates asserted for the UCL claim in that case, the court noted:  "Undeniably, section 308 provides for its own *direct*

enforcement *only by public lawyers*.  It does not follow, however, that a private UCL action that
that borrows violations . . . of section 308 to establish predicate 'unlawful' (§17200) business
activity is barred." *Id*. at 566 (internal quotation marks and citation omitted) (second emphasis
supplied).  The court emphasized that the UCL states, "[u]nless otherwise *expressly* provided, the
remedies or penalties provided by this chapter [i.e., ch. 5, Enforcement, Bus. & Prof. Code, §§
17200–17209] are cumulative to each other and to the remedies or penalties available under all
other laws of this state."  *Stop Youth Addiction*, 17 Cal. 4th 533 at 573 (internal quotation marks
omitted) (alterations and emphasis in original).  The court continued, "[t]he term 'expressly'
means 'in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.'" *Id*.
(quoting *City & Cty. of S.F. v. W. Air Lines, Inc.*, 204 Cal. App. 2d 105, 120 (1962)).  The court
refused to hold that Penal Code section 308 *impliedly* precluded a private cause of action under the
UCL, explaining that to do so, the court "would have to read the word 'implicitly' into [Business
and Professions Code] section 17205 or read the word 'expressly' out of it." *Id*.

Turning to the case at bar, California Business and Professions Code section 6155
provides, in relevant part, that "[a]n individual, partnership, corporation, association, or any other
entity shall not operate for the direct or indirect purpose, in whole or in part, of referring potential
clients to attorneys," unless the service is registered with the State Bar of California.  Section 6156
provides:

> Any individual, partnership, association, corporation, or other entity, including, but
> not limited to, any person or entity having an ownership interest in a lawyer referral
> service, that engages, has engaged, or proposed to engage in violations of Section
> 6155, shall be liable for a civil penalty . . . , which shall be assessed and recovered
> in a civil action brought: (1) In the manner specified in subdivision (a) of Section
> 17206 . . . . (2) By the State Bar of California.

Section 17206 in turn provides:

> Any person who engages, has engaged, or proposes to engage in unfair competition
> shall be liable for a civil penalty not to exceed two thousand five hundred dollars
> ($2,500) for each violation, which shall be assessed and recovered in a civil action
> brought in the name of the people of the State of California by the Attorney
> General, by any district attorney, by any county counsel authorized by agreement
> with the district attorney in actions involving violation of a county ordinance, by
> any city attorney of a city having a population in excess of 750,000, by any city
> attorney of any city and county, or with the consent of the district attorney, by a
> city prosecutor in any city having a full-time city prosecutor, in any court of

competent jurisdiction.

Thus, section 6156 provides for enforcement actions to recover civil penalties under section 6155 only by public entities or the State Bar of California.  As with the court in *Stop Youth Addiction*, this Court concludes that "[i]t does not follow, however, that a private UCL action that borrows violations . . . of section [6155] to establish predicate 'unlawful' . . . business activity is barred." *Stop Youth Addiction*, 17 Cal. 4th at 566 (internal quotation marks and citation omitted).  Nothing in section 6156 creates a bar to plaintiffs' UCL claim based on section 6155 analogous to an "absolute[] bar[]."  *Stop Youth Addiction*, 17 Cal 4th at 566.  The Court agrees with the *Stop Youth Addiction* court that a statute does not necessarily bar a private right of action where the statutory scheme provides for penal (or, in this case, civil) penalties.  Accordingly, UpCounsel's motion to dismiss plaintiffs' UCL claim based on a violation of section 6155 is **DENIED**.[19]

UpCounsel further attacks plaintiffs' attempt to premise their UCL claim on section 6155, arguing that doing so is unprecedented and contradicted by the FAC.  According to UpCounsel, it neither operates to refer potential clients to attorneys nor takes any referral fee for doing so, but rather "allow[s] individuals to post descriptions of their legal needs; get free custom quotes from attorneys through the platform; choose whether to engage an attorney, and if so whom; pay the attorney his or her full rate, and pay a small processing fee to UpCounsel."  (MTD at 7 (internal quotation marks omitted); *see also* Reply at 4 (UpCounsel is "more like a public bulletin board that individuals and companies can consult and consider before choosing a lawyer they like").)  Plaintiffs respond that regardless of whether an identical case exists, UpCounsel is clearly operating "for the direct or indirect purpose, in whole or in part, of referring potential clients to attorneys."  (Opp. at 12 (quoting Cal. Bus. & Prof. Code § 6155(a)).)

As a preliminary matter, the fact that no similar case exists is irrelevant to the actual merits

---

[19]  Citing section 6156, UpCounsel similarly moves to dismiss plaintiffs' UCL claim based on a violation of section 6152 "because that code section specifically provides for enforcement actions by public entities . . . or the State Bar of California[.]"  (MTD at 5–6 (emphasis removed).)  However, section 6156 references violations of section 6155 only, and not violations of section 6152.  *See* Cal. Bus. & Prof. Code § 6156(a) ("Any individual, partnership, association, corporation, or other entity . . . that engages, has engaged, or proposes to engage in violations of *Section 6155*, shall be liable for a civil penalty . . . .") (emphasis supplied).  Thus, UpCounsel's motion to dismiss plaintiffs' UCL claim based on a violation of section 6152 is **DENIED**.

of plaintiffs' claim.  Moreover, UpCounsel's argument ignores the broad reach of the UCL's

unlawful prong.  *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1106 (9th

Cir. 2007) ("The California Supreme Court has given the term 'unlawful' a straightforward and

broad interpretation:  The UCL covers a wide range of conduct.  It embraces anything that can

properly be called a business practice and that at the same time is forbidden by law[.]"); *Andreoli*

*v. Youngevity Int'l, Inc.*, No. 16-cv-02922-BTM-JLB, 2018 WL 1470264, at *11 (S.D. Cal. Mar.

23, 2018) ("As to an unlawful business practice, the UCL's coverage is broad and sweeping . . . .")

Next, UpCounsel's contention that the FAC contradicts plaintiffs' claim that UpCounsel violated

section 6155 is disingenuous.  Indeed, UpCounsel quotes FAC ¶ 90 in support thereof, but that

paragraph of the FAC describes *UpCounsel's* own attempts at disclaiming being a referral service

on its website.  As for UpCounsel's argument that it is not operating as a referral service, it

ignores that plaintiffs' *allegations* suffice in this regard, namely:

> Although UpCounsel.com has a disclaimer in fine print stating that it is not a
> "lawyer referral service", referring attorneys to potential clients is in essence all
> that UpCounsel does.  According to the "How It Works" page of UpCounsel,
> customers looking for attorneys first post a job on UpCounsel.com, then the
> website's proprietary algorithm "matches" customers with certain attorneys, and
> finally customers hire the attorneys instantly through UpCousensel.  (*See* **Exhibit
> 70**.) . . . UpCounsel is thus a *de facto* "lawyer referral service" . . . .

(FAC ¶¶ 90, 91 (emphasis in original).)

### 2. *Rules of Professional Conduct ("RPC") 1-320 & 1-400*

The result with respect to the RPC differs.  The RPC expressly provide:  "These rules are

not intended to create new civil causes of action."  Cal. R. Prof. Conduct 1-100(A).

The Court acknowledges, as plaintiffs note, that the court in *People ex rel. Herrera v.

Stender*, 212 Cal. App. 4th 614 (2012) rejected the argument that violations of the RPC do not

support a cause of action under the UCL.  *See id*. at 632; Opp. at 9.  However, *Herrera* did not

involve a private action and was instead brought by the California Attorney General.  Plaintiffs

also cite *Estakhrian v. Obenstine*, 320 F.R.D. 63 (C.D. Cal. 2017), but the court there neither

analyzed nor decided whether RPC 1-320 could be the basis of an unlawful prong claim.  Rather,

that class certification decision stands only for the proposition that whether a person who shared

legal fees with a non-lawyer was an issue common to the class. *See id.* at 78. Similarly, in *Hoy v. Clinnin*, No. 17-cv-788-BTM-KSC, 2017 WL 2686216 (S.D. Cal. June 22, 2017), the issue before the court was whether to remand a malpractice claim arising under the RPC to state court under the local controversy exception to the Class Action Fairness Act. *See id.* at *1. The court granted the motion to remand, and its analysis of the UCL claim at issue was limited to repeating *Herrera*'s holding and a citation to *Estakhrian*.[20]

In sum, given the RPC's express bar on private enforcement, plaintiffs are precluded from enforcing RPC 1-320 and 1-400 privately by using them as predicates for their UCL claims. UpCounsel's motion to dismiss plaintiffs' UCL claim based on a violation of these rules is thus **GRANTED**.[21]

### 3. 37 C.F.R. § 11.504

Finally, with respect to 37 C.F.R. section 11.504, UpCounsel argues only that "[a]ny UCL claim under [the United States Patent and Trademark Office Rules of Professional Conduct] is impliedly preempted by federal law," citing just one case in support thereof. (MTD at 6.) However, six days before oral argument on the instant motion was held, the California Supreme Court ordered that the cited case be depublished. *See Post Foods, LLC v. Superior Court.*, 25 Cal. App 5th 278 (2018), *as modified on denial of reh'g* (Aug. 14, 2018), *review denied and ordered not to be officially published* (Oct. 31, 2018). Thus, it cannot be cited or relied on by UpCounsel. *See* Cal. Rules of Court 8.1115(a). Absent binding, or at the least citable, authority on the issue, the Court is not inclined at this juncture to dismiss plaintiffs' UCL claim based on a violation of 37 C.F.R. section 11.504. UpCounsel's motion to dismiss the same on the sole basis of preemption is thus **DENIED**.

---

[20] As for *Balukjan v. Virgin Am., Inc.*, No. 18-cv-00185-SI, 2018 WL 1242179 (N.D. Cal. Mar. 9, 2018), the court there stated in dicta that "[v]irtually any state, federal or local law can serve as the predicate for an action under section 17200, . . . including . . . rules of professional conduct." *Id.* at *7. However, the court engaged in no analysis on that point. Instead, it relied on *Herrera*, which, as the Court previously indicated, did not involve a private action.

[21] In light of the Court's ruling, the Court does not address the parties' remaining arguments regarding the RPC.

## C.     Unfair Prong

"The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Adobe*, 66 F. Supp. 3d at 1125. "The UCL does not define the term 'unfair.' . . . [And] the proper definition of 'unfair' conduct 'is currently in flux' among California courts." *Id.* (internal quotation marks omitted) (alterations in original).

Although the precise test for the UCL's "unfair" prong has not been definitively established, plaintiffs endorse the Federal Trade Commission ("FTC") Act section 5 test employed in *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394 (2006). Under that test, three factors define unfairness: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho*, 142 Cal. App. 4th at 1403; *see also* FAC ¶ 139(b)–(d). UpCounsel contends that where, as here, the plaintiff is a competitor, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (MTD at 8 (quoting *Cel-Tech*, 20 Cal. 4th at 187).) And, UpCounsel argues, plaintiffs cannot state an antitrust claim unless they "plead and prove a reduction of competition in the market in general and *not mere injury to their own positions* as competitors." (MTD at 8 (internal quotation marks omitted) (emphasis in original).) In that context, UpCounsel contends that plaintiffs have not, and cannot, allege harm to general market competition.

The parties do not dispute that this action is brought by a competitor, and not a consumer, nor can they. This point is significant because, in adopting its test for determining what is unfair under the UCL, the California Supreme Court in *Cel-Tech* stated:

> This case involves an action by a competitor alleging anticompetitive practices. Our discussion and this test are *limited to that context*. Nothing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as "fraudulent" or "unlawful" business practices or "unfair, deceptive, untrue or misleading advertising."

*Cel-Tech*, 20 Cal. 4th at 187 n.12 (emphasis supplied); *cf.* FAC ¶ 139(a)–(d) (alleging anticompetitive practices). In devising this "more precise" test, the court in *Cel-Tech* "turn[ed] for

27

guidance to the jurisprudence arising under the 'parallel' . . . section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(a)) (section 5)." *Id*. at 185.  In *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099 (C.D. Cal. 2001), on which plaintiffs rely, the court determined that the *Cel-Tech* test applied, *see id*. at 1118 n.13, and similarly determined, citing Section 5, that certain "federal antitrust decisions provide sound and appropriate standards for evaluating [plaintiff's] § 17200 'unfair' business act claim." *Id*. at 1119.  However, it did not indicate, as plaintiffs appear to argue, that Section 5 provides an alternative applicable test that *displaces* the *Cel-Tech* test.  Plaintiffs also cite the recent decision by Judge Freeman in *In re Nexus 6P Products Liability Litigation*, 293 F. Supp. 3d 888 (N.D. Cal. 2018) because it "noted . . . one test for determining what is unfair under California's UCL is the FTC Act section 5 test . . . ."  (Opp. at 13.)  However, *In re Nexus 6P* involved a *consumer class action*, and the court there addressed "the proper definition [of the term 'unfair'] in the *consumer context*." *Id*. at 930 (emphases supplied).

Notwithstanding the foregoing, the Court is not persuaded by UpCounsel's argument that plaintiffs *must* "state an antitrust claim."  (MTD at 8.)  Namely, the *Cel-Tech* test provides that an "unfair" claim under the UCL may be proven only on the basis of "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, *or otherwise significantly threatens or harms competition.*" *Cel-Tech*, 20 Cal. 4th at 187 (emphasis supplied).  Against this backdrop, plaintiffs have sufficiently alleged facts to establish that UpCounsel's actions "otherwise significantly threaten[] or harm[] competition." *Id*.  For example, they allege:

> [Attorney ethics rules] have not been revised in the age of the Internet.  UpCounsel has brazenly ignored law, ethics, and common sense in defiance of healthy competition. . . .  As a result of UpCounsel's malfeasance, [p]laintiffs, law firms, and legal technology companies across the United States are unable to fairly compete with UpCounsel.

(FAC ¶ 5.)  Moreover, plaintiffs allege:  "Plaintiffs are not able to compete fairly despite having an early start because they cannot fee share with non-attorneys.  For this reason, based on UpCounsel's own admissions, UpCounsel has unfairly threatened [p]laintiffs' business directly by

28

unfairly competing." (*Id.* ¶ 111.) Plaintiffs also allege:

> It is unfair to the competition in the practice of law if UpCounsel is able to offer legal services by violating state laws, federal regulations[,] and California ethics rules without being punished, while the vast majority of attorneys and legal technology companies, including [p]laintiffs, abide by the laws, federal regulations[,] and California ethics rules.

(FAC ¶ 139(a).)

Accordingly, UpCounsel's motion to dismiss plaintiffs' claim under the UCL's unlawful prong is **DENIED**.

## VI.    CONCLUSION

For the foregoing reasons, UpCounsel's motion to dismiss is **GRANTED IN PART AND DENIED IN PART** as follows:

- The motion to dismiss LegalForce RAPC's Lanham Act claim is **GRANTED WITHOUT LEAVE TO AMEND** to the extent the claim is based on the statement that "UpCounsel is the world's largest law firm." To the extent the Lanham Act claim is based on any other statement asserted in the FAC, the motion is **DENIED**.

- The motion to dismiss LegalForce RAPC's FAL claim based on lack of standing is **DENIED**. The motion is otherwise **GRANTED IN PART AND DENIED IN PART** in accordance with the Court's rulings herein regarding LegalForce RAPC's Lanham Act claim.

- The motion to dismiss plaintiffs' UCL claim is **GRANTED** to the extent the claim is based on a violation of Rules of Professional Conduct 1-320 and 1-400. To the extent it is based on other predicates, it is **DENIED**.

- The motion to dismiss plaintiffs' claim under the UCL's unlawful prong is **DENIED**.

This Order terminates Docket Number 49.

**IT IS SO ORDERED.**

Dated: January 10, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**